# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC and MSP RECOVERY CLAIMS SERIES 44, LLC, <br><br> Plaintiffs, <br> v. <br><br> NATIONWIDE MUTUAL INSURANCE COMPANY, ALLIED INSURANCE COMPANY OF AMERICA, ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, AMCO INSURANCE COMPANY, COLONIAL COUNTY MUTUAL INSURANCE COMPANY, DEPOSITORS INSURANCE COMPANY, FREEDOM SPECIALTY INSURANCE COMPANY, HARLEYSVILLE GROUP INC., HARLEYSVILLE INSURANCE COMPANY, HARLEYSVILLE PREFERRED INSURANCE COMPANY, HARLEYSVILLE WORCESTER INSURANCE COMPANY, NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, NATIONWIDE ASSURANCE COMPANY, NATIONWIDE GENERAL INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY OF AMERICA, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TITAN AUTO INSURANCE OF NEW MEXICO, INC., TITAN INSURANCE COMPANY, VICTORIA FIRE & CASUALTY COMPANY, VICTORIA NATIONAL INSURANCE COMPANY, and VICTORIA SELECT INSURANCE COMPANY, <br><br> Defendants. | CASE NO.: <br><br> JUDGE <br><br> CLASS ACTION COMPLAINT WITH JURY DEMAND |

## PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs, MSP Recovery Claims Series, LLC ("MSPRC") and MSP Recovery Claims Series 44, LLC ("Series 44") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class Members"), bring this action against Nationwide Mutual Insurance Company, Allied Insurance Company of America, Allied Property and Casualty Insurance Company, AMCO Insurance Company, Colonial County Mutual Insurance Company, Depositors Insurance Company, Freedom Specialty Insurance Company, Harleysville Group Inc., Harleysville Insurance Company, Harleysville Preferred Insurance Company, Harleysville Worcester Insurance Company, Nationwide Affinity Insurance Company of America, Nationwide Agribusiness Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Scottsdale Insurance Company, Titan Auto Insurance of New Mexico, Inc., Titan Insurance Company, Victoria Fire & Casualty Company, Victoria National Insurance Company, and Victoria Select Insurance Company (collectively "Defendants"), and allege:

## INTRODUCTION

1.      Plaintiffs bring this action to reconcile Defendants' failures to honor their primary payer obligations under the Medicare Secondary Payer provisions of the Social Security Act (the "MSP Act"), 42 U.S.C. § 1395y et seq. Medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses") that should have been paid by Defendants were instead paid by Medicare Advantage ("MA") Plans.[1] Further,

---

[1] As used herein, the term "MA Plans" collectively includes Medicare Advantage Organizations (those contracting directly with the Centers for Medicare & Medicaid Services ("CMS")), as well as first tier and downstream entities that ultimately paid for or provided accident-related medical expenses to Medicare beneficiaries, pursuant to risk-sharing agreements authorized under 42 U.S.C. § 1395w-22(b)(4).

Defendants have also failed to reimburse Plaintiffs and the Class Members for accident-related medical expenses upon entering into settlements with Medicare beneficiaries enrolled in MA Plans. As a result, the cost of those accident-related medical expenses has been borne by MA Plans to the detriment of the Medicare Trust Fund and the public. Because Defendants are primary payers under the MSP Act, Plaintiffs and the Class are entitled to be reimbursed at industry standard rates by Defendants.

2.      Defendants are auto or other liability insurers that issue "no-fault" coverage policies, which include Personal Injury Payments ("PIP") and Medical Payment Coverage policies to their insureds, including Medicare beneficiaries enrolled in MA Plans under Part C of the Medicare Act ("Enrollees"). Pursuant to their contractual obligations with their insureds, and under state law, Defendants are to provide coverage for their insureds' accident-related medical expenses on a "no-fault" basis (in other words, without regard for whether the insured was at fault for the accident). Defendants are also auto or other liability insurers that provide third-party liability insurance on behalf of their insureds, e.g. bodily injury coverage. In the case of automobile and other accidents specifically involving Enrollees covered under a no-fault policy issued by Defendants or involving Defendants' insureds and Enrollees, where Defendants' insureds are liable and Enrollees are injured and enter into settlements with Defendants, Defendants are considered primary plans under the MSP Act. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance; 42 C.F.R. § 411.21 (same). Accordingly, Defendants' obligation to pay for accident-related medical expenses on behalf of Enrollees is primary relative to the MA Plan's obligation to pay for those same accident-related medical expenses, which is secondary. Defendants have failed to make and/or reimburse MA plans for these payments,

instead passing on those expenses to MA Plans.

3.      Plaintiffs' assignors are MA Plans that provide Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MA Plans provide such services pursuant to contracts with CMS, in which CMS pays the MA Plans a fixed fee per enrollee and the MA Plans provide, at a minimum, the same benefits that Enrollees would receive under traditional Medicare. MA Plans stand on the same footing as traditional Medicare, including under the MSP Act which declares that Medicare is a "secondary payer" to all other sources of coverage, and, consequently, are empowered to recoup from rightful primary payers when they have paid for services that fell within overlapping insurance maintained by Enrollees with a primary payer. *See MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1316 (11th Cir. 2019); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1237-39 (11th Cir. 2016).

4.      The overriding purpose of the MSP Act is to protect the Medicare Trust Fund by ensuring that Medicare and MA Plans do not pay for medical expenses that should be paid instead by primary payers such as Defendants.[2] Without the provisions in the MSP Act establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with accident-related injuries and/or treatments. Indeed, Medicare and MA Plans, which are required to conditionally pay accident-related medical expenses promptly with the expectation of reimbursement from a primary payer, would unjustly bear the burden and overwhelming expense of such injuries and treatments. The capitation payments made by CMS

---

[2] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

(from the Medicare Trust Fund) to MA Plans, which fund their risk contracts with down-stream providers, all come from the Medicare Trust Fund.

5.      In addition to their obligation to pay, and/or reimburse Medicare and MA Plans, for accident-related medical expenses on behalf of their Enrollees, primary payers like Defendants have an affirmative burden, under applicable federal regulations promulgated under the MSP Act, to: (i) identify whether their insureds or claimants are Medicare beneficiaries; (ii) identify whether claimants with whom they enter into settlements are Medicare beneficiaries; and (iii) report their primary payer responsibility to CMS.

6.      Despite the MSP Act's clear legal requirement that primary payers like Defendants pay for accident-related medical expenses, take steps to identify whether their enrollees or claimants with whom they enter into settlements are Medicare beneficiaries, and report their primary payer responsibility to CMS,[3] primary payers often fail to honor their obligations to MA Plans and have, instead, taken steps that ensure the burden for those accident-related medical expenses is borne by MA Plans. Even when primary payers report as required by law, they still often fail to pay or reimburse at the required industry standard rates.

7.      To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Act and remedy a primary payer's failure to reimburse conditional payments made by Medicare or MA Plans and provided for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Act.

8.      As described in detail below, Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment

---

[3] *Id.*

and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Act and Medicare, because when MA Plans recover conditional payments, they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

### THE PARTIES[4]

9.      MSPRC is a Delaware series limited liability company with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134. MSPRC's Second Amendment of Limited Liability Company Agreement ("LLC Agreement") provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSPRC. All designated Series have their principal place of business at 2701 S. Le Jeune Road, 10th Floor in Coral Gables, Florida.

10.      MSPRC has established various designated series pursuant to Delaware law in

---

[4] The Nationwide company, like other large auto insurers, consists of numerous affiliated companies that offer different types of insurance across the country, complicating the identification of liable Nationwide defendants. A list of Defendants' property & casualty affiliates is attached hereto as Exhibit A. Nationwide, Affiliated companies, https://www.nationwide.com/personal/about-us/affiliated-companies/ (last visited April 14, 2021). Pursuant to Section 111, a Responsible Reporting Entity ("RRE") may not register as an RRE for a sibling in its corporate structure. An entity may register as an RRE for itself or for any direct subsidiary in its corporate structure. A parent entity may register as an RRE for any subsidiary in its corporate structure. Plaintiffs have made a good faith effort to be as precise as possible in their identification of Defendants and have relied on publicly available sources, including Defendants' website, annual filings, police crash and incident reports, and reporting data from Insurance Services Office ("ISO"), a third-party data analytics and compliance provider, and a vendor called MyAbility. Through MyAbility, Plaintiffs have access to data that primary payers report to CMS in compliance with their statutory reporting obligations, and that data is attached to this Complaint. The data is inputted by Defendants, not Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data is attributable to the manner in which Defendants chose to report. To the extent necessary, Plaintiffs will request minimal discovery as to the claims pled in this Complaint to ensure that Plaintiffs have identified the correct defendants.

order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain particular series. All designated series form a part of MSPRC and pursuant to MSPRC's LLC Agreement and applicable amendment(s), each designated series is owned and controlled by MSPRC. MSPRC may receive assignments in the name of MSPRC, and further associate such assignments with a particular designated series or may have claims assigned directly to a particular designated series. In either event, pursuant to its LLC Agreement, any rights and benefits arising from assignments to its designated series shall belong to MSPRC, and MSPRC maintains the legal right to sue on behalf of each of its designated series and pursue any and all rights, benefits, and causes of action arising from assignments to a designated series:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. **For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series**.

> > Section 2 of LLC Agreement (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added).

11.     As such, MSPRC has the right and authority to seek reimbursement of Medicare

payments made by its designated series' assignors that should have been paid by Defendants in the first instance.

12.     Any claim or suit may be brought by MSPRC in its own name or it may elect to bring suit in the name of its designated series.

13.     Series 44 is a Delaware series limited liability company with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134. Series 44's Limited Liability Company Operating Agreement ("LLC Operating Agreement") provides for the establishment of one or more designated series. All designated series have their principal place of business at 2701 S. Le Jeune Road, 10th Floor in Coral Gables, Florida.

14.     Series 44 has also established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain particular series. All designated series form a part of Series 44 and pursuant to Series 44's LLC Operating Agreement, each designated series is owned and controlled by Series 44. Series 44 may receive assignments in the name of Series 44, and further associate such assignments with a particular designated series or may have claims assigned directly to a particular designated series. In either event, pursuant to its LLC Operating Agreement, any rights and benefits arising from assignments to its designated series shall belong to Series 44, and Series 44 maintains the legal right to sue on behalf of each of its designated series and pursue any and all rights, benefits, and causes of action arising from assignments to a series:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated Series, by Medicare Advantage Organizations, health plans, Health Maintenance Organizations, Maintenance Service Organizations,

8i

Independent Practice Associations, and other health care organizations or providers authorized by state or federal law, or other administrative or licensing agencies, to pay for, provide or manage for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage, or Medicaid. The Company will own any such assigned rights but may segregate the assignments by establishing one or more Series pursuant to Section 18-215 of the Act to serve as units of the Company. **For the avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated Series arising from, or by virtue of, an assignment to a designated Series.**

Section 2.3 of LLC Operating Agreement (emphasis added).

15. As such, Series 44 has the right and authority to seek reimbursement of Medicare payments made by its designated series' assignors that should have been paid by Defendants in the first instance.

16. Any claim or suit may be brought by Series 44 in its own name or it may elect to bring suit in the name of its designated series.

17. Defendant Nationwide Mutual Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

18. Defendant Allied Insurance Company of America is a company that issues property and casualty policies with its principal place of business in Columbus, Ohio.

19. Defendant Allied Property and Casualty Insurance Company is a company that issues property and casualty policies with its principal place of business in Des Moines, Iowa 50391.

20. Defendant AMCO Insurance Company is a company that issues property and

casualty policies with its principal place of business in Des Moines, Iowa 50391.

21.     Defendant Colonial County Mutual Insurance Company is a company that issues property and casualty policies with its principal place of business in El Paso, Texas.

22.     Defendant Depositors Insurance Company is a company that issues property and casualty policies with its principal place of business in Des Moines, Iowa 50391.

23.     Defendant Freedom Specialty Insurance Company is a company that issues property and casualty policies with its principal place of business at One West Nationwide Boulevard, Columbus, Ohio 43215.

24.     Defendant Harleysville Group Inc. is a company that issues property and casualty policies with its principal place of business in Harleysville, Pennsylvania.

25.     Defendant Harleysville Insurance Company is a company that issues property and casualty policies with its principal place of business at One West Nationwide Boulevard, Columbus, Ohio 43215.

26.     Defendant Harleysville Preferred Insurance Company is a company that issues property and casualty policies with its principal place of business at One West Nationwide Boulevard, Columbus, Ohio 43215.

27.     Defendant Harleysville Worcester Insurance Company is a company that issues property and casualty policies with its principal place of business at One West Nationwide Boulevard, Columbus, Ohio 43215.

28.     Defendant Nationwide Affinity Insurance Company of America is a company that issues property and casualty policies with its principal place of business in Columbus, Ohio.

29.     Defendant Nationwide Agribusiness Insurance Company is a company that issues property and casualty policies with its principal place of business in Des Moines, Iowa 50391.

10i

30.     Defendant Nationwide Assurance Company is a company that issues property and casualty policies with its principal place of business at One West Nationwide Boulevard, Columbus, Ohio 43215.

31.     Defendant Nationwide General Insurance Company is a company that issues property and casualty policies with its principal place of business in Columbus, Ohio.

32.     Defendant Nationwide Mutual Fire Insurance Company is a company that issues property and casualty policies with its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

33.     Defendant Nationwide Property and Casualty Insurance Company is a company that issues property and casualty policies with its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

34.     Defendant Scottsdale Insurance Company is a company that issues property and casualty policies with its principal place of business in Scottsdale, Arizona.

35.     Defendant Titan Auto Insurance Company of New Mexico, Inc. is a company that issues property and casualty policies with its principal place of business at 123 East Marcy Street, Suite 101, Santa Fe, New Mexico 87501.

36.     Defendant Titan Insurance Company is a company that issues property and casualty policies with its principal place of business at 901 Wilshire Drive, Suite 550, Troy, Michigan 48084.

37.     Defendant Victoria Fire & Casualty Company is a company that issues property and casualty policies with its principal place of business in Columbus, Ohio.

38.     Defendant Victoria National Insurance Company is a company that issues property and casualty policies with its principal place of business in Columbus, Ohio.

39.     Defendant Victoria Select Insurance Company is a company that issues property and casualty policies with its principal place of business in Columbus, Ohio.

## ASSIGNMENTS

40.     Plaintiffs have been assigned all legal rights of recovery and reimbursement for medical items and services provided by assignors that administer Medicare benefits for Medicare beneficiaries under Medicare Part C, whether said rights arise from: (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of payments made by the assignor health plans, including the right to recover claims for health care services on a fee-for-service basis.

41.     Plaintiffs' assignors have assigned all rights, title, and interest to the recoverable claims, conferring standing to Plaintiffs to bring this lawsuit. The assignments are valid and binding contracts.

42.     Plaintiffs' assignors paid for the unreimbursed medical items and services related to the treatment of injuries arising from an accident and/or incident for which Defendants were responsible as the primary payer.

### *Plaintiff MSPRC's Standing*

43.     Certain designated series of Plaintiff MSPRC have been irrevocably assigned any and all rights to recover payments made on behalf of their assignors' health plan members and Enrollees. These assignments authorize the designated series, and in turn Plaintiff MSPRC through its LLC Agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

44.     The assignments to Plaintiff MSPRC, which are alleged in Appendix 2 to this

Complaint, are valid and binding contracts.

### *Plaintiff Series 44's Standing*

45.　　Certain designated series of Plaintiff Series 44 have been irrevocably assigned any and all rights to recover payments made on behalf of their assignors' health plan members and Enrollees. These assignments authorize the designated series, and in turn Plaintiff Series 44 through its LLC Operating Agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

46.　　The assignments to Plaintiff Series 44, which are alleged in Appendix 2 to this Complaint, are valid and binding contracts.

### *Additional Standing Allegations*

47.　　Further, and separately, approximately three of the assignment agreements held by the individual Plaintiffs contain exclusionary language, often referred to as "carve-out" provisions. Under those provisions, a limited number of claims were retained by the applicable assignor.

48.　　In all instances where an assignment contains a carve-out provision, the assignor has furnished Plaintiffs with one or more itemized lists identifying the specific claims retained by that assignor. Those lists are referred to as "carve-out lists." Plaintiffs have cross-referenced the individual exemplar claims alleged herein against the respective carve-out lists and confirmed that the exemplar claims: (1) do not appear on the carve-out lists, and (2) have been assigned and conveyed to one of the Plaintiffs in this case.

49.　　Put differently, the exemplar claims alleged herein have not been assigned or conveyed to any other recovery vendor (outside of the chain of assignments detailed herein) and were not being pursued by any other recovery vendor (by subrogation action or otherwise) at the

time the underlying assignment agreements were executed and/or made effective. The exemplar claims have been assigned to Plaintiffs pursuant to certain of the assignment agreements detailed in Appendix 2.

## JURISDICTION AND VENUE

50.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). At least one member of the class is a citizen of a different state than the Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

51.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

52.     Venue is proper pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d) because at all times material hereto, Defendants resided, transacted business, were found, or had agents in this district, and a substantial portion of the alleged activity affecting trade and commerce discussed below has been carried out in this district.

53.     This Court has personal jurisdiction over Defendants because Defendants are at home in this forum, and personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

54.     This is a class action lawsuit under the MSP Act, arising from Defendants' failure to reimburse conditional payments made by Plaintiffs' assignors and the Class Members on behalf of Enrollees for accident-related medical expenses.

55.     Defendants' liability to reimburse such conditional payments arises in one of two contexts: (i) where Defendants are obligated to pay for Enrollees' accident-related medical expenses in the first instance under a no-fault policy; or (ii) where Defendants have entered into

settlement agreements with Enrollees as a result of claims filed under liability insurance policies[5] issued by Defendants.

56.     On behalf of themselves and the Class Members, Plaintiffs seek, *inter alia*, double damages under the MSP Act's private cause of action for Defendants' failure to properly reimburse Plaintiffs' assignors' and the Class Members' conditional payments for Enrollees' accident-related medical expenses.

57.     Defendants have failed to fulfill statutory duties as primary payers. Specifically, Plaintiffs' data and certain other information obtained from third parties demonstrates that Defendants have repeatedly failed to pay or reimburse conditional payments by Plaintiffs' assignors and Class Members on behalf of Enrollees for accident-related medical expenses. Enrollees are Medicare beneficiaries who were enrolled in an MA Plan offered or managed by Plaintiffs' assignors and Class Members. Plaintiffs' assignors and the Class Members suffered an injury-in-fact from Defendants' failure to reimburse accident-related conditional payments and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

58.     Plaintiffs' assignors and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, Enrollees suffered injuries in connection with an accident, and Plaintiffs' assignors and the putative Class Members paid for accident-related medical expenses.[6] Because Enrollees were also covered by no-fault policies issued by

---

[5] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2). They include third-policy policies that provide for bodily injury coverage, uninsured motorist coverage, underinsured motorist coverage, umbrella coverage, and commercial coverage.

[6] MA Plans are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendants. MA Plans cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any expenses borne by MA Plans, and

Defendants, Defendants are primary payers under the MSP Act and either should have directly paid the accident-related medical expenses or reimbursed Plaintiffs' assignors and the putative Class Members for the conditional payments they made, but have failed to do so.

59.     Defendants have also failed to fulfill their statutory duties as primary payers upon entering into settlements with Enrollees. Upon information and belief, Defendants have entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies issued by Defendants. Accordingly, Defendants are primary payers under the MSP Act and either should have directly paid the Enrollees' accident-related medical expenses or reimbursed Plaintiffs' assignors and the putative Class Members for the conditional payments they made, but have failed to do so.

60.     The MSP Act does not require MA Plans to file a claim with or give notice to a primary payer, such as Defendants, as a condition to seeking reimbursement of conditional payments. *See MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764 (11th Cir. 2020).

61.     Rather than honor their obligations under the MSP Act, Defendants' actions and omission result in a failure to pay or reimburse the accident-related medical expenses paid by Plaintiffs' assignors and the Class Members on behalf of Enrollees. These steps include failing to report their primary payer responsibility to CMS and failing to coordinate benefits[7] with MA Plans, including with Plaintiffs on behalf of Plaintiffs' assignors.

62.     Upon information and belief, Defendants have failed to report their primary payer

---

Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

[7] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiffs' assignors for accident-related medical expenses on behalf of Plaintiffs' assignors' Enrollees, for which Defendants have a demonstrated responsibility to pay under the MSP Act. Upon information and belief, this underreporting and misreporting to CMS regarding payments and beneficiaries is widespread and a product of Defendants' systemic failures to investigate and obtain information required to determine a claimant's Medicare eligibility or enrollment in an MA Plan, or whether accident-related conditional payments have been made on the claimant's behalf.

63. As described in detail herein, Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Act and Medicare, because when MA Plans recover conditional payments, they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *Avandia*, 685 F.3d at 365. In fact, as explained by the Department of Health and Human Services, which administers the Medicare program and recently submitted an amicus brief to the Eleventh Circuit Court of Appeals in the *Ace* case, "payment[s] by primary payers reduce[] costs, and some of those savings are passed on to Medicare through reduced costs or to the beneficiaries through expanded services." *See MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, Case No. 18-12139, U.S. Court of Appeals, Eleventh Circuit, Brief for the United States as Amicus Curiae at 11.

64. Using the proprietary system designed and developed by Plaintiffs' related entity, MSP Recovery, LLC (the "MSP System"), Plaintiffs can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health

insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[8] to identify claims where Defendants have failed to honor their primary payer responsibilities on a class-wide basis.

65.     The MSP System utilizes ICD-9-CM or ICD-10-CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to gather information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

66.     The MSP System captures data from different sources, including CMS, ISO and publicly available police crash and incident reports, to identify unreimbursed conditional payments made by Plaintiffs' assignors for their Enrollees' accident-related medical expenses for which Defendants are responsible as the primary payer.

67.     Using the MSP System, Plaintiffs have identified numerous instances where: (1) Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability policies) to provide primary payment on behalf of Enrollees, and (2) Defendants are identified in police crash and incident reports[9] as the insurer obligated (as an at-fault insurer pursuant to a liability policy or contractually obligated pursuant to a no-fault policy) to provide primary payment on behalf of Enrollees for unreimbursed conditional payments made by

---

[8] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in Appendix 1 to this Complaint. *See also* Centers for Medicare and Medicaid Services, Medicare Learning Network, Medicare Billing: Form CMS-1500 and the 837 Professional (July 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

[9] Police crash and incident reports are only publicly available in a handful of jurisdictions, including Connecticut, Florida, Georgia, Ohio and Texas.

Plaintiffs' assignors for accident-related medical expenses.

68.     Plaintiffs have identified numerous instances where Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability policies) to provide primary payment on behalf of Enrollees. A list of instances is attached hereto as Exhibit B. The data columns of Exhibit B identify the Enrollee's full name ("Msp Memb Full Name"), the state in which the Enrollee resides or is located ("Msp Member State"), the assignor health plan for the Enrollee ("Assignor"), the date of loss/settlement ("Date of Loss/Settlement"), the reported primary payer ("Reporting Primary Payer"), the plan contract or policy number as reported by the primary payer ("Contract / Plan #"); and the type of policy under which the underlying claim was submitted ("Insurance Type").[10] The claims described on Exhibit B were identified by data analysis, specifically by comparing Plaintiffs' assignors' claims data against Defendants' filings with CMS under 42 U.S.C. § 1395y(b)(7)-(9), which obligates insurers like Defendants to report the claims for which they are primary payers.[11]

69.     Defendants' filings with CMS under 42 U.S.C. § 1395y(b)(7)-(9) "evidence Defendants' knowledge that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement. For the remaining claims, Defendants' settlement agreements with [Enrollees] show, at minimum, that Defendants had constructive knowledge that they owed primary payments." *Ace*, 974 F.3d at 1319; *see also United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 903 (11th Cir. 2003) (holding that a complaint "sufficiently alleges constructive

---

[10] Defendants have reported "Insurance Type" to CMS as either 14, which is "Medicare Secondary No-Fault insurance including auto is primary" or 47, which is "Medicare Secondary other liability insurance is primary."

[11] Additional information regarding the claimants identified on Exhibit B will be made available to Defendants upon the entry of a protective order. That information has been reserved in order to ensure the confidentiality of Protected Health Information ("PHI") in accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

knowledge" on behalf of the primary payer based on the primary payer's entry into a settlement agreement with beneficiaries).

70.     By virtue of Defendants' own actions, settlements, and reporting pursuant to 42 U.S.C. § 1395y(b)(7)-(9), Defendants had actual and constructive knowledge of their primary payer obligations to Plaintiffs' assignors, the Class Members, and the entire Medicare Advantage system, specifically that they were responsible to reimburse Plaintiffs' assignors and the Class Members for accident-related medical expenses.

71.     This claims identification process can also be applied class-wide to the data obtained from Class Members.

72.     Notably, the instances identified by the MSP System in Exhibit B are but a fraction of the potential claims at issue in this case and do not account for countless other instances in which Plaintiffs' assignors made conditional payments on behalf of their Enrollees but Defendants were not identified as the primary payer responsible for reimbursement because: (i) Defendants failed to report their primary payer responsibility as required by the MSP Act, (ii) Defendants withdrew their reporting to CMS based on a believed entitlement to do so, or (iii) police crash and incident reports that would identify a Defendant as the primary payer were not available to Plaintiffs in the jurisdiction in which the accident occurred.

73.     In their investigation of Defendants' practices of non-reporting primary payer responsibility pursuant to the MSP Act, Plaintiffs have identified 155 unique instances where Defendants either reported the existence of the claim to ISO and/or claims were identified in police crash and incident reports. However, no evidence exists of Defendants reporting these claims in their capacity as primary payers to CMS in accordance with Section 111. *See* Exhibit C. Upon information and belief, there are hundreds of additional instances like these where

Defendants have failed to meet their primary payer responsibility and report to CMS, forcing Plaintiffs' assignors to tender unreimbursed conditional payments for accident-related medical expenses that were subject to Defendants' overlapping primary coverage. Defendants have singular control over the information relating to those claims, which may be readily identified from Defendants' historical data.

74.     Utilizing the MSP System to perform data-matching of Plaintiffs' assignors' EDI with Defendants' EDI would allow Plaintiffs to identify with specificity all unreimbursed conditional payments for accident-related medical expenses, whether reported or unreported. Data matching is key to identifying the entire universe of unreimbursed conditional payments owed to Plaintiffs because it accounts for integral data points within the exclusive possession and control of Defendants. Using Plaintiffs' assignors' EDI and Defendants' EDI, data matching identifies unreimbursed conditional payments made by Plaintiffs' assignors for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible as the primary payer.

75.     This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify unreimbursed conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible.

76.     However, the entire universe of unreimbursed conditional payments owed to Plaintiffs and the scope of claims, beneficiaries, amounts, and assignors in this case cannot be fully identified without discovery and matching of the Parties' data.

77.     Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations,

including Defendants entering into settlements with Enrollees. To illustrate the types of claims at issue, and remove any doubt as to Plaintiffs' standing, Plaintiffs have identified multiple instances in which Plaintiffs' assignors made conditional payments for accident-related medical expenses which should have been reimbursed by Defendants. These specific examples of Defendants' failures to reimburse are alleged as exemplar claims below.

78.     Each of the exemplar claims set forth herein has been assigned to Plaintiffs. The claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiffs' right to recover for these claims.[12]

79.     The allegations set forth herein plainly demonstrate that Plaintiffs' assignors suffered damages as a direct result of Defendants' failures to reimburse conditional payments as required under the MSP Act.

80.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

81.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly classifies each Medicare payment for a particular item or service be "reasonable and necessary."

82.     Once an MA Plan makes a payment for medical items and services on behalf of its Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

---

[12] Plaintiff MSPRC's process for confirming that the exemplar claims are not excluded from the assigned claims is alleged in detail in Appendix 2 of this Complaint.

83. The items and services received by and paid on behalf of Plaintiffs' assignors' Enrollees, including the exemplar claims below, were reasonable and necessary to treat the injuries suffered by each Enrollee.

84. Plaintiffs set forth the exemplars below to illustrate Defendants' failure to fulfill their statutory duties as "no-fault" and/or other liability insurers. Defendants have reported and admitted their primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees and for which Plaintiffs' assignors made conditional payments.

### The No-Fault Claims Illustrating Standing

***The H.B. Claim Demonstrates MSPRC's Right to Recover for Defendants'***
***Failure to Meet their Reimbursement Obligations under the MSP Act***

85. H.B. was injured in an accident on September 13, 2017. As a direct and proximate result of the accident, H.B. sustained injuries that required medical items and services.

86. At the time of the accident, H.B.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 578220858D) issued by Scottsdale Insurance Company. By virtue of its policy, Defendant Scottsdale Insurance Company was contractually obligated to pay and provide primary coverage for H.B.'s accident-related medical expenses.

87. At the time of the accident and on the dates the accident-related medical treatment was rendered to H.B., H.B. was enrolled in an MA Plan issued and administered by AvMed, Inc. ("AvMed") pursuant to CMS Contract ID Number H1016.[13] AvMed is a Health Maintenance Organization Medicare Advantage Organization.

88. A list of H.B.'s diagnosis codes and injuries in connection with H.B.'s

---

[13] AvMed only operates under CMS Contract ID Number H1016.

accident-related treatment is attached hereto as Exhibit D.

89.    The medical services were rendered on September 13, 2017 and September 14, 2017. The medical providers subsequently issued to AvMed bills for payment of H.B.'s accident-related medical expenses.

90.    The medical providers billed and charged AvMed $4,940.00 for H.B.'s accident-related medical expenses, of which AvMed paid $2,215.98 between October 2, 2017 and April 9, 2018.

91.    By virtue of a no-fault policy which covered H.B. for the accident-related medical expenses detailed herein, Defendant Scottsdale Insurance Company is a primary payer responsible for payment and/or reimbursement of H.B.'s accident-related medical expenses.

92.    Defendant Scottsdale Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of H.B.'s accident-related medical expenses. Defendant reported responsibility under "Scottsdale Insurance Co," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[14]

93.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for H.B.'s accident-related injuries in the first instance, Defendant Scottsdale Insurance Company failed to reimburse AvMed's conditional payments, giving rise to a claim under the MSP Act.

---

[14] If Plaintiffs have identified the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

24i

94.     The H.B. claim was assigned to MSPRC and is not an excluded claim under any of the assignment's carveouts because: (1) the claim is not asserted against one of AvMed's network healthcare providers or current or former members, and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

95.     Accordingly, MSPRC is entitled to recover double the amount billed for H.B.'s accident-related medical expenses.

### The A.H. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

96.     A.H. was injured in an accident on February 3, 2019. As a direct and proximate result of the accident, A.H. sustained injuries that required medical items and services.

97.     At the time of the accident, A.H.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. ACP GLPO301885377 or 560370GI)[15] issued by Allied Property and Casualty Insurance Company or Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Allied Property and Casualty Insurance Company or Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for A.H.'s accident-related medical expenses.

98.     At the time of the accident and on the dates the accident-related medical treatment was rendered to A.H., A.H. was enrolled in an MA Plan issued and administered by AvMed pursuant to CMS Contract ID Number H1016.

99.     A list of A.H.'s diagnosis codes and injuries in connection with A.H.'s accident-related treatment is attached hereto as Exhibit E.

---

[15] Plaintiffs are unable to allege with certainty the no-fault policy number covering this accident because different policy numbers were identified in the Section 111 reporting data obtained from MyAbility.

25i

100.    The medical services were rendered on February 3, 2019 and February 4, 2019. The medical providers subsequently issued to AvMed bills for payment of A.H.'s accident-related medical expenses.

101.    The medical providers billed and charged AvMed $7,532.00 for A.H.'s accident-related medical expenses, of which AvMed paid $3,451.81 between February 11, 2019 and May 20, 2019.

102.    By virtue of a no-fault policy which covered A.H. for the accident-related medical expenses detailed herein, Defendant Allied Property and Casualty Insurance Company or Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of A.H.'s accident-related medical expenses.

103.    Defendant Allied Property and Casualty Insurance Company or Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of A.H.'s accident-related medical expenses. Defendant reported responsibility under "Allied P&amp;C Insurance Company," "Nationwide Mutual Insurance Comp," and "Nationwide," and because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[16]

104.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for A.H.'s accident-related injuries in the first instance, Defendant Allied Property and Casualty Insurance Company or

---

[16] Defendants' reporting practices prohibit Plaintiffs from accurately identifying the responsible insurer for the A.H. claim. Plaintiffs reserve the right to amend this allegation to identify the correct defendant.

Defendant Nationwide Mutual Insurance Company failed to reimburse AvMed's conditional payments, giving rise to a claim under the MSP Act.

105.    The A.H. claim was assigned to MSPRC and is not an excluded claim under any of the assignment's carveouts because: (1) the claim is not asserted against one of AvMed's network healthcare providers or current or former members, and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

106.    Accordingly, MSPRC is entitled to recover double the amount billed for A.H.'s accident-related medical expenses.

### The P.J. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

107.    P.J. was injured in an accident on September 10, 2016. As a direct and proximate result of the accident, P.J. sustained injuries that required medical items and services.

108.    At the time of the accident, P.J.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. PPDM0024369420) issued by Nationwide Mutual Insurance Company. By virtue of its no-fault policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for P.J.'s accident-related medical expenses.

109.    At the time of the accident and on the dates the accident-related medical treatment was rendered to P.J., P.J. was enrolled in an MA Plan issued and administered by AvMed pursuant to CMS Contract ID Number H1016.

110.    A list of P.J.'s diagnosis codes and injuries in connection with P.J.'s accident-related treatment is attached hereto as Exhibit F.

111.    The medical services were rendered on September 10, 2016 and September 11,

2016. The medical providers subsequently issued to AvMed bills for payment of P.J.'s accident-related medical expenses.

112. The medical providers billed and charged AvMed $6,017.00 for P.J.'s accident-related medical expenses, of which AvMed paid $2,260.73 between September 26, 2016 and December 4, 2017.

113. By virtue of a no-fault policy which covered P.J. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of P.J.'s accident-related medical expenses.

114. Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of P.J.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[17]

115. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for P.J.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse AvMed's conditional payments, giving rise to a claim under the MSP Act.

116. The P.J. claim was assigned to MSPRC and is not an excluded claim under any of the assignment's carveouts because: (1) the claim is not asserted against one of AvMed's network

---

[17] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

healthcare providers or current or former members, and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

117.    Accordingly, MSPRC is entitled to recover double the amount billed for P.J.'s accident-related medical expenses.

### *The H.R. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act*

118.    H.R. was injured in an accident on October 19, 2018. As a direct and proximate result of the accident, H.R. sustained injuries that required medical items and services.

119.    At the time of the accident, H.R.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. PPNM0069650535) issued by Nationwide Insurance Company of America or Nationwide Mutual Insurance Company.[18] By virtue of its no-fault policy, Defendant Nationwide Insurance Company of America or Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for H.R.'s accident-related medical expenses.

120.    At the time of the accident and on the dates the accident-related medical treatment was rendered to H.R., H.R. was enrolled in an MA Plan issued and administered by AvMed pursuant to CMS Contract ID Number H1016.

121.    A list of H.R.'s diagnosis codes and injuries in connection with H.R.'s accident-related treatment is attached hereto as Exhibit G.

122.    The medical services were rendered between October 19, 2018 and November 15, 2018. The medical providers subsequently issued to AvMed bills for payment of H.R.'s

---

[18] Plaintiffs are unable to allege with certainty the responsible insurer for this accident because two Nationwide entities were identified in Defendants' Section 111 reporting data obtained from MyAbility and the Florida Traffic Crash Report.

accident-related medical expenses.

123. The medical providers billed and charged AvMed for H.R.'s accident-related medical expenses, of which AvMed paid $13,759.10 between November 19, 2018 and May 6, 2019.

124. By virtue of a no-fault policy which covered H.R. for the accident-related medical expenses detailed herein, Defendant Nationwide Insurance Company of America or Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of H.R.'s accident-related medical expenses.

125. Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of H.R.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[19]

126. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for H.R.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse AvMed's conditional payments, giving rise to a claim under the MSP Act.

127. The H.R. claim was assigned to MSPRC and is not an excluded claim under any of the assignment's carveouts because: (1) the claim is not asserted against one of AvMed's

_____

[19] Defendants' generic reporting practices prohibit Plaintiffs from accurately identifying the responsible insurer for the H.R. claim. Plaintiffs reserve the right to amend this allegation to identify the correct defendant.

network healthcare providers or current or former members, and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

128.    Accordingly, MSPRC is entitled to recover double the amount billed for H.R.'s accident-related medical expenses.

### The Y.H. Claim Demonstrates Series 44's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

129.    Y.H. was injured in an accident on August 6, 2018. As a direct and proximate result of the accident, Y.H. sustained injuries that required medical items and services.

130.    At the time of the accident, Y.H.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. SPP00000062567V) issued by Nationwide Mutual Insurance Company. By virtue of its no-fault policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for Y.H.'s accident-related medical expenses.

131.    At the time of the accident and on the dates the accident-related medical treatment was rendered to Y.H., Y.H. was enrolled in an MA Plan issued and administered by Blue Cross & Blue Shield of Rhode Island ("BCBSRI") pursuant to CMS Contract ID Number H4152. BCBSRI is a Health Maintenance Organization Medicare Advantage Organization.

132.    A list of Y.H.'s diagnosis codes and injuries in connection with Y.H.'s accident-related treatment is attached hereto as Exhibit H.

133.    The medical services were rendered between August 6, 2018 and September 11, 2018. The medical providers subsequently issued to BCBSRI bills for payment of Y.H.'s accident-related medical expenses.

134.    The medical providers billed and charged BCBSRI $1,710.00 for Y.H.'s

accident-related medical expenses, of which BCBSRI paid $342.69 between August 10, 2018 and September 14, 2018.

135.     By virtue of a no-fault policy which covered Y.H. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of Y.H.'s accident-related medical expenses.

136.     Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of Y.H.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[20]

137.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse BCBSRI. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for Y.H.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse BCBSRI's conditional payments, giving rise to a claim under the MSP Act.

138.     Accordingly, Series 44[21] is entitled to recover double the amount billed for Y.H.'s accident-related medical expenses.

### The A.R. Claim Demonstrates Series 44's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

139.     A.R. was injured in an accident on March 13, 2019. As a direct and proximate

[20] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

[21] The Y.H. claim was part of the claims data sent to MSP Recovery, LLC, and included as part of the Assigned Claims assigned to MSP Recovery, LLC, and ultimately, to Series 44.

result of the accident, A.R. sustained injuries that required medical items and services.

140.    At the time of the accident, A.R.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 5138E 378554) issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for A.R.'s accident-related medical expenses.

141.    At the time of the accident and on the dates the accident-related medical treatment was rendered to A.R., A.R. was enrolled in an MA Plan issued and administered by BCBSRI pursuant to CMS Contract ID Number H4152.

142.    A list of A.R.'s diagnosis codes and injuries in connection with A.R.'s accident-related treatment is attached hereto as Exhibit I.

143.    The medical services were rendered between March 13, 2019 and April 1, 2019. The medical providers subsequently issued to BCBSRI bills for payment of A.R.'s accident-related medical expenses.

144.    The medical providers billed and charged BCBSRI $5,287.93 for A.R.'s accident-related medical expenses, of which BCBSRI paid $1,627.30 on April 2, 2019 and April 5, 2019.

145.    By virtue of a no-fault policy which covered A.R. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of A.R.'s accident-related medical expenses.

146.    Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of

A.R.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[22]

147.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse BCBSRI. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for A.R.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse BCBSRI's conditional payments, giving rise to a claim under the MSP Act.

148.    Accordingly, Series 44[23] is entitled to recover double the amount billed for A.R.'s accident-related medical expenses.

### The I.D. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

149.    I.D. was injured in an accident on May 21, 2014. As a direct and proximate result of the accident, I.D. sustained injuries that required medical items and services.

150.    At the time of the accident, I.D.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 045228423) issued by Victoria Fire & Casualty Company. By virtue of its policy, Defendant Victoria Fire & Casualty Company was contractually obligated to pay and provide primary coverage for I.D.'s accident-related medical expenses.

151.    At the time of the accident and on the dates the accident-related medical treatment

_____

[22] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

[23] The A.R. claim was part of the claims data sent to MSP Recovery, LLC, and included as part of the Assigned Claims assigned to MSP Recovery, LLC, and ultimately, to Series 44.

was rendered to I.D., I.D. was enrolled in an MA Plan issued and administered by ConnectiCare, Inc. ("ConnectiCare"), pursuant to CMS Contract ID Number H3528. ConnectiCare is a Health Maintenance Organization Medicare Advantage Organization.

152. A list of I.D.'s diagnosis codes and injuries in connection with I.D.'s accident-related treatment is attached hereto as Exhibit J.

153. The medical services were rendered on May 21, 2014 and May 27, 2014. The medical providers subsequently issued to ConnectiCare bills for payment of I.D.'s accident-related medical expenses.

154. The medical providers billed and charged ConnectiCare $19,202.05 for I.D.'s accident-related medical expenses, of which ConnectiCare paid $1,310.72 between June 12, 2014 and July 18, 2016.

155. By virtue of a no-fault policy which covered I.D. for the accident-related medical expenses detailed herein, Defendant Victoria Fire & Casualty Company is a primary payer responsible for payment and/or reimbursement of I.D.'s accident-related medical expenses.

156. Defendant Victoria Fire & Casualty Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of I.D.'s accident-related medical expenses. Defendant reported responsibility under "Victoria Fire & Casualty Company," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[24]

157. This reporting demonstrates that Defendant was aware of the accident and its

---

[24] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for I.D.'s accident-related injuries in the first instance, Defendant Victoria Fire & Casualty Company failed to reimburse ConnectiCare's conditional payments, giving rise to a claim under the MSP Act.

158.    Plaintiffs reviewed ConnectiCare's carve-out list and confirmed that I.D. was not on the carve-out list. The I.D. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by ConnectiCare between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against ConnectiCare's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

159.    Accordingly, MSPRC is entitled to recover double the amount billed for I.D.'s accident-related medical expenses.

### The G.M. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

160.    G.M. was injured in an accident on March 3, 2015. As a direct and proximate result of the accident, G.M. sustained injuries that required medical items and services.

161.    At the time of the accident, G.M.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 5106E 019855) issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for G.M.'s accident-related medical expenses.

162.    At the time of the accident and on the dates the accident-related medical treatment

was rendered to G.M., G.M. was enrolled in an MA Plan issued and administered by ConnectiCare pursuant to CMS Contract ID Number H3528.

163. A list of G.M.'s diagnosis codes and injuries in connection with G.M.'s accident-related treatment is attached hereto as Exhibit K.

164. The medical services were rendered on March 9, 2015. The medical providers subsequently issued to ConnectiCare bills for payment of G.M.'s accident-related medical expenses.

165. The medical providers billed and charged ConnectiCare $128.00 for G.M.'s accident-related medical expenses, of which ConnectiCare paid $60.00 on March 19, 2015.

166. By virtue of a no-fault policy which covered G.M. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of G.M.'s accident-related medical expenses.

167. Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of G.M.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[25]

168. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the

---

[25] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

corresponding admission that it was statutorily obligated to pay for G.M.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse ConnectiCare's conditional payments, giving rise to a claim under the MSP Act.

169.    Plaintiffs reviewed ConnectiCare's carve-out list and confirmed that G.M. was not on the carve-out list. The G.M. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by ConnectiCare between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against ConnectiCare's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

170.    Accordingly, MSPRC is entitled to recover double the amount billed for G.M.'s accident-related medical expenses.

### The S.H. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

171.    S.H. was injured in an accident on May 10, 2015. As a direct and proximate result of the accident, S.H. sustained injuries that required medical items and services.

172.    At the time of the accident, S.H.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 6631P 977187) issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for S.H.'s accident-related medical expenses.

173.    At the time of the accident and on the dates the accident-related medical treatment was rendered to S.H., S.H. was enrolled in an MA Plan issued and administered by Health

Insurance Plan of Greater New York ("HIPGNY"), pursuant to CMS Contract ID Number H3330 or H3314. HIPGNY is a Health Maintenance Organization and Preferred Provider Organization Medicare Advantage Organization.

174. A list of S.H.'s diagnosis codes and injuries in connection with S.H.'s accident-related treatment is attached hereto as Exhibit L.

175. The medical services were rendered between May 10, 2015 and June 16, 2015. The medical providers subsequently issued to HIPGNY bills for payment of S.H.'s accident-related medical expenses.

176. The medical providers billed and charged HIPGNY $1,460.00 for S.H.'s accident-related medical expenses, of which HIPGNY paid $330.00 on July 13, 2015 and August 17, 2015.

177. By virtue of a no-fault policy which covered S.H. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of S.H.'s accident-related medical expenses.

178. Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of S.H.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[26]

179. This reporting demonstrates that Defendant was aware of the accident and its

---

[26] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

responsibility to reimburse HIPGNY. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for S.H.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse HIPGNY's conditional payments, giving rise to a claim under the MSP Act.

180.    Plaintiffs reviewed HIPGNY's carve-out list and confirmed that S.H. was not on the carve-out list. The S.H. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by HIPGNY between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against HIPGNY's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

181.    Accordingly, MSPRC is entitled to recover double the amount billed for S.H.'s accident-related medical expenses.

### The R.L. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

182.    R.L. was injured in an accident on November 28, 2016. As a direct and proximate result of the accident, R.L. sustained injuries that required medical items and services.

183.    At the time of the accident, R.L.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. CPP135926A) issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for R.L.'s accident-related medical expenses.

184.    At the time of the accident and on the dates the accident-related medical treatment was rendered to R.L., R.L. was enrolled in an MA Plan issued and administered by HIPGNY

pursuant to CMS Contract ID Number H3330 or H3314.

185. A list of R.L.'s diagnosis codes and injuries in connection with R.L.'s accident-related treatment is attached hereto as Exhibit M.

186. The medical services were rendered between November 28, 2016 and December 27, 2016. The medical providers subsequently issued to HIPGNY bills for payment of R.L.'s accident-related medical expenses.

187. The medical providers billed and charged HIPGNY $176,982.00 for R.L.'s accident-related medical expenses, of which HIPGNY paid $10,396.00 between December 13, 2016 to February 17, 2017.

188. By virtue of a no-fault policy which covered R.L. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of R.L.'s accident-related medical expenses.

189. Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of R.L.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[27]

190. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIPGNY. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for R.L.'s accident-related

---

[27] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

41i

injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse HIPGNY's conditional payments, giving rise to a claim under the MSP Act.

191.    Plaintiffs reviewed HIPGNY's carve-out list and confirmed that R.L. was not on the carve-out list. The R.L. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by HIPGNY between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against HIPGNY's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

192.    Accordingly, MSPRC is entitled to recover double the amount billed for R.L.'s accident-related medical expenses.

### The G.M. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

193.    G.M. was injured in an accident on July 20, 2016. As a direct and proximate result of the accident, G.M. sustained injuries that required medical items and services.

194.    At the time of the accident, G.M.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 6631F 167653) issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for G.M.'s accident-related medical expenses.

195.    At the time of the accident and on the dates the accident-related medical treatment was rendered to G.M., G.M. was enrolled in an MA Plan issued and administered by HIPGNY pursuant to CMS Contract ID Number H3330 or H3314.

196.    A list of G.M.'s diagnosis codes and injuries in connection with G.M.'s

accident-related treatment is attached hereto as Exhibit N.

197.   The medical services were rendered between July 20, 2016 and September 15, 2016. The medical providers subsequently issued to HIPGNY bills for payment of G.M.'s accident-related medical expenses.

198.   The medical providers billed and charged HIPGNY $4,005.62 for G.M.'s accident-related medical expenses, of which HIPGNY paid $1,347.62 between September 30, 2016 and March 3, 2017.

199.   By virtue of a no-fault policy which covered G.M. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of G.M.'s accident-related medical expenses.

200.   Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of G.M.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[28]

201.   This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIPGNY. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for G.M.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to

---

[28] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

reimburse HIPGNY's conditional payments, giving rise to a claim under the MSP Act.

202.    Plaintiffs reviewed HIPGNY's carve-out list and confirmed that G.M. was not on the carve-out list. The G.M. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by HIPGNY between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against HIPGNY's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

203.    Accordingly, MSPRC is entitled to recover double the amount billed for G.M.'s accident-related medical expenses.

### The L.R. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Act

204.    L.R. was injured in an accident on June 7, 2017. As a direct and proximate result of the accident, L.R. sustained injuries that required medical items and services.

205.    At the time of the accident, L.R.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. ACP BPAK546491773) issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for L.R.'s accident-related medical expenses.

206.    At the time of the accident and on the dates the accident-related medical treatment was rendered to L.R., L.R. was enrolled in an MA Plan issued and administered by HIPGNY pursuant to CMS Contract ID Number H3330 or H3314.

207.    A list of L.R.'s diagnosis codes and injuries in connection with L.R.'s accident-related treatment is attached hereto as Exhibit O.

208. The medical services were rendered between June 7, 2017 and August 30, 2017. The medical providers subsequently issued to HIPGNY bills for payment of L.R.'s accident-related medical expenses.

209. The medical providers billed and charged HIPGNY $65,731.04 for L.R.'s accident-related medical expenses, of which HIPGNY paid $23,042.04 between June 30, 2017 and September 22, 2017.

210. By virtue of a no-fault policy which covered L.R. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company is a primary payer responsible for payment and/or reimbursement of L.R.'s accident-related medical expenses.

211. Defendant Nationwide Mutual Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of L.R.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Mutual Insurance Comp," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[29]

212. This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HIPGNY. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for L.R.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company failed to reimburse HIPGNY's conditional payments, giving rise to a claim under the MSP Act.

213. Plaintiffs reviewed HIPGNY's carve-out list and confirmed that L.R. was not on

---

[29] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant.

the carve-out list. The L.R. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by HIPGNY between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against HIPGNY's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

214.    Accordingly, MSPRC is entitled to recover double the amount billed for L.R.'s accident-related medical expenses.

### The Settlement Claims Illustrating Standing

*The L.B. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act*

215.    L.B. was injured in an accident on June 18, 2015. As a direct and proximate result of the accident, L.B. sustained injuries that required medical items and services.

216.    At the time of the accident, L.B.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 7709PE209973) issued by Nationwide Mutual Insurance Company, Allied Insurance Company of America, Allied Property and Casualty Insurance Company, AMCO Insurance Company, Colonial County Mutual Insurance Company, Depositors Insurance Company, Freedom Specialty Insurance Company, Harleysville Group Inc., Harleysville Insurance Company, Harleysville Preferred Insurance Company, Harleysville Worcester Insurance Company, Nationwide Affinity Insurance Company of America, Nationwide Agribusiness Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Scottsdale Insurance Company, Titan Auto Insurance of New Mexico, Inc., Titan Insurance Company,

Victoria Fire & Casualty Company, Victoria National Insurance Company, or Victoria Select Insurance Company.[30] By virtue of its policy, Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company was contractually obligated to pay and provide primary coverage for L.B.'s accident-related medical expenses.

217.    At the time of the accident and on the dates the accident-related medical treatment was rendered to L.B., L.B. was enrolled in an MA Plan issued and administered by AvMed pursuant to CMS Contract ID Number H1016.

218.    A list of L.B.'s diagnosis codes and injuries in connection with L.B.'s accident-related treatment is attached hereto as Exhibit P.

_____

[30] Plaintiffs are unable to allege with certainty the responsible insurer for this accident because Defendants' Section 111 reporting data identifies the responsible insurer as "Nationwide Insurance."

219.    The medical services were rendered on June 18, 2015. The medical providers subsequently issued bills to AvMed for payment of L.B.'s accident-related medical expenses.

220.    The medical providers billed and charged AvMed for L.B.'s accident-related medical expenses, of which AvMed paid $328.84 on September 7, 2015.

221.    By virtue of a no-fault policy which covered L.B. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company is a primary payer responsible for payment and/or reimbursement of L.B.'s accident-related medical expenses.

222.    Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant

Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of L.B.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide Insurance," and because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[31]

223.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for L.B.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance

---

[31] Defendants' generic reporting practices prohibit Plaintiffs from accurately identifying the responsible insurer for the L.B. claim. Plaintiffs reserve the right to amend this allegation to add the correct defendant upon receipt of the settlement agreement between the correct defendant and L.B.

Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company failed to reimburse AvMed's conditional payments, giving rise to a claim under the MSP Act.

224.    The L.B. claim was assigned to MSPRC and is not an excluded claim under any of the assignment's carveouts because: (1) the claim is not asserted against one of AvMed's network healthcare providers or current or former members, and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

225.    Accordingly, MSPRC is entitled to recover double the amount billed for L.B.'s accident-related medical expenses.

### *The K.M. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act*

226.    K.M. was injured in an accident on January 14, 2019. As a direct and proximate result of the accident, K.M. sustained injuries that required medical items and services.

227.    At the time of the accident, K.M.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. 462346GI) issued by Nationwide Mutual Insurance Company, Allied Insurance Company of America, Allied Property and Casualty Insurance Company, AMCO Insurance Company, Colonial County Mutual Insurance Company, Depositors Insurance Company, Freedom Specialty Insurance Company, Harleysville Group Inc., Harleysville Insurance Company, Harleysville Preferred Insurance Company, Harleysville Worcester Insurance Company, Nationwide Affinity Insurance Company of America, Nationwide Agribusiness Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Scottsdale Insurance Company, Titan Auto Insurance of New Mexico, Inc., Titan Insurance Company, Victoria Fire & Casualty Company, Victoria National Insurance Company, or Victoria Select Insurance Company.[32] By virtue of its policy, Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance

---

[32] Plaintiffs are unable to allege with certainty the responsible insurer for this accident because Defendants' Section 111 reporting data identifies the responsible insurer as "Nationwide."

Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company was contractually obligated to pay and provide primary coverage for K.M.'s accident-related medical expenses.

228. At the time of the accident and on the dates the accident-related medical treatment was rendered to K.M., K.M. was enrolled in an MA Plan issued and administered by AvMed pursuant to CMS Contract ID Number H1016.

229. A list of K.M.'s diagnosis codes and injuries in connection with K.M.'s accident-related treatment is attached hereto as Exhibit Q.

230. The medical services were rendered on January 15, 2019 and January 22, 2019. The medical providers subsequently issued bills to AvMed for payment of K.M.'s accident-related medical expenses.

231. The medical providers billed and charged AvMed $3,676.50 for K.M.'s accident-related medical expenses, of which AvMed paid $450.86 on February 4, 2019 and May 27, 2019.

232. By virtue of a no-fault policy which covered K.M. for the accident-related medical expenses detailed herein, Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company,

Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company is a primary payer responsible for payment and/or reimbursement of K.M.'s accident-related medical expenses.

233. Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company, Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select

53i

Insurance Company reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of K.M.'s accident-related medical expenses. Defendant reported responsibility under "Nationwide," and because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[33]

234.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for K.M.'s accident-related injuries in the first instance, Defendant Nationwide Mutual Insurance Company, Defendant Allied Insurance Company of America, Defendant Allied Property and Casualty Insurance Company, Defendant AMCO Insurance Company, Defendant Colonial County Mutual Insurance Company, Defendant Depositors Insurance Company, Defendant Freedom Specialty Insurance Company, Defendant Harleysville Group Inc., Defendant Harleysville Insurance Company, Defendant Harleysville Preferred Insurance Company, Defendant Harleysville Worcester Insurance Company, Defendant Nationwide Affinity Insurance Company of America, Defendant Nationwide Agribusiness Insurance Company, Defendant Nationwide Assurance Company, Defendant Nationwide General Insurance Company, Defendant Nationwide Insurance Company of America, Defendant Nationwide Mutual Fire Insurance Company, Defendant Nationwide Property and Casualty Insurance Company, Defendant Scottsdale Insurance Company, Defendant Titan Auto Insurance of New Mexico, Inc., Defendant Titan Insurance Company,

---

[33] Defendants' generic reporting practices prohibit Plaintiffs from accurately identifying the responsible insurer for the K.M. claim. Plaintiffs reserve the right to amend this allegation to add the correct defendant upon receipt of the settlement agreement between the correct defendant and K.M.

Defendant Victoria Fire & Casualty Company, Defendant Victoria National Insurance Company, or Defendant Victoria Select Insurance Company failed to reimburse AvMed's conditional payments, giving rise to a claim under the MSP Act.

235.    The K.M. claim was assigned to MSPRC and is not an excluded claim under any of the assignment's carveouts because: (1) the claim is not asserted against one of AvMed's network healthcare providers or current or former members, and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

236.    Accordingly, MSPRC is entitled to recover double the amount billed for K.M.'s accident-related medical expenses.

### The J.F. Claim Demonstrates Series 44's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act

237.    J.F. was injured in an accident on August 18, 2017. As a direct and proximate result of the accident, J.F. sustained injuries that required medical items and services.

238.    At the time of the accident, J.F.'s accident-related medical costs and expenses were covered under a liability policy (Policy No. CPS3011463) issued by Scottsdale Insurance Company. By virtue of its policy, Defendant Scottsdale Insurance Company was contractually obligated to pay and provide primary coverage for J.F.'s accident-related medical expenses.

239.    At the time of the accident and on the dates the accident-related medical treatment was rendered to J.F., J.F. was enrolled in an MA Plan issued and administered by BCBSRI pursuant to CMS Contract ID Number H4152.

240.    A list of J.F.'s diagnosis codes and injuries in connection with J.F.'s accident-related treatment is attached hereto as Exhibit R.

241.    The medical services were rendered between August 18, 2017 and December 20,

2017. The medical providers subsequently issued bills to BCBSRI for payment of J.F.'s accident-related medical expenses.

242.    The medical providers billed and charged BCBSRI $18,801.42 for J.F.'s accident-related medical expenses, of which BCBSRI paid $2,049.72 between September 4, 2017 and January 2, 2018.

243.    Specifically, at the time of the accident, the tortfeasor responsible for the incident that led to J.F.'s injuries was covered by a liability policy issued by Defendant Scottsdale Insurance Company. Defendant Scottsdale Insurance Company settled J.F.'s bodily injury claim on behalf of its insured and, as a result, was primarily responsible for the costs of J.F.'s accident-related medical expenses.

244.    As a result of that settlement, Defendant Scottsdale Insurance Company reported its primary payer responsibility to CMS, including information regarding the reporting entity and the type of insurance policy involved. Defendant reported responsibility under "Scottsdale Insurance," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[34]

245.    Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for J.F.'s accident-related injuries, Defendant Scottsdale Insurance Company failed to reimburse BCBSRI's conditional payments, giving rise to a claim under the MSP Act.

246.    Accordingly, Plaintiff Series 44[35] is entitled to recover double the amount billed

---

[34] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant after receipt of the settlement agreement between the correct defendant and J.F.

[35] The J.F. claim was part of the claims data sent to MSP Recovery, LLC, and included as part of the Assigned Claims assigned to MSP Recovery, LLC, and ultimately, to Series 44.

for J.F.'s accident-related medical expenses.

### *The D.B. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act*

247. D.B. was injured in an accident on January 28, 2015. As a direct and proximate result of the accident, D.B. sustained injuries that required medical items and services.

248. At the time of the accident, D.B.'s accident-related medical costs and expenses were covered under a liability policy (Policy No. N1252985003) issued by Harleysville Group Inc. By virtue of its policy, Defendant Harleysville Group Inc. was contractually obligated to pay and provide primary coverage for D.B.'s accident-related medical expenses.

249. At the time of the accident and on the dates the accident-related medical treatment was rendered to D.B., D.B. was enrolled in an MA Plan issued and administered by ConnectiCare pursuant to CMS Contract ID Number H3528.

250. A list of D.B.'s diagnosis codes and injuries in connection with D.B.'s accident-related treatment is attached hereto as Exhibit S.

251. The medical services were rendered between January 28, 2015 and September 18, 2015. The medical providers subsequently issued bills to ConnectiCare for payment of D.B.'s accident-related medical expenses.

252. The medical providers billed and charged ConnectiCare $6,795.98 for D.B.'s accident-related medical expenses, of which ConnectiCare paid $3,077.05 between February 9, 2015 and October 1, 2015.

253. Specifically, at the time of the accident, the tortfeasor responsible for the incident that led to D.B.'s injuries was covered by a liability policy issued by Defendant Harleysville Group Inc. Defendant Harleysville Group Inc. settled D.B.'s bodily injury claim on behalf of its

insured and, as a result, was primarily responsible for the costs of D.B.'s accident-related medical expenses.

254.    As a result of that settlement, Defendant Harleysville Group Inc. reported its primary payer responsibility to CMS, including information regarding the reporting entity and the type of insurance policy involved. Defendant reported responsibility under "Harleysville Group," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[36]

255.    Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for D.B.'s accident-related injuries, Defendant Harleysville Group Inc. failed to reimburse ConnectiCare's conditional payments, giving rise to a claim under the MSP Act.

256.    Plaintiffs reviewed ConnectiCare's carve-out list and confirmed that D.B. was not on the carve-out list. The D.B. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by ConnectiCare between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against ConnectiCare's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

257.    Accordingly, MSPRC is entitled to recover double the amount billed for D.B.'s accident-related medical expenses.

---

[36] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant after receipt of the settlement agreement between the correct defendant and D.B.

*The P.S. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act*

258.    P.S. was injured in an accident on February 27, 2017. As a direct and proximate result of the accident, P.S. sustained injuries that required medical items and services.

259.    At the time of the accident, P.S.'s accident-related medical costs and expenses were covered under a liability policy (Policy No. 049321626 or 385)[37] issued by Nationwide General Insurance Company. By virtue of its policy, Defendant Nationwide General Insurance Company was contractually obligated to pay and provide primary coverage for P.S.'s accident-related medical expenses.

260.    At the time of the accident and on the dates the accident-related medical treatment was rendered to P.S., P.S. was enrolled in an MA Plan issued and administered by ConnectiCare pursuant to CMS Contract ID Number H3528.

261.    A list of P.S.'s diagnosis codes and injuries in connection with P.S.'s accident-related treatment is attached hereto as Exhibit T.

262.    The medical services were rendered between February 27, 2017 and May 18, 2017. The medical providers subsequently issued bills to ConnectiCare for payment of P.S.'s accident-related medical expenses.

263.    The medical providers billed and charged ConnectiCare $10,982.20 for P.S.'s accident-related medical expenses, of which ConnectiCare paid $1,544.23 between March 13, 2017 and July 13, 2017.

264.    Specifically, at the time of the accident, the tortfeasor responsible for the incident

---

[37] Plaintiffs are unable to allege with certainty the liability policy number for this accident because different Contract / Plan numbers were identified in Defendants' Section 111 reporting data obtained from MyAbility.

that led to P.S.'s injuries was covered by a liability policy issued by Defendant Nationwide General Insurance Company. Defendant Nationwide General Insurance Company settled P.S.'s bodily injury claim on behalf of its insured and, as a result, was primarily responsible for the costs of P.S.'s accident-related medical expenses.

265. As a result of that settlement, Defendant Nationwide General Insurance Company reported its primary payer responsibility to CMS, including information regarding the reporting entity and the type of insurance policy involved. Defendant reported responsibility under "Nationwide General Insurance," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[38]

266. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for P.S.'s accident-related injuries, Defendant Nationwide General Insurance Company failed to reimburse ConnectiCare's conditional payments, giving rise to a claim under the MSP Act.

267. Plaintiffs reviewed ConnectiCare's carve-out list and confirmed that P.S. was not on the carve-out list. The P.S. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by ConnectiCare between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against ConnectiCare's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

268. Accordingly, MSPRC is entitled to recover double the amount billed for P.S.'s

---

[38] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant after receipt of the settlement agreement between the correct defendant and P.S.

accident-related medical expenses.

### The H.M. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act

269. H.M. was injured in an accident on September 16, 2016. As a direct and proximate result of the accident, H.M. sustained injuries that required medical items and services.

270. At the time of the accident, H.M.'s accident-related medical costs and expenses were covered under a liability policy (Policy No. 903433GD or 6631F142960)[39] issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for H.M.'s accident-related medical expenses.

271. At the time of the accident and on the dates the accident-related medical treatment was rendered to H.M., H.M. was enrolled in an MA Plan issued and administered by HIPGNY pursuant to CMS Contract ID Number H3330 or H3314.

272. A list of H.M.'s diagnosis codes and injuries in connection with H.M.'s accident-related treatment is attached hereto as Exhibit U.

273. The medical services were rendered between September 16, 2016 and September 20, 2016. The medical providers subsequently issued bills to HIPGNY for payment of H.M.'s accident-related medical expenses.

274. The medical providers billed and charged HIPGNY $1,210.00 for H.M.'s accident-related medical expenses, of which HIPGNY paid $674.00 between September 30,

---

[39] Plaintiffs are unable to allege with certainty the liability policy number for this accident because different policy numbers were identified in Defendants' Section 111 reporting data obtained from MyAbility and the claims data reported to ISO.

2016 and November 11, 2016.

275.    Specifically, at the time of the accident, the tortfeasor responsible for the incident that led to H.M.'s injuries was covered by a liability policy issued by Defendant Nationwide Mutual Insurance Company. Defendant Nationwide Mutual Insurance Company settled H.M.'s bodily injury claim on behalf of its insured and, as a result, was primarily responsible for the costs of H.M.'s accident-related medical expenses.

276.    As a result of that settlement, Defendant Nationwide Mutual Insurance Company reported its primary payer responsibility to CMS, including information regarding the reporting entity and the type of insurance policy involved. Defendant reported responsibility under "Nationwide Insurance," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[40]

277.    Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for H.M.'s accident-related injuries, Defendant Nationwide Mutual Insurance Company failed to reimburse HIPGNY's conditional payments, giving rise to a claim under the MSP Act.

278.    Plaintiffs reviewed HIPGNY's carve-out list and confirmed that H.M. was not on the carve-out list. The H.M. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by HIPGNY between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against HIPGNY's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

---

[40] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant after receipt of the settlement agreement between the correct defendant and H.M.

279. Accordingly, MSPRC is entitled to recover double the amount billed for H.M.'s accident-related medical expenses.

### The P.M. Claim Demonstrates MSPRC's Right to Recover for Defendants' Failure to Meet its Other Liability Reimbursement Obligations Under the MSP Act

280. P.M. was injured in an accident on February 24, 2015. As a direct and proximate result of the accident, P.M. sustained injuries that required medical items and services.

281. At the time of the accident, P.M.'s accident-related medical costs and expenses were covered under a liability policy (Policy No. 011468 or ACPBPSM5425811759)[41] issued by Nationwide Mutual Insurance Company. By virtue of its policy, Defendant Nationwide Mutual Insurance Company was contractually obligated to pay and provide primary coverage for P.M.'s accident-related medical expenses.

282. At the time of the accident and on the dates the accident-related medical treatment was rendered to P.M., P.M. was enrolled in an MA Plan issued and administered by HIPGNY pursuant to CMS Contract ID Number H3330 or H3314.

283. A list of P.M.'s diagnosis codes and injuries in connection with P.M.'s accident-related treatment is attached hereto as Exhibit V.

284. The medical services were rendered between February 25, 2015 and October 14, 2015. The medical providers subsequently issued bills to HIPGNY for payment of P.M.'s accident-related medical expenses.

285. The medical providers billed and charged HIPGNY $13,566.00 for P.M.'s accident-related medical expenses, of which HIPGNY paid $2,637.00 between April 3, 2015 and

---

[41] Plaintiffs are unable to allege with certainty the liability policy number for this accident because different policy numbers were identified in Defendants' Section 111 reporting data obtained from MyAbility and the claims data reported to ISO.

July 14, 2015.

286.    Specifically, at the time of the accident, the tortfeasor responsible for the incident that led to P.M.'s injuries was covered by a liability policy issued by Defendant Nationwide Mutual Insurance Company. Defendant Nationwide Mutual Insurance Company settled P.M.'s bodily injury claim on behalf of its insured and, as a result, was primarily responsible for the costs of P.M.'s accident-related medical expenses.

287.    As a result of that settlement, Defendant Nationwide Mutual Insurance Company reported its primary payer responsibility to CMS, including information regarding the reporting entity and the type of insurance policy involved. Defendant reported responsibility under "Nationwide Mutual Insurance," but because of Defendants' imprecise reporting, Plaintiffs cannot confirm the insurer for this claimant.[42]

288.    Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for P.M.'s accident-related injuries, Defendant Nationwide Mutual Insurance Company failed to reimburse HIPGNY's conditional payments, giving rise to a claim under the MSP Act.

289.    Plaintiffs reviewed HIPGNY's carve-out list and confirmed that P.M. was not on the carve-out list. The P.M. claim is not an excluded claim under any of the assignment's carve-out provisions because: (1) it relates to healthcare services that were rendered and paid for by HIPGNY between September 29, 2011 and September 29, 2017; (2) the claim is not one that can be asserted against HIPGNY's members, enrollees, and/or contracted providers; and (3) the claim was not assigned to or being pursued by another recovery vendor as of March 20, 2018.

_____

[42] If Defendants' reporting method resulted in Plaintiffs identifying the incorrect Nationwide affiliate, Plaintiffs reserve the right to amend this allegation to add the correct defendant after receipt of the settlement agreement between the correct defendant and P.M.

290.    Accordingly, MSPRC is entitled to recover double the amount billed for P.M.'s accident-related medical expenses.

## CLASS ACTION ALLEGATIONS

291.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their Enrollees' accident-related medical expenses, when Defendants should have made those payments as primary payers in the first instance or reimbursed the Class Members.

292.    As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Act. This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members. Class action law has long recognized that when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case is well suited for class-wide resolution.

293.    Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

294.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

a. **Numerosity**: Joinder of all members is impracticable. Upon information and belief, there are hundreds of MA Plans (including their assignees) throughout the United States who (1) were not reimbursed by Defendants under no-fault policies which provided coverage for medical expenses arising out of accidents, or (2) were not reimbursed by Defendants after they entered into settlements with Medicare beneficiaries enrolled in MA Plans. Thus, the numerosity element for class certification is met.

b. **Commonality**: Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendants failed to reimburse conditional payments, report settlements and report their Ongoing Responsibility for Medicals ("ORM") involving individuals who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse MA Plans pursuant to the MSP Act. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Enrollees, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**: Plaintiffs' claims are typical of the Class Members' claims, as all

66i

have been damaged in the same manner. Plaintiffs' and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representatives, Plaintiffs possess the same interests and suffered the same injury as the other Class Members, thereby demonstrating a legally sufficient nexus between Plaintiffs' claims and the Class Members' claims. Plaintiffs' claims are typical of the Class Members' claims because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do pursuant to their settlements with, or contractual obligations to, Enrollees. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, have a right to relief for Defendants' failure to make primary payments or reimburse Plaintiffs' assignors and the Class Members for their conditional payments of Enrollees' accident-related medical expenses. Plaintiffs' and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiffs' and the Class Members' claims, as will be Defendants' legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

d. **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **Ascertainability**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MA Plans and providing notice to such entities could be accomplished by direct communication.

295.   The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendants, whether deliberately or not, failed to make required payments under the MSP Act and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

296.   It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology for generalized proof of class-wide impact using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as they have done for their own claims.

297.   Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large

number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

298. Administering the proposed Damages Class will be relatively simple. Defendants provided no-fault policies to individuals who are also Medicare beneficiaries and/or liability policies to individuals who caused accidents injuring Medicare beneficiaries. Once that data identifying these policies and/or claims is compiled and organized, Plaintiffs can determine which policyholders and/or claimants were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiffs and the Class Members can identify unreimbursed conditional payments made for accident-related medical expenses where Defendants were primary payers.

## **CLASS DEFINITION**

299. The putative class (referred to herein as "Class Members") is defined as:

### **Contractual Obligations Class**

All MA Plans (or their assignees) that provide benefits under Medicare Part C in the United States of America and its territories, who made payments for a Medicare Enrollee's accident-related medical expenses within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Enrollees; and

(2) failed to pay for the items and services or otherwise failed to reimburse MA Plans (or their assignees) for the items and services that were provided related to the claims of the Medicare Enrollees;

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## Settlement Class

All MA Plans (or their assignees) that provide benefits under Medicare Part C in the United States of America and its territories, who made payments for a Medicare Enrollee's accident-related medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with an MA Plan Enrollee;

(2) settled a dispute to pay for medical expenses with an MA Plan Enrollee; and

(3) failed to reimburse MA Plans (or their assignees) for their conditional payments upon settling with a Medicare Enrollee.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

300.    All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

## COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

301.    Plaintiffs re-allege and incorporate herein by reference each of the allegations contained in paragraphs 1-300 as if fully set forth herein.

302.    Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A)

on behalf of themselves and all similarly situated parties.

303.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *W. Heritage*, 832 F.3d at 1239.

304.    Defendants' no-fault and liability policies are primary plans, which rendered Defendants primary payers for accident-related medical expenses.

305.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, Plaintiffs' assignors and the Class Members paid for items and services which were also covered by no-fault policies issued by Defendants.

306.    More specifically, Plaintiffs' assignors' and the Class Members' Enrollees were also covered by no-fault policies issued by Defendants.

307.    In addition, Defendants entered into settlements with Enrollees of Plaintiffs' assignors relating to accidents but failed to reimburse Plaintiffs' assignors and the putative Class Members for accident-related medical expenses paid by Plaintiffs' assignors and the putative Class Members on behalf of Enrollees. Defendants are liable for reimbursement of these accident-related medical expenses even if they subsequently paid out the maximum benefits under the policies.

308.    Because Defendants are primary payers, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Act.

309.    Defendants were required to timely reimburse Plaintiffs' assignors and Class Members for their conditional payments of Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

310.  Plaintiffs and the Class Members have suffered money damages as a direct result of Defendants' failure to reimburse the accident-related medical expenses.

311.  Defendants have derived substantial profits by placing the burden of financing medical treatments for which Defendants are responsible on the shoulders of Plaintiffs' assignors and the Class Members.

312.  In this case, Defendants failed to administratively appeal Plaintiffs' assignors' rights to reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety of amounts paid.

313.  Plaintiffs, for themselves and on behalf of the Class Members, bring this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of conditional payments for Enrollees' accident-related medical expenses.

## COUNT II
**Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract**

314.  Plaintiffs re-allege and incorporate herein by reference each of the allegations contained in paragraphs 1-300 as if fully set forth herein.

315.  Pursuant to the MSP Act, Plaintiffs' assignors are subrogated to the right to recover unreimbursed conditional payments from Defendants for Defendants' breach of contract with their insured. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an accident, and Defendants failed to meet that obligation. This obligation was, instead, fulfilled by Plaintiffs' assignors and other Class Members. Under the MSP Act, Plaintiffs are permitted, standing in their assignors' shoes, to subrogate the Enrollee's/insured's right of action against Defendants. *See* 42 C.F.R. § 411.26.

316.     Plaintiffs complied with all conditions precedent to the filing of this action, to the extent applicable.

317.     Defendants failed and/or refused to make complete payments for Enrollees' accident-related expenses as required by their contractual obligations.

318.     Defendants failed to pay each Enrollee's covered losses, and Defendants have no reasonable proof to establish that they were not primary payers and, therefore, not responsible for the payment.

319.     Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein. Plaintiffs and the Class Members processed and paid accident-related medical expenses and are entitled to recover up to the statutory policy limits for each Enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

320.     Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b.  designate Plaintiffs as representatives for the respective Class Members and Plaintiffs' undersigned counsel as Class Counsel for the respective Class; and

c.  issue a judgment against Defendants that:

i.      grants Plaintiffs and the Class Members reimbursement of double damages for those monies to which the Class is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

ii.     grants Plaintiffs and the Class Members reimbursement of damages for those monies to which the Class is entitled pursuant to their direct right of recovery for breach of contract, as alleged in Count II;

iii.    grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iv.     grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: April 16, 2021                 Respectfully Submitted:

                                      */s/ Tracy L. Turner*
                                      Tracy L. Turner, OH Bar No. 069927
                                      **PENDLEY, BAUDIN & COFFIN, LLP**
                                      7573 Ogden Woods Boulevard
                                      New Albany, Ohio 43054
                                      Telephone: (614) 657-3454
                                      tturner@pbclawfirm.com

                                      Christopher L. Coffin (to be admitted *pro hac vice*)
                                      David M. Hundley (to be admitted *pro hac vice*)
                                      Courtney Stidham (to be admitted *pro hac vice*)
                                      **PENDLEY, BAUDIN & COFFIN, LLP**
                                      1100 Poydras Street, Suite 2225
                                      New Orleans, Louisiana 70163
                                      Telephone: (504) 355-0086
                                      ccoffin@pbclawfirm.com
                                      dhundley@pbclawfirm.com
                                      cstidham@pbclawfirm.com

                                      ***Counsel for Plaintiffs***

74i

**APPENDIX 1**

**CMS' Standard for Storing Digital Health Insurance Claims Data**

1.      It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

      a.    The 837 standard is mandated by the federal government and used by federal and state payors such as Medicare and Medicaid.

      b.    The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

      c.    Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.      Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

      a.    <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

         i.    According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the

75i

month). Sometimes this is alternately expressed as YYYYMMDD.[43]

ii. The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[44], 2011[45], 2012[46], 2013[47], 2014[48], and 2016.[49]

iii. CMS has also accepted the MM/DD/YYYY format for its local coverage

---

[43] *See* Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[44] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[45] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[46] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[47] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[48] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[49] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

determination data.[50]

    iv. The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of loss, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v. In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

  b. <u>Medical Diagnosis and Procedure Codes</u>:

    i. Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[51][52]

---

[50] Centers for Medicare & Medicaid Services, Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

[51] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[52] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG

    ii.   International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date of service is on or after October 1, 2015).

    iii.   Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

    iv.   Current Procedural Terminology ("CPT") – CPT[53] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[54]

    v.   Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS

---

system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information are reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.

[53] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[54] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at*
http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

assigns individual services to APCs based on similar clinical characteristics and similar costs.[55]

vi. Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[56]

vii. Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

3. CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

---

[55] Centers for Medicare and Medicaid Services, Medicare Learning Network, Hospital Outpatient Prospective Payment System (Feb. 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[56] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

## APPENDIX 2

### Assignments

### *Plaintiff MSPRC's Assignments Demonstrating Standing*

1. Certain designated series of Plaintiff MSPRC have executed irrevocable assignments of any and all rights to recover payments made on behalf of their Assignors' Enrollees and health plan members. These assignments authorize the designated series, and in turn MSPRC through its LLC Agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits. MSPRC alleges the assignments below to demonstrate standing.

2. On September 21, 2015, **7th Avenue Medical Plaza ("7AVEMED")** irrevocably assigned to MSP Recovery 15-473, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("7AVEMED Assignment"). Specifically, the 7AVEMED Assignment states the following:

> [7AVEMED] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [7AVEMED]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [7AVEMED] that [7AVEMED] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors

80i

and/or third parties that may be liable to [7AVEMED] arising from or relating to the Assigned Claims.

7AVEMED Assignment at § 1.1.

3.     On June 12, 2017, MSP Recovery 15-473, LLC irrevocably assigned all rights acquired under the 7AVEMED Assignment to Series 15-09-32, LLC, a designated series of MSPRC ("Series 15-09-32 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [7AVEMED Assignment].

Series 15-09-32 Assignment at p. 1.

**4.**     Consideration was given between each party in executing the 7AVEMED Assignment and the Series 15-09-32 Assignment.

5.     On May 7, 2019, **Administracion de Servicios de Atencion Primaria Inc. ("ASAP")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("ASAP Assignment"). Specifically, the ASAP Assignment states the following:

> [ASAP] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [ASAP]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to all claims data transferred to MSP Recovery, and (ii) any and all causes of action and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [ASAP] had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action and rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [ASAP] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*"). The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

ASAP Assignment at § 1.1.1.

6.      On May 1, 2020, MSP Recovery, LLC irrevocably assigned all rights acquired under the ASAP Assignment to Series 19-05-1023, a designated series of MSPRC ("Series 19-05-1023 Assignment"):

> Assignor irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "***Assigned Claims***") as such terms are defined in the [ASAP Assignment].

Series 19-05-1023 Assignment at p. 1.

**7.**      Consideration was given between each party in executing the ASAP Assignment and the Series 19-05-1023 Assignment.

8.      On December 10, 2015, **Alianza Profesional de Cuidado Medico Inc. ("APCM")** irrevocably assigned to MSP Recovery 15-627, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("APCM Assignment"). Specifically, the APCM Assignment states the following:

> [APCM] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [APCM]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [APCM] that [APCM] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [APCM] arising from or relating to the Assigned Claims.

APCM Assignment at § 1.1.

9.      On June 12, 2017, MSP Recovery 15-627, LLC irrevocably assigned all rights acquired under the APCM Assignment to Series 15-12-404 LLC, a designated series of MSPRC ("Series 15-12-404 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [APCM Assignment.]

Series 15-12-404 Assignment at p. 1.

10. Consideration was given between each party in executing the APCM Assignment and the Series 15-12-404 Assignment.

11. On October 28, 2019, **Armor Correctional Health Services, Inc. ("ACHS")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for payments made on behalf of its Enrollees ("ACHS Assignment"). Specifically, the ACHS Assignment states the following:

> [ACHS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [ACHS]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to all claims data transferred to MSP Recovery, and (ii) any and all claims, demands and causes of action of any nature whatsoever relating to payments for healthcare services provided to [ACHS]'s patients and enrollees and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [ACHS] had, may have had, or has asserted against any party in connection with the Claims and (iii) all claims, rights, demands and causes of action of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [ACHS] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*").

ACHS Assignment at § 1.1.1.

12. On November 6, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the ACHS Assignment to Series 19-05-1042, a designated series of MSPRC ("Series 19-05-1042 Assignment"):

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title,

> ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "***Assigned Claims***") as such terms are defined in the [ACHS Assignment].

Series 19-05-1042 Assignment at p. 1.

13. Consideration was given between each party in executing the ACHS Assignment and the Series 19-05-1042 Assignment.

14. On December 16, 2015, **Arse, Inc. ("ARSI")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("ARSI Assignment"). Specifically, the ARSI Assignment states the following:

> [ARSI] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [ARSI]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [ARSI] that [ARSI] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [ASRI] arising from or relating to the Assigned Claims.

ARSI Assignment at § 4.1.

15. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the ARSI Assignment to Series 15-12-406, LLC, a designated series of MSPRC ("Series 15-12-406 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [ARSI Assignment.]

Series 15-12-406 Assignment at p. 1.

16. Consideration was given between each party in executing the ARSI Assignment and the Series 15-12-406 Assignment.

84i

17.     On February 28, 2017, **Arturo Corces MD PA dba Miami Institute for Joint Reconstruction ("MIJR")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("MIJR Assignment"). Specifically, the MIJR Assignment states the following:

> [MIJR] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [MIJR] that [MIJR] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [MIJR] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

MIJR Assignment at § 4.1.

18.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the MIJR Assignment to Series 17-02-565, a designated series of MSPRC ("Series 17-02-565 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [MIJR Assignment.]

Series 17-02-565 Assignment at p. 1.

19.     Consideration was given between each party in executing the MIJR Assignment and the Series 17-02-565 Assignment.

20.     On February 26, 2016, **Asociacion Medicos Selectos de la Montaña, Inc. ("AMSM")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against

any liable primary payer (including Defendants) for accident-related payments made on behalf of

its Enrollees ("AMSM Assignment"). Specifically, the AMSM Assignment states the following:

> [AMSM] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of [AMSM]'s right, title, ownership and
> interest in and to all rights and entitlements, and all information used to pursue
> and/or recover monies for [AMSM] that [AMSM] has, may have had, or has
> asserted against any party ("Assigned Claims"). This includes, but is not limited
> to, primary payors and/or third parties that may be liable to [AMSM] arising from
> or relating to the Assigned Claims.

AMSM Assignment at § 4.1.

21. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

AMSM Assignment to Series 16-03-441, a designated series of MSPRC ("Series 16-03-441

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [AMSM Assignment.]

Series 16-03-441 Assignment at p. 1.

22. Consideration was given between each party in executing the AMSM Assignment and the

Series 16-03-441 Assignment.

23. On March 1, 2016, **Asomante Medical Group, Inc. ("AMGP")** irrevocably assigned to

MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

(including Defendants) for payments made on behalf of its Enrollees ("AMGP Assignment").

Specifically, the AMGP Assignment states the following:

> [AMGP] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of [AMGP]'s right, title, ownership and
> interest in and to all rights and entitlements, and all information used to pursue
> and/or recover monies for [AMGP] that [AMGP] has, may have had, or has
> asserted against any party ("Assigned Claims"). This includes, but is not limited

> to, primary payors and/or third parties that may be liable to [AMGP] arising from
> or relating to the Assigned Claims.

AMGP Assignment at § 4.1.

24.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

AMGP Assignment to Series 16-03-444, LLC, a designated series of MSPRC ("Series 16-03-444

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [AMGP Assignment.]

Series 16-03-444 Assignment at p. 1.

25.     Consideration was given between each party in executing the AMGP Assignment and the

Series 16-03-444 Assignment.

26.     On June 26, 2019, **AvMed, Inc. ("AVDI")** irrevocably assigned to Series 17-03-615, a

designated series of MSPRC, all rights under the MSP Act to recover against any liable primary

payer (including Defendants) accident-related payments made on behalf of its Enrollees (the

"AvMed Assignment"). The AvMed Assignment expressly provides, in pertinent part:

> Assignor irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its designated series, successors and assigns, any and all of
> Assignor's right, title, ownership and interest in and to (i) all Claims existing on
> the date hereof, whether based in contract, tort or statutory right, and all related
> recovery rights arising from and related to the claims data transferred to MSP
> Recovery (or its affiliates or service providers, including MSP Recovery, LLC),
> and (ii) any and all causes of action, claims and demands of any nature
> whatsoever relating to payments for health care services provided to Assignor's
> members and enrollees, and legal or equitable rights (including, but not limited to,
> subrogation) to pursue and/or recover monies related to the Claims that Assignor
> had, may have had, or has asserted against any party in connection with the
> Claims; and (iii) all causes of action, claims, rights and demands of any nature
> whatsoever, legal or equitable, against primary payers, Responsible Parties and/or
> third parties that may be liable to Assignor arising from or relating to the Claims,
> including claims under consumer protection statutes and laws (all of the items set

forth in (i)-(iii), the "Assigned Claims") . . . . The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

AvMed Assignment at § 1.1.1.

27.     The "Assigned Claims" exclude claims against "[AvMed's] network healthcare providers and current and former members" as well as "[c]laims arising from and related to the GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico[.]" Defendants are not AvMed "network healthcare providers" or "current [or] former members" and the claims at issue in this action do not relate "GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico."

28.     The AvMed Assignment also provided for a due diligence period wherein the Parties would exchange deliverables and enter into a separate "Stand-Alone Assignment Agreement" further evidencing the AvMed Assignment. Upon completion of the due diligence period and satisfaction of the various deliverables and agreed upon conditions, the Parties finalized the transaction, including exchanging compensation and executing the Stand-Alone Assignment Agreement.

29.     Consideration was given between each party in executing the AVDI Assignment.

30.     On February 18, 2016, **Broward Primary Partners, LLC, ("BPPL")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("BPPL Assignment"). Specifically, the BPPL Assignment states the following:

> [BPPL] hereby assigns, transfers, conveys, sets over and delivers to [MSP Recovery, LLC], or its assigns, to the extent it is legally permitted any and all of [BPPL]'s right, title, ownership and interest in and to all rights and entitlements, that [BPPL] has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to [BPPL] arising from or relating to the Assigned Claims.

BPPL Assignment at § 1.1.

31.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

BPPL Assignment to Series 16-02-437 LLC, a designated series of MSPRC ("Series 16-02-437

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [BPPL Assignment.]

Series 16-02-437 Assignment at p. 1.

32.     Consideration was given between the parties in executing the BPPL Assignment and the

Series 16-02-437 Assignment.

33.     On February 4, 2016, **Canovanas Medical Group, Corp. ("CMG")** irrevocably

assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable

primary payer (including Defendants) for accident-related payments made on behalf of its

Enrollees ("CMG Assignment"). Specifically, the CMG Assignment states the following:

> [CMG] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of [CMG]'s right, title, ownership and
> interest in and to all rights and entitlements, and all information used to pursue
> and/or recover monies for [CMG] that [CMG] has, may have had, or has asserted
> against any party ("Assigned Claims"). This includes, but is not limited to,
> primary payors and/or third parties that may be liable to [CMG] arising from or
> relating to the Assigned Claims.

CMG Assignment at § 4.1.

34.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

CMG Assignment to Series 16-02-427, LLC, a designated series of MSPRC ("Series 16-02-427

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,

89i

> ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [CMG Assignment.]

Series 16-02-427, LLC Assignment at p. 1.

35.    Consideration was given between the parties in executing the CMG Assignment and the

Series 16-02-427, LLC Assignment.

36.    On February 22, 2016, **Centro Medico de Salinas, Inc. ("CMDS")** irrevocably assigned

to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary

payer (including Defendants) for payments made on behalf of its Enrollees ("CMDS

Assignment"). Specifically, the CMDS Assignment states the following:

> [CMDS] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [CMDS]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [CMDS] that [CMDS] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [CMDS] arising from or relating to the Assigned Claims.

CMDS Assignment at § 4.1.

37.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

CMDS Assignment to Series 16-02-438, LLC, a designated series of MSPRC ("Series 16-02-438

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [CMDS Assignment.]

Series 16-02-438 Assignment at p. 1.

38.    Consideration was given between the parties in executing the CMDS Assignment and the

Series 16-02-438 Assignment.

90i

39. On February 13, 2019, **Clinica Las Mercedes, Inc. ("CLMS")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("CLMS Assignment"). Specifically, the CLMS Assignment states the following:

> [CLMS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [CLMS]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights for all claims data transferred to MSP Recovery, LLC, and (ii) any and all causes of action and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [CLMS] had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action and rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [CLMS] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*"). The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

CLMS Assignment at § 1.1.1.

40. On February 18, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the CLMS Assignment to Series 19-02-982, a designated series of MSPRC ("Series 19-02-982 Assignment 1"):

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively, the "***Assigned Claims***") as such terms are defined in the [CLMS Assignment].

Series 19-02-982 Assignment 1 at p. 1.

41. Consideration was given between the parties in executing the CLMS Assignment and the Series 19-02-982 Assignment 1.

42. On April 30, 2018, **Community Health Providers, Inc. ("CHPI")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary

payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("CHPI Assignment"). Specifically, the CHPI Assignment states the following:

> [CHPI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [CHPI]'s right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [CHPI] that [CHPI] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [CHPI] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of [CHPI]'s right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

CHPI Assignment at § 4.1.

43.     On May 30, 2018, MSP Recovery, LLC irrevocably assigned all rights acquired under the CHPI Assignment to Series 18-03-848, a designated series of MSPRC ("Series 18-03-848 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [CHPI Assignment.]

Series 18-03-848 Assignment at p. 1.

44.     Consideration was given between the parties in executing the CLMS Assignment and the Series 18-03-848 Assignment.

45.     On March 20, 2018, **ConnectiCare, Inc. ("CONC")** irrevocably assigned Series 15-09-157, a designated series of MSPRC, and MSP Recovery, LLC, all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related

payments made on behalf of its Enrollees ("ConnectiCare Assignment"). Specifically, the ConnectiCare Assignment states the following:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all [claims against third parties], whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the [claims] and all rights and claims against primary payers and/or . . . third parties that may be liable to Assignor arising from or relating to the [claims], including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable.

> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

ConnectiCare Assignment at § 2.

46.     On April 4, 2018, MSP Recovery, LLC assigned the rights it acquired in the ConnectiCare Assignment to Series 15-09-157, a designated series of MSPRC ("Series 15-09-157 Assignment"). The Series 15-09-157 Assignment, which was ratified and approved by ConnectiCare, Inc., states:

> MSP Recovery, LLC ("Assignor") … hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to **Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC,** a Delaware series limited liability company ("Assignee"), and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all assigned Subject Medicare Recovery Claims, … as such terms may be defined in the [ConnectiCare Assignment.]

Series 15-09-157 Assignment at p. 1.

47.     Consideration was given between the parties in executing the CONC Assignment and the Series 15-09-157 Assignment.

93i

48.    On December 16, 2015, **Corporacion Medica Oriental ("CMOC")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("CMOC Assignment"). Specifically, the CMOC Assignment states the following:

> [CMOC] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [CMOC]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [CMOC] that [CMOC] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [CMOC] arising from or relating to the Assigned Claims.

CMOC Assignment at § 4.1.

49.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the CMOC Assignment to Series 15-12-407 LLC, a designated series of MSPRC ("Series 15-12-407 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [CMOC Assignment.]

Series 15-12-407 Assignment at p. 1.

50.    Consideration was given between the parties in executing the CMOC Assignment and the Series 15-12-407 Assignment.

51.    On March 31, 2016, **Corporacion Puertorriqueña De Salud ("CPDS")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("CPDS Assignment"). Specifically, the CPDS Assignment states the following:

> [CPDS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [CPDS]'s

> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including,
> but not limited to, subrogation) to pursue and/or recover monies for [CPDS] that
> [CPDS] had, may have had, or has asserted against any party in connection with
> the Claims and all rights and claims against primary payers and/or third parties
> that may be liable to [CPDS] arising from or relating to the Claims, including
> claims under consumer protection statutes and laws, and all information relating
> thereto, all of which shall constitute the "Assigned Claims". The transfer, grant,
> right, or assignment of any and all of [CPDS]'s right, title, ownership, interest and
> entitlements in and to the Assigned Claims shall remain the confidential and
> exclusive property of MSP Recovery or its assigns. This assignment is irrevocable
> and absolute.

CPDS Assignment at § 4.1.

52.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

CPDS Assignment to Series 16-04-448, LLC, a designated series of MSPRC ("Series 16-04-448

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [CPDS Assignment.]

Series 16-04-448 Assignment at p. 1.

53.    Consideration was given between the parties in executing the CPDS Assignment and the

Series 16-04-448 Assignment.

54.    On June 19, 2017, **Fallon Community Health Plan, Inc. ("FCHP")** irrevocably

assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable

primary payer (including Defendants) for accident-related payments made on behalf of its

Enrollees ("FCHP Assignment"). Specifically, the FCHP Assignment states the following:

> [FCHP] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [FCHP]'s
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including,
> but not limited to, subrogation) to pursue and/or recover monies for [FCHP] that

95i

> [FCHP] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [FCHP] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of [FCHP]'s right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

FCHP Assignment at § 4.1.

55.    On June 20, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the FCHP Assignment to Series 17-04-631, LLC, a designated series of MSPRC ("Series 17-04-631 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [FCHP Assignment.]

Series 17-04-631 Assignment at p. 1.

56.    Effective June 29, 2019, FCHP executed an Assignment Addendum whereby FCHP irrevocably assigned to Series 17-04-631 all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees. Specifically, the Assignment Addendum states the following:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, including any successor(s) and assigns, any and all of Assignor's right, title, ownership and interest in and to all of Assignor's Claims evidenced by all claims data transferred to Assignee's service provider, MSP Recovery, LLC, and encompassing dates of service up to and including June 29, 2019 (to the extent not otherwise previously assigned), i.e., the Assigned Claims. The assignment of the Assigned Claims set forth herein is irrevocable and absolute[.]

Assignment Addendum at p. 2.

57.     Consideration was given between the parties in executing the FCHP Assignment and the Series 17-04-631 Assignment.

58.     On August 14, 2015, **Family Medicine Group, Inc. ("FMG")** irrevocably assigned to MSP Recovery 15-522, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for payments made on behalf of its Enrollees ("FMG Assignment"). Specifically, the FMG Assignment states the following:

> [FMG] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [FMG]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [FMG] that [FMG] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [FMG] arising from or relating to the Assigned Claims.

FMG Assignment at § 1.1.

59.     On June 12, 2017, MSP Recovery 15-522, LLC irrevocably assigned all rights acquired under the FMG Assignment to Series 15-09-271, LLC, a designated series of MSPRC ("Series 15-09-271 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [FMG Assignment.]

Series 15-09-271 Assignment at p. 1.

60.     Consideration was given between each party in executing the FMG Assignment and the Series 15-09-271 Assignment.

61.     On February 26, 2016, **First Medical Center, Inc. ("FMCR")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

(including Defendants) for accident-related payments made on behalf of its Enrollees ("FMCR

Assignment"). Specifically, the FMCR Assignment states the following:

> [FMCR] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of [FMCR]'s right, title, ownership and
> interest in and to all rights and entitlements, and all information used to pursue
> and/or recover monies for [FMCR] that [FMCR] has, may have had, or has
> asserted against any party ("Assigned Claims"). This includes, but is not limited
> to, primary payors and/or third parties that may be liable to [FMCR] arising from
> or relating to the Assigned Claims.

FMCR Assignment at § 4.1.

62.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

FMCR Assignment to Series 16-03-442, LLC, a designated series of MSPRC ("Series 16-03-442

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [FMCR Assignment.]

Series 16-03-442 Assignment at p. 1.

63.     Consideration was given between each party in executing the FMCR Assignment and the

Series 16-03-442 Assignment.

64.     On March 20, 2018, **Health Insurance Plan of Greater New York, an EmblemHealth**

**company ("EHTH")**, irrevocably assigned to Series 16-08-483, a designated series of MSPRC,

and MSP Recovery, LLC all rights under the MSP Act to recover against any liable primary

payer (including Defendants) for accident-related payments made on behalf of its Enrollees

("EHTH Assignment"). The EHTH Assignment expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> Assignee, and any of its successors and assigns, any and all of Assignor's right,
> title, ownership and interest in and to all Assigned Medicare Recovery Claims,
> whether based in contract, tort, statutory right, and any and all rights (including,

but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or, subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising from or relating to the Assigned Medicare Recovery Claims, including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable…. The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

EHTH Assignment at § 2(b).

65.     The "Medicare Recovery Claims" assigned to MSPRC include EHTH's "legal and equitable rights to seek reimbursement and/or recover payments from primary payers . . . responsible to [EHTH] directly or through rights conferred on [EHTH] pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to [EHTH's] Medicare (as defined above) enrollees arising under state and/or federal laws, including common law subrogation theories, that provide for the reimbursement of payments made by [EHTH] . . . pursuant to a Medicare Advantage Plan[.]" *Id.* at p. 1.

66.     The "Assigned Medicare Recovery Claims" included the above-referenced Medicare Recovery Claims but excluded "Medicare Recovery Claims that [could] be asserted against Assignor's members, enrollees and/or contracted providers" and Medicare Recovery Claims that as of March 20, 2018 (the Effective Date of the agreement) had been assigned to and/or were being pursued "by other recovery vendors" for services rendered within a defined six-year time period. *Id.* These excluded claims are defined in the EHTH Assignment as "Assignor Retained Claims." *Id.*

67.     On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the EHTH Assignment to Series 16-08-483, a designated series of MSPRC ("Series 16-08-483

Assignment"). The Series 16-08-483 Assignment, which was ratified and approved by EHTH, states:

> MSP Recovery, LLC ("Assignor") … hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, **Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC,** a Delaware Series Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms may be defined in the [EHTH Assignment.]

Series 16-08-483 Assignment at p. 1.

68.    Consideration was given between each party in executing the EHTH Assignment and the Series 16-08-483 Assignment.

69.    On December 10, 2015, **Grupo Cuidado Geriatrico Integral ("GCMMI")** irrevocably assigned to MSP Recovery 15-626, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("GCMMI Assignment"). Specifically, the GCMMI Assignment states the following:

> [GCMMI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [GCMMI]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [GCMMI] that [GCMMI] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [GCMMI] arising from or relating to the Assigned Claims.

GCMMI Assignment at § 1.1.

70.    On June 12, 2017, MSP Recovery 15-626, LLC, irrevocably assigned all rights acquired under the GCMMI Assignment to Series 15-12-403, a designated series of MSPRC ("Series 15-12-403 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title,

> ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [GCMMI Assignment.]

Series 15-12-403 Assignment at p. 1.

71. Consideration was given between each party in executing the GCMMI Assignment and the Series 15-12-403 Assignment.

72. On February 2, 2016, **Grupo Medico del Noreste, P.S.C. ("GMDN")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable entity (including Defendants) for accident-related payments made on behalf of its Enrollees ("GMDN Assignment"). Specifically, the GMDN Assignment states the following:

> [GMDN] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [GMDN]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [GMDN] that [GMDN] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [GMDN] arising from or relating to the Assigned Claims.

GMDN Assignment at § 4.1.

73. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the GMDN Assignment to Series 16-02-429, LLC, a designated series of MSPRC ("Series 16-02-429 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [GMDN Assignment.]

Series 16-02-429 Assignment at p. 1.

74. Consideration was given between each party in executing the GMDN Assignment and the Series 16-02-429 Assignment.

75.     On February 4, 2016, **Grupo Medico del Yunque, CSP ("GMDY")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("GMDY Assignment"). Specifically, the GMDY Assignment states the following:

> [GMDY] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [GMDY]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [GMDY] that [GMDY] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [GMDY] arising from or relating to the Assigned Claims.

GMDY Assignment at § 4.1.

76.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the GMDY Assignment to Series 16-02-428, LLC, a designated series of MSPRC ("Series 16-02-428 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [GMDY Assignment.]

Series 16-02-428 Assignment at p. 1.

77.     Consideration was given between each party in executing the GMDY Assignment and the Series 16-02-428 Assignment.

78.     On October 8, 2015, **Healthcare Alliance Group, Inc. ("HAI")** irrevocably assigned to MSP Recovery 15-475, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("HAI Assignment"). Specifically, the HAI Assignment states the following:

> [HAI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [HAI]'s right, title,

> ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [HAI] that [HAI] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [HAI] arising from or relating to the Assigned Claims.

HAI Assignment at § 1.1.

79.     On June 12, 2017, MSP Recovery 15-475, LLC, irrevocably assigned all rights acquired under the HAI Assignment to Series 15-09-273, LLC, a designated series of MSPRC ("Series 15-09-273 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [HAI Assignment.]

Series 15-09-273 Assignment at p. 1.

80.     Consideration was given between each party in executing the HAI Assignment and the Series 15-09-273 Assignment.

81.     On September 14, 2015, **Hygea Health Holdings, Inc. ("HYG")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees (HYG Assignment"). Specifically, the HYG Assignment states the following:

> [HYG] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [HYG]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [HYG] that [HYG] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [HYG] arising from or relating to the Assigned Claims.

HYG Assignment at § 1.1.

82.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the HYG Assignment to Series 15-08-19, LLC, a designated series of MSPRC ("Series 15-08-19 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [HYG Assignment.]

Series 15-08-19 Assignment at p. 1.

83.     Consideration was given between each party in executing the HYG Assignment and the Series 15-08-19 Assignment.

84.     On December 10, 2015, **Med Caribe C.S.P. ("MCCSP")** irrevocably assigned to MSP Recovery 15-623, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("MCCSP Assignment"). Specifically, the MCCSP Assignment states the following:

> [MCCSP] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [MCCSP]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [MCCSP] that [MCCSP] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [MCCSP] arising from or relating to the Assigned Claims.

MCCSP Assignment at § 1.1.

85.     On June 12, 2017, MSP Recovery 15-623, LLC irrevocably assigned all rights acquired under the MCCSP Assignment to Series 15-12-400 LLC, a designated series of MSPRC ("Series 15-12-400 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [MCCSP Assignment.]

104i

Series 15-12-400 Assignment at p. 1.

86.     Consideration was given between each party in executing the MCCSP Assignment and the Series 15-12-400 Assignment.

87.     On August 17, 2017, **Medical Consultants Management, LLC ("MCML")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("MCML Assignment"). Specifically, the MCML Assignment states the following:

> [MCML] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [MCML]'s right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [MCML] that [MCML] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [MCML] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims".

MCML Assignment at § 4.1.

88.     On September 8, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the MCML Assignment to Series 17-08-647, a designated series of MSPRC ("Series 17-08-647 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [MCML Assignment.]

Series 17-08-647 Assignment at p. 1.

89.     Consideration was given between each party in executing the MCML Assignment and the Series 17-08-647 Assignment.

90.     On February 18, 2016, **Medical IPA of the Palm Beaches, Inc. ("MIPAPB")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("MIPAPB Assignment"). Specifically, the MIPAPB Assignment states the following:

> [MIPAPB] hereby assigns, transfers, conveys, sets over and delivers to [MSP Recovery, LLC], or its assigns, to the extent it is legally permitted any and all of [MIPAPB]'s right, title, ownership and interest in and to all rights and entitlements, that [MIPAPB] has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to [MIPAPB] arising from or relating to the Assigned Claims.

MIPAPB Assignment at § 1.1.

91.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the MIPAPB Assignment to Series 16-02-436 LLC, a designated series of MSPRC ("Series 16-02-436 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [MIPAPB Assignment.]

Series 16-02-436 Assignment at p. 1.

92.     Consideration was given between each party in executing the MIPAPB Assignment and the Series 16-02-436 Assignment.

93.     On February 4, 2016, **Medicos Aliados del Noreste, Inc. dba Grupo Medico Aliado del Noreste ("GMADN")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("GMADN Assignment"). Specifically, the GMADN Assignment states the following:

> [GMADN] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [GMADN]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [GMADN] that [GMADN] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [MIPAPB] arising from or relating to the Assigned Claims.

GMADN Assignment at § 4.1.

94.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the GMADN Assignment to Series 16-02-433, LLC, a designated series of MSPRC ("Series 16-02-433 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [GMADN Assignment.]

Series 16-02-433 Assignment at p. 1.

95.     Consideration was given between each party in executing the GMADN Assignment and the Series 16-02-433 Assignment.

96.     On December 10, 2015, **Millennium Medical Health Group, Inc. ("MMED")** irrevocably assigned to MSP Recovery 15-621, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("MMED Assignment"). Specifically, the MMED Assignment states the following:

> [MMED] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [MMED]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [MMED] that [MMED] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [MMED] arising from or relating to the Assigned Claims.

MMED Assignment at § 1.1.

97.     On June 12, 2017, MSP Recovery 15-621, LLC irrevocably assigned all rights acquired

under the MMED Assignment to Series 15-12-398 LLC, a designated series of MSPRC ("Series

15-12-398 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [MMED Assignment.]

Series 15-12-398 Assignment at p. 1.

98.     Consideration was given between each party in executing the MMED Assignment and

the Series 15-12-398 Assignment.

99.     On August 9, 2017, **Network Health, Inc. ("NHPN")** irrevocably assigned to MSP

Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

(including Defendants) for accident-related payments made on behalf of its Enrollees ("NHPN

Assignment"). Specifically, the NHPN Assignment states the following:

> [NHPN] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [NHPN]'s
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including,
> but not limited to, subrogation) to pursue and/or recover monies for [NHPN] that
> [NHPN] had, may have had, or has asserted against any party in connection with
> the Claims and all rights and claims against primary payers and/or third parties
> that may be liable to [NHPN] arising from or relating to the Claims, including
> claims under consumer protection statutes and laws, and all information relating
> thereto, all of which shall constitute the "Assigned Claims". The transfer, grant,
> right, or assignment of any and all of [NHPN]'s right, title, ownership, interest
> and entitlements in and to the Assigned Claims shall remain the confidential and
> exclusive property of MSP Recovery or its assigns. This assignment is irrevocable
> and absolute.

NHPN Assignment at § 4.1.

100.    On August 10, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the NHPN Assignment to Series 15-09-355, LLC, a designated series of MSPRC ("Series 15-09-355 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [NHPN Assignment.]

Series 15-09-355 Assignment at p. 1.

101.    Consideration was given between each party in executing the NHPN Assignment and the Series 15-09-355 Assignment.

102.    On December 10, 2015, **Opcion MCA, Inc. ("OMIC")** irrevocably assigned to MSP Recovery 15-624, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("OMIC Assignment"). Specifically, the OMIC Assignment states the following:

> [OMIC] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [OMIC]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [OMIC] that [OMIC] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [OMIC] arising from or relating to the Assigned Claims.

OMIC Assignment at § 1.1.

103.    On June 12, 2017, MSP Recovery 15-624, LLC irrevocably assigned all rights acquired under the OMIC Assignment to Series 15-12-401 LLC, a designated series of MSPRC ("Series 15-12-401 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [OMIC Assignment.]

Series 15-12-401 Assignment at p. 1.

104.    Consideration was given between each party in executing the OMIC Assignment and the

Series 15-12-401 Assignment.

105.    On December 23, 2015, **Palm Beach Primary Care Associates, Inc. ("PBPCA")**

irrevocably assigned to MSP Recovery 16-1, LLC all its rights under the MSP Act to recover

against any liable primary payer (including Defendants) for accident-related payments made on

behalf of its Enrollees ("PBPCA Assignment"). Specifically, the PBPCA Assignment states the

following:

> [PBPCA] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, or its assigns, in perpetuity, any and all of [PBPCA]'s right, title,
> ownership and interest in and to all rights and entitlements, and all information
> and data used to pursue and/or recover monies for [PBPCA] that [PBPCA] has,
> may have had, or has asserted against any party (the "Assigned Claims"). This
> includes, but is not limited to, primary payors and/or third parties that may be
> liable to [PBPCA] arising from or relating to the Assigned Claims.

PBPCA Assignment at § 1.1.

106.    On June 12, 2017, MSP Recovery 16-1, LLC, irrevocably assigned all rights acquired

under the PBPCA Assignment to Series 16-01-409 LLC, a designated series of MSPRC ("Series

16-01-409 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [PBPCA Assignment.]

Series 16-01-409 Assignment at p. 1.

107.    Consideration was given between each party in executing the PBPCA Assignment and

the Series 16-01-409 Assignment.

108.    On October 29, 2015, **Physician Access Urgent Care Group, LLC ("PPP")** irrevocably

assigned to MSP Recovery 15-580, LLC all its rights under the MSP Act to recover against any

liable primary payer (including Defendants) for accident-related payments made on behalf of its

Enrollees ("PPP Assignment"). Specifically, the PPP Assignment states the following:

> [PPP] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, or its assigns, in perpetuity, any and all of [PPP]'s right, title,
> ownership and interest in and to all rights and entitlements, and all information
> and data used to pursue and/or recover monies for [PPP] that [PPP] has, may have
> had, or has asserted against any party (the "Assigned Claims"). This includes, but
> is not limited to, primary payors and/or third parties that may be liable to [PPP]
> arising from or relating to the Assigned Claims.

PPP Assignment at § 1.1.

109.    On June 12, 2017, MSP Recovery 15-580, LLC, irrevocably assigned all rights acquired

under the PPP Assignment to Series 15-10-362, LLC, a designated series of MSPRC ("Series

15-10-362 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [PPP Assignment.]

Series 15-10-362 Assignment at p. 1.

110.    Consideration was given between each party in executing the PPP Assignment and the

Series 15-10-362 Assignment.

111.    On December 3, 2015, **Physician H.M.O. Inc. ("PHMO")** irrevocably assigned to MSP

Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

(including Defendants) for accident-related payments made on behalf of its Enrollees ("PHMO

Assignment"). Specifically, the PHMO Assignment states the following:

> [PHMO] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of [PHMO]'s right, title, ownership and

> interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [PHMO] that [PHMO] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [PHMO] arising from or relating to the Assigned Claims.

PHMO Assignment at § 4.1.

112.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

PHMO Assignment to Series 15-12-396, LLC, a designated series of MSPRC ("Series

15-12-396, LLC Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [PHMO Assignment.]

Series 15-12-396, LLC Assignment at p. 1.

113.    Consideration was given between each party in executing the PHMO Assignment and the

Series 15-12-396 Assignment.

114.    On February 2, 2016, **Policlinica General de Coamo C.S.P. ("PGDC")** irrevocably

assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable

primary payer (including Defendants) for accident-related payments made on behalf of its

Enrollees ("PGDC Assignment"). Specifically, the PGDC Assignment states the following:

> [PGDC] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [PGDC]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [PHDC] that [PHDC] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [PGDC] arising from or relating to the Assigned Claims.

PGDC Assignment at § 4.1.

115.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

PGDC Assignment to Series 16-02-425, LLC, a designated series of MSPRC ("Series 16-02-425

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [PGDC Assignment.]

Series 16-02-425 Assignment at p. 1.

116.    Consideration was given between each party in executing the PGDC Assignment and the

Series 16-02-425 Assignment.

117.    On May 6, 2016, **Policlinicas Medicas Asociadas, Inc. ("PMAS")** irrevocably assigned

to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary

payer (including Defendants) for accident-related payments made on behalf of its Enrollees

("PMAS Assignment"). Specifically, the PMAS Assignment states the following:

> [PMAS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of [PMAS]'s right, title,
> ownership and interest in and to all Claims existing on the date hereof, whether based in
> contract, tort, statutory right, and any and all rights (including, but not limited to,
> subrogation) to pursue and/or recover monies for [PMAS] that [PMAS] had, may have
> had, or has asserted against any party in connection with the Claims and all rights and
> claims against primary payers and/or third parties that may be liable to [PMAS] arising
> from or relating to the Claims, including claims under consumer protection statutes and
> laws, and all information relating thereto, all of which shall constitute the "Assigned
> Claims". The transfer, grant, right, or assignment of any and all of [PMAS]'s right, title,
> ownership, interest and entitlements in and to the Assigned Claims shall remain the
> confidential and exclusive property of MSP Recovery or its assigns. This assignment is
> irrevocable and absolute.

PMAS Assignment at § 4.1.

118.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

PMAS Assignment to Series 16-05-457, LLC, a designated series of MSPRC ("Series 16-05-457

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [PMAS Assignment.]

Series 16-05-457 Assignment at p. 1.

119.    Consideration was given between each party in executing the PMAS Assignment and the

Series 16-05-457 Assignment.

120.    On April 16, 2016, **Ponce Advance Medical Group, P.S.C. ("PAMG")** irrevocably

assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable

primary payer (including Defendants) for accident-related payments made on behalf of its

Enrollees ("PAMG Assignment"). Specifically, the PAMG Assignment states the following:

> [PAMG] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [PAMG]'s
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including,
> but not limited to, subrogation) to pursue and/or recover monies for [PAMG] that
> [PAMG] had, may have had, or has asserted against any party in connection with
> the Claims and all rights and claims against primary payers and/or third parties
> that may be liable to [PAMG] arising from or relating to the Claims, including
> claims under consumer protection statutes and laws, and all information relating
> thereto, all of which shall constitute the "Assigned Claims". The transfer, grant,
> right, or assignment of any and all of [PAMG]'s right, title, ownership, interest
> and entitlements in and to the Assigned Claims shall remain the confidential and
> exclusive property of MSP Recovery or its assigns. This assignment is irrevocable
> and absolute.

PAMG Assignment at § 4.1.

114i

121.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the PAMG Assignment to Series 16-04-454, LLC, a designated series of MSPRC ("Series 16-04-454 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [PAMG Assignment.]

Series 16-04-454 Assignment at p. 1.

122.    Consideration was given between each party in executing the PAMG Assignment and the Series 16-04-454 Assignment.

123.    On February 18, 2016, **Preferred Primary Care, LLC ("PPC")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("PPC Assignment"). Specifically, the PPC Assignment states the following:

> [PPC] hereby assigns, transfers, conveys, sets over and delivers to [MSP Recovery, LLC], or its assigns, to the extent it is legally permitted any and all of [PPC]'s right, title, ownership and interest in and to all rights and entitlements, that [PPC] has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to [PPC] arising from or relating to the Assigned Claims.

PPC Assignment at § 1.1.

124.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the PPC Assignment to Series 16-02-435, a designated series of MSPRC ("Series 16-02-435 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [PPC Assignment.]

115i

Series 16-02-435 Assignment at p. 1.

125.    Consideration was given between each party in executing the PPC Assignment and the

Series 16-02-435 Assignment.

126.    On July 19, 2017, **Premier Care Partners, LLC ("PCPS")** irrevocably assigned to MSP

Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

(including Defendants) for accident-related payments made on behalf of its Enrollees ("PCPS

Assignment"). Specifically, the PCPS Assignment states the following:

> [PCPS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [PCPS]'s
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including,
> but not limited to, subrogation) to pursue and/or recover monies for [PCPS] that
> [PCPS] had, may have had, or has asserted against any party in connection with
> the Claims and all rights and claims against primary payers and/or third parties
> that may be liable to [PCPS] arising from or relating to the Claims, including
> claims under consumer protection statutes and laws, and all information relating
> thereto, all of which shall constitute the "Assigned Claims". The transfer, grant,
> right, or assignment of any and all of [PCPS]'s right, title, ownership, interest and
> entitlements in and to the Assigned Claims shall remain the confidential and
> exclusive property of MSP Recovery or its assigns. This assignment is irrevocable
> and absolute.

PCPS Assignment at § 4.1.

127.    On July 20, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

PCPS Assignment to Series 17-07-642, LLC, a designated series of MSPRC ("Series 17-07-642

Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [PCPS Assignment.]

Series 17-07-642 Assignment at p. 1.

116i

128.    Consideration was given between each party in executing the PCPS Assignment and the Series 17-07-642 Assignment.

129.    On January 15, 2016, **Primary Physicians Medical Service, LLC ("PPMS")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("PPMS Assignment"). Specifically, the PPMS Assignment states the following:

> [PPMS] hereby assigns, transfers, conveys, sets over and delivers to MSP, or its assigns, any and all of [PPMS]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [PPMS] that [PPMS] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [PPMS] arising from or relating to the Assigned Claims.

PPMS Assignment at § 8.

130.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the PPMS Assignment to Series 16-01-413, LLC, a designated series of MSPRC ("Series 16-01-413 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [PPMS Assignment.]

Series 16-01-413 Assignment at p. 1.

131.    Consideration was given between each party in executing the PPMS Assignment and the Series 16-01-413 Assignment.

132.    On February 26, 2016, **Quality Care Physicians, LLC ("QCPL")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary

payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("QCPL Assignment"). Specifically, the QCPL Assignment states the following:

> [QCPL] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [QCPL]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [QCPL] that [QCPL] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [QCPL] arising from or relating to the Assigned Claims.

QCPL Assignment at § 4.1.

133. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the QCPL Assignment to Series 16-03-440, LLC, a designated series of MSPRC ("Series 16-03-440 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [QCPL Assignment.]

Series 16-03-440 Assignment at p. 1.

134. Consideration was given between each party in executing the QCPL Assignment and the Series 16-03-440 Assignment.

135. On February 22, 2016, **Quality Medical Care, Inc. ("QMG")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("QMG Assignment"). Specifically, the QMG Assignment states the following:

> [QMG] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [QMG]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [QMG] that [QMG] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [QMG] arising from or relating to the Assigned Claims.

QMG Assignment at § 4.1.

136. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the QMG Assignment to Series 16-02-439, LLC, a designated series of MSPRC ("Series 16-02-439 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [QMG Assignment.]

Series 16-02-439 Assignment at p. 1.

137. Consideration was given between each party in executing the QMG Assignment and the Series 16-02-439 Assignment.

138. On July 26, 2016, **SE Primary Care Services, CSP ("SPSI")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("SPSI Assignment"). Specifically, the SPSI Assignment states the following:

> [SPSI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [SPSI]'s right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [SPSI] that [SPSI] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [SPSI] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right or assignment of any and all of [SPSI]'s right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

SPSI Assignment at § 4.1.

139. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the SPSI Assignment to Series 16-07-481, LLC, a designated series of MSPRC ("Series 16-07-481 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [SPSI Assignment.]

Series 16-07-481 Assignment at p. 1.

140. Consideration was given between each party in executing the SPSI Assignment and the Series 16-07-481 Assignment.

141. On January 18, 2016, **Southern Health Care Group, Inc. ("SHGI")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("SHGI Assignment"). Specifically, the SHGI Assignment states the following:

> [SHGI] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [SHGI]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [SHGI] that [SHGI] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [SHGI] arising from or relating to the Assigned Claims.

SHGI Assignment at § 4.1.

142. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the SHGI Assignment to Series 16-01-420 LLC, a designated series of MSPRC ("Series 16-01-420 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [SHGI Assignment.]

Series 16-01-420 Assignment at p. 1.

143. Consideration was given between each party in executing the SHGI Assignment and the Series 16-01-420 Assignment.

144. On May 12, 2017, **SummaCare, Inc. ("SMCR")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for payments made on behalf of its Enrollees ("SMCR Assignment"). Specifically, the SMCR Assignment states the following:

> [SMCR] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [SMCR]'s right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [SMCR] that [SMCR] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [SMCR] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims[.]"

SMCR Assignment at § 4.1.

145. On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the SMCR Assignment to Series 16-11-509, a designated series of MSPRC ("Series 16-11-509 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [SMCR Assignment.]

Series 16-11-509 Assignment at p. 1.

146. SummaCare, Inc. consented to, acknowledged, approved, and ratified the Series 16-11-509 Assignment, which is memorialized in a letter dated September 5, 2018.

147. Consideration was given between each party in executing the SMCR Assignment and the

Series 16-11-509 Assignment.

148. On September 21, 2015, **Suncoast Medical Network 2, Inc. ("SUNCM")** irrevocably assigned to MSP Recovery 220, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees (the "SUNCM Assignment"). Specifically, the SUNCM Assignment states the following:

> [SUNCM] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [SUNCM]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [SUNCM] that [SUNCM] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [SUNCM] arising from or relating to the Assigned Claims.

SUNCM Assignment at § 1.1.

149. On June 12, 2017, MSP Recovery 220, LLC irrevocably assigned all rights acquired under the SUNCM Assignment to Series 15-08-10, LLC, a designated series of MSPRC ("Series 15-08-10 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [SUNCM Assignment.]

Series 15-08-10 Assignment at p. 1.

150. Consideration was given between each party in executing the SUNCM Assignment and the Series 15-08-10 Assignment.

151. On November 9, 2015, **Suncoast Provider Network, Inc. ("SCPN")** irrevocably assigned to MSP Recovery 15-608, LLC all its rights under MSP Act to recover against any liable primary payer (including Defendants) for payments made on behalf of its Enrollees

("SCPN Assignment"). Specifically, the SCPN Assignment states the following:

> [SCPN] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [SCPN]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [SCPN] that [SCPN] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [SCPN] arising from or relating to the Assigned Claims.

SCPN Assignment at § 1.1.

152. On June 12, 2017, MSP Recovery 15-608, LLC irrevocably assigned all rights acquired under the SCPN Assignment to Series 15-11-387, a designated series of MSPRC ("Series 15-11-387 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [SCPN Assignment.]

Series 15-11-387 Assignment at p. 1.

153. Consideration was given between each party in executing the SCPN Assignment and the Series 15-11-387 Assignment.

154. On November 3, 2015, **Transatlantic Healthcare LLC ("THC")** irrevocably assigned to MSP Recovery 15-131, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("THC Assignment"). Specifically, the THC Assignment states the following:

> [THC] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [THC]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [THC] that [THC] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [THC] arising from or relating to the Assigned Claims.

THC Assignment at § 1.1.

155.    On June 12, 2017, MSP Recovery 15-131, LLC, irrevocably assigned all rights acquired

under the THC Assignment to Series 15-11-385, a designated series of MSPRC ("Series

15-11-385 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [THC Assignment.]

Series 15-11-385 Assignment at p. 1.

156.    Consideration was given between each party in executing the THC Assignment and the

Series 15-11-385 Assignment.

157.    On November 3, 2015, **Trinity Physicians, LLC ("TPS")** irrevocably assigned all to

MSP Recovery 15-592, LLC its rights under the MSP Act to recover against any liable primary

payer (including Defendants) for accident-related payments made on behalf of its Enrollees

("TPS Assignment"). Specifically, the TPS Assignment states the following:

> [TPS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, or its assigns, in perpetuity, any and all of [TPS]'s right, title,
> ownership and interest in and to all rights and entitlements, and all information
> and data used to pursue and/or recover monies for [TPS] that [TPS] has, may have
> had, or has asserted against any party (the "Assigned Claims"). This includes, but
> is not limited to, primary payors and/or third parties that may be liable to [TPS]
> arising from or relating to the Assigned Claims.

TPS Assignment at § 1.1.

158.    On June 12, 2017, MSP Recovery 15-592, LLC, irrevocably assigned all rights acquired

under the TPS Assignment to Series 15-11-371, LLC, a designated series of MSPRC ("Series

15-11-371 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,

> ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [TPS Assignment.]

Series 15-11-371 Assignment at p. 1.

159. Consideration was given between each party in executing the TPS Assignment and the Series 15-11-371 Assignment.

160. On June 5, 2020, BankUnited, N.A. as administrative agent, and Soneet Kapila, as Liquidating Agent of Universal Health Care Group, Inc., solely in their capacity as assignees of **Universal HMO of Texas, Inc.,** a Texas health maintenance organization in Receivership, by and through Prime Tempus, Inc., Special Deputy Receiver on behalf of itself and its affiliates, subsidiaries, or related entities **("UOTI"),** irrevocably assigned to Series 19-06-1054, a designated series of MSPRC, all of UOTI's rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of UOTI's Enrollees ("UOTI Assignment"). The UOTI Assignment states the following:

> [UOTI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSPRC, and any of its designated series, successors, and assigns, any and all of [UOTI]'s right, title, ownership, and interest in and to the (i) all Claims existing on the date hereof, whether based in contract, tort, or statutory right, and all related recovery rights arising from and related to the claims data transferred to MSPRC (or its affiliates or service providers, including MSP Recovery), and arising during the period beginning April 2003 and continuing up to, including and through December 2014 and (ii) any and all causes of action, claims, and demands of any nature whatsoever relating to payments for health care services provided to [UOTI]'s members and enrollees, and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims described in clause (i) that Assignor had, may have had, or has asserted, or may assert in the future, against any party in connection with the Claims; and (iii) all causes of action, claims, rights and demands of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Assignor arising from or relating to the Claims described in clause (i), including claims under consumer protection statutes and laws, "as is", without any representations or warranties of any kind, either express or implied (all of the items set forth in clauses (i)-(iii), the "**Assigned Claims**").

> The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

UOTI Assignment at § 1.1.1.

161.    Consideration was given between each party in executing the UOTI Assignment.

162.    On November 23, 2015, **University Health Care MSO, Inc. ("UNHC")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("UNHC Assignment"). Specifically, the UNHC Assignment states the following:

> [UNHC] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [UNHC]'s right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [UNHC] that [UNHC] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [UNHC] arising from or relating to the Assigned Claims.

UNHC Assignment at § 4.1.

163.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the UNHC Assignment to Series 15-08-25, LLC, a designated series of MSPRC ("Series 15-08-25 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [UNHC Assignment.]

Series 15-08-25 Assignment at p. 1.

164.    Consideration was given between each party in executing the UNHC Assignment and the Series 15-08-25 Assignment.

165.    On April 7, 2016, **Verimed IPA, LLC ("VMIL")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

126i

(including Defendants) for accident-related payments made on behalf of its Enrollees ("VMIL Assignment"). Specifically, the VMIL Assignment, states the following:

> [VMIL] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [VMIL]'s right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [VMIL] that [VMIL] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [VMIL] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of [VMIL]'s right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

VMIL Assignment at § 4.1.

166.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the VMIL Assignment to Series 15-09-108, LLC, a designated series of MSPRC ("Series 15-09-108 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [VMIL Assignment.]

Series 15-09-108 Assignment at p. 1.

167.    Consideration was given between each party in executing the VMIL Assignment and the Series 15-09-108 Assignment.

168.    On June 25, 2019, **St. Jude Medical Group Corp d/b/a VidaMax Medical Center ("VMCS")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments

made on behalf of its Enrollees ("VMCS Assignment"). Specifically, the VMCS Assignment states the following:

> [VMCS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [VMCS]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort, or statutory right, and all related recovery rights arising from and related to all claims data transferred to MSP Recovery, and (ii) any and all claims, demands and causes of action of any nature whatsoever relating to payments for healthcare services provided to [VMCS]'s members and enrollees and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [VMCS] had, may have had, or has asserted against any party in connection with the Claims and (iii) all claims, rights, demands and causes of action of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [VMCS] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*"). . . . The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

VMCS Assignment at § 1.1.1.

169. On August 7, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the VMCS Assignment to Series 19-06-1058, a designated series of MSPRC ("Series 19-06-1058 Assignment"):

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively, the "*Assigned Claims*") as such terms are defined in the [VMCS Assignment].

Series 19-06-1058 Assignment at § 1.

**170.** Consideration was given between each party in executing the VMCS Assignment and the Series 19-06-1058 Assignment.

### *Plaintiff Series 44's Assignments Demonstrating Standing*

1. Certain designated series of Plaintiff Series 44 have executed irrevocable assignments of

any and all rights to recover payments made on behalf of their Assignors' Enrollees and health plan members. These assignments authorize the designated series, and in turn Series 44 through its LLC Operating Agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits. Series 44 alleges the assignments below to demonstrate standing.

2.      On August 15, 2019, **Aspire Health Plan ("AHPN")** irrevocably assigned to Series 18-10-934, a designated series of MSPRC, all of its rights under the MSP Act to recover against any liable primary payer (including Defendants) for payments made on behalf of its Enrollees ("AHPN Assignment"). Specifically, the AHPN Assignment states the following:

> [AHPN] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [AHPN]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort, or statutory right, and all related recovery rights arising from and related to all claims data transferred to MSP Recovery . . . and (ii) any and all claims, demands and causes of action of whatsoever nature relating to payments for healthcare services provided to [AHPN]'s members and enrollees and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [AHPN] had, may have had, or has asserted against any party in connection with the Claims and (iii) all claims, rights, demands and causes of action of whatsoever nature, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [AHPN] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*").

AHPN Assignment at § 1.1.1.

3.      Effective October 22, 2020, Series 18-10-934 irrevocably assigned the rights it had acquired in the AHPN Assignment to Series 44-20-934, a designated series of Series 44 ("Series 44-20-934 Assignment"):

> Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's rights, title, ownership, obligations, and interest in and to [the AHPN

129i

Assignment], as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the [AHPN Assignment].

This Assignment includes all the Assigned Claims irrespective of when the claims were vested in Aspire Heath Plan, inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Aspire Heath Plan arising from or relating to the Claims and all information relating thereto.

Series 44-20-934 Assignment at p. 1.

**4.** Consideration was given between each party in executing the AHPN Assignment and the Series 44-20-934 Assignment.

**5.** On December 18, 2018, **Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBSMA")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("BCBSMA Assignment"). The BCBSMA Assignment expressly provides, in pertinent part:

[BCBSMA] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [BCBSMA]'s right, title, ownership and interest in and to all recovery and reimbursement rights against Responsible Parties arising from and related to the Medicare Secondary Payer Act in connection with [BCBSMA]'s Claims that are identified on a data transfer following execution of this Assignment and Recovery Agreement, exclusive of the claims identified on a carve out list, and including any and all legal or equitable rights to pursue and/or recover monies related to the Claims that [BCBSMA] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [BCBSMA] arising from or relating to the Claims, all of the described Claims herein constituting the "***Assigned Claims Rights***".

BCBSMA Assignment at § 1.1.1.

6.      The "Assigned Claims Rights" excluded "claims identified on a carve out list" as well as "(i) any Claims rights belonging to [BCBSMA] that are currently being pursued directly by [BCBSMA] or by another [BCBSMA] vendor, all of which will be specifically identified by [BCBSMA] and included on a Carve Out List, and (ii) unless approved by [BCBSMA], any claims or lien recoveries in class action, antitrust, medical device, pharmaceutical or multidistrict litigation not directly related to the Medicare Secondary Payer statute." *Id.* at § 1.1.4.

7.      Effective April 10, 2019, MSP Recovery, LLC assigned the rights it acquired in the BCBSMA Assignment to Series 15-11-388, a designated series of MSPRC ("Series 15-11-388 Assignment"). The Series 15-11-388 Assignment, which was ratified and approved by BCBSMA, states:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the ***"Assigned Claims"***) as such terms are defined in the [BCBSMA Assignment].

Series 15-11-388 Assignment at § 1.

8.      On October 22, 2020, Series 15-11-388 assigned the rights it acquired from MSP Recovery, LLC to Series 44-20-388, a designated series of Series 44 ("Series 44-20-388 Assignment"):

> Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to [the BCBSMA Assignment], as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the [BCBSMA Assignment].
>
> This Assignment includes all the Assigned Claims irrespective of when the claims were vested in BCBSMA, inclusive of any and all claim(s), causes of actions,

> proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to BCBSRI arising from or relating to the Claims and all information relating thereto.

Series 44-20-388 Assignment at p. 1.

9. Consideration was given between each party in executing the BCBSMA Assignment, the Series 15-11-388 Assignment, and the Series 44-20-388 Assignment.

10. On May 30, 2019, **Blue Cross & Blue Shield of Rhode Island ("BCBSRI")** irrevocably assigned to MSP Recovery, LLC all of its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("BCBSRI Assignment"). The BCBSRI Assignment specifically states:

> [BCBSRI] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [BCBSRI]'s right, title, ownership and interest in and to (i) all Claims for which it has sent claims data to MSP Recovery, LLC, whether based in contract, tort or statutory right, and all related to recovery rights arising from and related to all claims data transferred to MSP Recovery, LLC, and (ii) any and all causes of action, claims and demands of whatsoever nature relating to payments for healthcare services provided to [BCBSRI]'s members and enrollees, and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [BCBSRI] had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action, claims, rights and demands of whatsoever nature, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [BCBSRI] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*").

BCBSRI Assignment at § 1.2.

11.     Effective June 10, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the BCBSRI Assignment to Series 16-05-461, a designated series of MSPRC ("Series 16-05-461 Assignment"). The Series 16-05-461 Assignment states:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "**_Assigned Claims_**") as such terms are defined in the [BCBSRI Assignment]. This Assignment includes all the Assigned Claims irrespective of when the claims were vested in **_BCBS Rhode Island_**, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to **_BCBS Rhode Island_** arising from or relating to the Claims and all information relating thereto.

Series 16-05-461 Assignment at § 1.

12.     The BCBSRI Assignment contemplated that the Parties would enter into a "stand-alone assignment document evidencing" the BCBSRI Assignment. BCBSRI Assignment at § 5.1.

13.     Following the contemplated due diligence period, BCBSRI executed the stand-alone assignment document on August 14, 2019, effective May 30, 2019, and approved and consented to the Series Assignment and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSPRC or any of its designated series, including but not limited to, Series 16-05-461.

14.     Effective October 22, 2020, Series 16-05-461 irrevocably assigned the rights it acquired from MSP Recovery, LLC to Series 44-20-461, a designated series of Series 44 ("Series 44-20-461 Assignment"):

> Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's

right, title, ownership, and interest in and to [the BCBSRI Assignment], as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the [BCBSRI Assignment].

This Assignment includes all the Assigned Claims irrespective of when the claims were vested in BCBSRI, inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to BCBSRI arising from or relating to the Claims and all information relating thereto.

Series 44-20-461 Assignment at p. 1.

15.    Consideration was given between each party in executing the BCBSRI Assignment, the Series 16-05-461 Assignment, and the Series 44-20-461 Assignment.

16.    Effective September 24, 2018, **Dean Health Plan, Inc. ("DHPN")** irrevocably assigned to MSP Recovery, LLC all of its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("DHPN Assignment"). Specifically, the DHPN Assignment states the following:

[DHPN] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [DHPN]'s right, title, ownership and interest in and to all Claims furnished by [DHPN] to MSP, specifically, the Claims related to medical health care services that were rendered and paid for by [DHPN] for dates of service between July 1, 2011 and July 1, 2017, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [DHPN] that [DHPN] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [DHPN] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto.

DHPN Assignment at § 4.1.

17.     Effective August 15, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired

under the DHPN Assignment to Series 15-09-354, a designated series of MSPRC ("Series

15-09-354 Assignment"). The Series 15-09-354 Assignment states as follows:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and
> delivers to Assignee and its successors and assigns, any and all of Assignor's
> right, title, ownership and interest in and to the "Claims" and "Assigned Claims",
> and all proceeds and products thereof (collectively, the "***Assigned Claims***") as
> such terms are defined in the [DHPN Assignment].

Series 15-09-354 Assignment at § 1.

18.     Thereafter, on October 22, 2020, Series 15-09-354 irrevocably assigned all rights

acquired through the Series 15-09-354 Assignment to Series 44-20-354, a designated series of

Series 44 ("Series 44-20-354 Assignment"):

> Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and
> delivers to Assignee and its successors and assigns, (i) any and all of Assignor's
> right, title, ownership, and interest in and to that Agreement, as well as (ii) the
> "Claims" and "Assigned Claims", and all proceeds and products thereof
> (collectively the "Assigned Claims") as such terms are defined in the [DHPN
> Assignment].
>
> This Assignment includes all the Assigned Claims irrespective of when the claims
> were vested in [DHPN], inclusive of any and all claim(s), causes of actions,
> proceeds, products, and distributions of any kind, and proceeds of proceeds, in
> respect thereof, whether based in contract, tort, statutory right, and any and all
> rights (including, but not limited to, subrogation) to pursue and/or recover monies
> that Assignor had, may have had, or has asserted against any party, including
> claims under consumer protection statutes and laws, any and all rights and claims
> against primary payers and/or third parties that may be liable to [DHPN] arising
> from or relating to the Claims and all information relating thereto.

Series 44-20-354 Assignment at p. 1.

19.     Consideration was given between each party in executing the DHPN Assignment, the

Series 15-09-354 Assignment, and the Series 44-20-354 Assignment.

20.     On October 6, 2017, **Family Physicians Group ("FPGI") dba Family Physicians of Winter Park, P.A.** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("FPGI Assignment"). Specifically, the FPGI Assignment states the following:

> [FPGI] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [FPGI]'s right, title, ownership and interest in and to those Claims transferred to MSP Recovery for Claims' analysis and recovery pursuit on the date of transferring said claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [FPGI] that [FPGI] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [FPGI] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**".

FPGI Assignment at § 4.1.

21.     On October 10, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the FPGI Assignment to Series 17-05-634, a designated series of MSPRC ("Series 17-05-634 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [FPGI Assignment] … inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the [FPGI Assignment[], including any claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the [FPGI Assignment] shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to

136i

transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

Series 17-05-634 Assignment at p. 1.

22.     On October 22, 2020, Series 17-05-634 irrevocably assigned all rights it acquired from

MSP Recovery, LLC to Series 44-20-634, a designated series of Series 44 ("Series 44-20-634

Assignment"):

> Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to [the FPGI Assignment], as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the [FPGI Assignment].
>
> This Assignment includes all the Assigned Claims irrespective of when the claims were vested in [FPGI], inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to [FPGI] arising from or relating to the Claims and all information relating thereto.

Series 44-20-634 Assignment at p. 1.

23.     Consideration was given between each party in executing the FPGI Assignment, the

Series 17-05-634 Assignment, and the Series 44-20-634 Assignment.

24.     On March 19, 2019, **Health Alliance Medical Plans, Inc. ("HEAL")** irrevocably

assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable

primary payers (including Defendants) for accident-related payments made on behalf of its

Enrollees ("HEAL Assignment"). Specifically, the HEAL Assignment states the following:

> [HEAL] assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [HEAL]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in

contract, tort or statutory right, and all related recovery rights arising from the health care claims data transferred to MSP Recovery, and (ii) any and all causes of action and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [HEAL] had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action and rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [HEAL] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the "*Assigned Claims*").

HEAL Assignment at § 1.1.1.

25.     On April 10, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the HEAL Assignment to Series 17-03-583, a designated series of MSPRC ("Series 17-03-583 Assignment"):

The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively, the "***Assigned Claims***") as such terms are defined in the [HEAL Assignment].

Series 17-03-583 Assignment at p. 1.

26.     On October 22, 2020, Series 17-03-583 irrevocably assigned all the rights it acquired from MSP Recovery, LLC to Series 44-20-583, a designated series of Series 44 ("Series 44-20-583 Assignment"):

Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to that Agreement, as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the [HEAL Assignment].

This Assignment includes all the Assigned Claims irrespective of when the claims were vested in [HEAL], inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including

claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to [HEAL] arising from or relating to the Claims and all information relating thereto.

Series 44-20-583 Assignment at p 1.

27.     Consideration was given between each party in executing the HEAL Assignment, the Series 17-03-583, and the Series 44-20-583 Assignment.

28.     Effective April 28, 2016, **Health First Health Plans, Inc. ("HFAP")**, a Medicare Advantage Organization, irrevocably assigned to MSP Recovery, LLC all rights under the MSP Act to recover against any liable primary payer (including Defendants) accident-related payments made on behalf of its Enrollees ("HFAP Assignment"). The HFAP Assignment expressly provides, in pertinent part:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims".
>
> …
>
> The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

HFAP Assignment at § 4.1.

29.     Effective June 12, 2017, MSP Recovery, LLC assigned all rights acquired under the HFAP Assignment to Series 16-05-456, a designated series of MSPRC ("Series 16-05-456 Assignment"). The Series 16-05-456 Assignment states:

> [T]he undersigned Assignor . . . irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the Claims and Assigned Claims, (and all proceeds and products thereof, including any related assigned assets and assigned documents) as such terms are defined or contained in that certain (1) Assignment and (2) Addendum to the Recovery Agreement and Assignment Addendum, both given and effective April 28, 2016 and executed on June 1, 2018, by and between **Health First Health Plans, Inc.,** a Florida corporation and Medicare Advantage Organization and party to contract number H1099 with The Centers for Medicare & Medicaid Services, as the "Client" and health plan assignor, and **MSP Recovery, LLC**, a Florida limited liability company (the "Assignment"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Assignment from the Client, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto.

Series 16-05-456 Assignment at p. 1.

30.     On October 22, 2020, Series 16-05-456 irrevocably assigned all the rights it acquired

from MSP Recovery, LLC to Series 44-20-456, a designated series of Series 44 ("Series

44-20-456 Assignment"):

> Assignor . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to the [Assigned Claims], as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the Agreements.

Series 44-20-456 Assignment at p. 1.

31.     Consideration was given between each party in executing the HFAP Assignment, the

Series 16-05-456 Assignment, and the Series 44-20-456 Assignment.

32.     By agreement dated November 26, 2020, **Interamerican Medical Center Group, LLC**

**("IMCS")** irrevocably assigned to Series 44-44-1262, a designated series of Series 44, any and

140i

all of its rights to recover conditional payments made on behalf of its Enrollees ("IMCS Assignment") for dates of service between February 1, 2017 through December 31, 2018. The IMCS Assignment expressly provides, in pertinent part:

> [IMCS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its designated series, successors and assigns, any and all of [IMCS]'s right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC) for dates of service between February 1, 2017 through December 31, 2018 and (ii) any and all causes of action, claims and demands of any nature whatsoever relating to payments for health care services provided to [IMCS]'s members and enrollees, and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [IMCS] had, may have had, or has asserted against any party in connection with the Claims arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC) for dates of service between February 1, 2017 through December 31, 2018, and (iii) all causes of action, claims, rights and demands of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [IMCS] arising from or relating to the Claims arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC) for dates of service from February 1, 2017 through December 31, 2018, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the **"Assigned Claims"**). The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

> IMCS Assignment at pp. 1-2.

33.     Consideration was given between each party in executing the IMCS Assignment.

34.     On February 18, 2016, **Risk Watchers, Inc. ("HPRW")** irrevocably assigned to MSP Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer (including Defendants) for accident-related payments made on behalf of its Enrollees ("HPRW Assignment"). Specifically, the HPRW Assignment states the following:

> [HPRW] hereby assigns, transfers, conveys, sets over and delivers to [MSP Recovery, LLC], or its assigns, to the extent it is legally permitted any and all of [HPRW]'s right, title, ownership and interest in and to all rights and entitlements,

> that [HPRW] has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to [HPRW] arising from or relating to the Assigned Claims.

HPRW Assignment at § 1.1.

35.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the HPRW Assignment to Series 15-09-31, LLC, a designated series of MSPRC ("Series 15-09-31 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [HPRW Assignment].

Series 15-09-31 Assignment at p. 1.

36.    Effective December 23, 2020, Series 15-09-31, LLC irrevocably assigned to Series 44-20-931, a designated series of Series 44, all rights acquired under the Series 15-09-31 Assignment ("Series 44-20-931 Assignment"):

> Assignor … hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to that Agreement, as well as (ii) the "Claims" and "Assigned Claims," and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the [HPRW Assignment].

> This Assignment includes all the Assigned Claims irrespective of when the claims were vested in [HPRW], inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payors and/or third parties that may be liable to [HPRW] arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all right, title, ownership, interest, and entitlements in and to the Assigned Claims shall remain the exclusive property of Assignee or its successors and assigns. The intent of the parties is to transfer any and all rights title and interest that Assignor obtained from the [HPRW Assignment].

Series 44-20-931 Assignment at p. 1.

37.     Consideration was given between each party in executing the HPRW Assignment, the Series 15-09-31 Assignment, and the Series 44-20-391 Assignment.