**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC et al., | |
| Plaintiffs, | |
| v. | Case No. 2:21-cv-01901- MHW-CMV |
| NATIONWIDE MUTUAL INSURANCE COMPANY, et al., | Judge Michael H. Watson |
| | Magistrate Judge Chelsey M. Vascura |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS

Defendants' *Memorandum in Support* ("Memorandum" or "Mem.") accompanying their *Joint Motion to Dismiss* [Doc. No. 16] demonstrated that Plaintiffs' Complaint, like their prior related lawsuits against Defendants, fails as a matter of law.[1] ***First***, Defendants demonstrated that Plaintiffs failed to plead ***facts*** making it plausible that Defendants unreasonably failed to reimburse Plaintiffs for conditional payments that Plaintiffs' purported assignees allegedly made. Mem. at 13-20. Instead, "these debt collector plaintiffs" filed this lawsuit "before doing their homework"—like "scores" of other lawsuits "throughout the county that have all the earmarks of abusive litigation"—to take discovery Plaintiffs hope will reveal a claim for relief. *MAO-MSO Recovery II, LLC v. State Farm Mut. Aut. Ins. Co.*, 994 F.3d 869, 871, 878 (7th Cir. 2021). ***Second***, Defendants demonstrated that the MSP private right of action (Count I) does not apply to MAO conditional payments. Mem. at 21-23. ***Third***, Defendants demonstrated that the subrogation claim (Count II) fails as a matter of law because the MSP subrogates only the United States, not MAOs, to the rights of beneficiaries.

---

[1] All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Memorandum.

*Plaintiffs' Response Memorandum in Opposition to Defendants' Joint Motion to Dismiss* [Doc. No. 20] ("Opposition" or "Opp.") does not provide any valid reasons why this Court should deny Defendants' Motion to Dismiss.  **First**, Plaintiffs argue that pleading a MSP private right of action is "remarkably simple" and that Plaintiffs' payment allegations and Defendants' Section 111 reports, coupled with conclusory allegations that Defendants have an obligation to reimburse those payments, are sufficient to state a claim.  Opp. at 13-18.  It is not, as this Court recognized when dismissing another two of Plaintiffs' prior related lawsuits.  *See MAO-MSO Recovery II, LLC v. Nationwide Mut. Ins. Co.*, 2018 WL 4941111, at *3 & n.3 (S.D. Ohio Feb. 28, 2018).  Among other things, Plaintiffs must plead facts making it plausible that the MSP authorized those payments and Defendants' refusal to reimburse them was unreasonable. Plaintiffs also contend their need for discovery to state a plausible claim for relief is not a basis to dismiss their complaint, admit they do not have knowledge of the "settlement or no-fault insurance policies related to the exemplar claims," and ask the Court for pre-suit discovery. Opp. at 1, 12, 23-25.  But, a "plaintiff may not use the discovery process to obtain" facts that would raise relief beyond the speculative level "after filing suit."  *New Albany Tractor, Inc. v Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).

**Second**, Plaintiffs argue that the MSP private cause of action applies to MAO conditional payments because they are the functional equivalent of Medicare conditional payments.  *See* Opp. at 18-21.  They are not.  MAO conditional payments are authorized by an entirely different statute than Medicare conditional payments.  And the Sixth Circuit has held that a conditional payment authorized by the MSP is a required element of the MSP private right of action.  *See DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, 978 F.3d 326, 337-40 (6th Cir. 2020).  Thus, MAO conditional payments cannot satisfy this required element.

***Third***, Plaintiffs argue that MAOs are subrogated to the rights of beneficiaries because the MSP subrogates CMS to those rights and CMS regulations grant MAOs the same recovery rights as CMS.  Opp. at 21-23.  Congress, however, did not subrogate MAOs to the rights of beneficiaries, and CMS lacks power to do so without congressional authorization.

Despite first bringing these claims against Defendants over four years ago, Plaintiffs still cannot state a plausible claim for relief.  Instead, Plaintiffs again ask this Court for permission to use discovery to rummage through Defendants' files in the hopes they will be able to identify some reimbursement obligation.  The Court should not permit Plaintiffs to do so.  Nor should the Court grant Plaintiffs' throwaway request for leave to amend (Opp. at 29-30).  *See MAO-MSO Recovery II*, 2018 WL 4941111, at *4 (denying "throwaway" request for leave to amend in Plaintiffs' opposition).  The Court should dismiss the Complaint with prejudice.

## I.    PLAINTIFFS' MSP PRIVATE RIGHT OF ACTION CLAIM (COUNT I) FAILS AS A MATTER OF LAW

### A.    Assuming That The MSP's Private Right of Action Applies To MAO Payments, Plaintiffs Have Failed To Allege A Claim For Relief.

Defendants' Memorandum described the elements of an MSP private right of action and the ***facts*** a plaintiff must allege to make it plausible that those elements exist under controlling Sixth Circuit law.  *See* Mem. at 13-15.  Thus, it is remarkable that Plaintiffs contend "the Sixth Circuit has not yet defined the elements to plead an MSP Act claim."  Opp. at 13.

As set forth in the Memorandum, the private right of action's elements are found in the statutory language of the private cause of action itself:

> There is established a private cause of action for **[1]** damages (which shall be in an amount double the amount otherwise provided) **[2]** in the case of a primary plan **[3]** which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). "Painstakingly parsing through statutory language, *Bio-Medical Applications of Tennessee* explained the meaning of the **cryptic private-action provision**." *Duncan v. Liberty Mut. Ins. Co.*, 854 F. App'x 652, 661 (6th Cir. 2021) (citing *Bio-Med.*, 656 F.3d 277, 286 (6th Cir. 2011)) (emphasis added).[2]

Indeed, the Sixth Circuit has multiple decisions analyzing each of the three statutory elements. The Sixth Circuit analyzed the damages element, holding that "[b]ecause the Medicare Secondary Payer Act is not a *qui tam* statute, the financial injury suffered by the government does not confer standing upon other parties . . . [p]rivate plaintiffs must suffer their own individual harm." *Gucwa v. Lawley*, 731 F. App'x 408, 413 (6th Cir. 2018) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 919 (6th Cir. 2008)); *see also Bio-Med.*, 656 F.3d at 294-97 & nn.16 & 17 (discussing damages element extensively). The Sixth Circuit has explained the differences between primary payers that are group health plans and primary payers that are not group health plans and the impact that distinction has on the third element. *Compare Bio-Med.*, 656 F.3d at 284-87, *with Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 792–93 (6th Cir. 2014). And, the Sixth Circuit has opined on the requirements for pleading the third statutory element. *See DaVita*, 978 F.3d at 336-41; *Duncan*, 854 F. App'x at 668; *Bio-Med.*, 656 F.3d at 285-87.

---

[2]      While the Eleventh Circuit has noted that the single sentence "private cause of action is remarkably simple" in comparison to the "MSP Act as a whole," it has not held, as Plaintiffs suggest, that it is simple to plead an MSP private right of action. *Compare MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, (11th Cir. 2019) (Thapar, J., sitting by designation), *with* Opp. at 13, 18. Rather, the Eleventh Circuit, like the Sixth, has noted "[t]he text of the private cause of action provided for by the MSP Act is **challenging to parse**." *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 (11th Cir. 2016) (emphasis added). Indeed, *Tenet* assessed whether the private right of action authorizes Plaintiffs to sue entities other than primary plans (*i.e.*, providers) and the Eleventh Circuit held that Congress' inclusion of "primary plan" in the text provides a simple no answer to that question. *Tenet*, 918 F.3d at 1320-23. Moreover, as explained more fully below, the Eleventh Circuit rejected Plaintiffs' argument that CMS regulations giving MAOs the same recovery rights as CMS allowed Plaintiffs to rely on the United States' rights to recover conditional payments from providers. *Id.* at 1322.

In order for a plaintiff to state a MSP private right of action claim, a plaintiff must allege facts making it plausible that: (a) the defendant is a primary plan; (b) that Medicare made a conditional payment that the defendant unreasonably refused to reimburse; and (c) the plaintiff suffered damages. Mem. at 13-14.[3] Contrary to Plaintiffs' suggestion (Opp. at 13), the Eleventh Circuit's decision in *Humana Medical Plan, Inc. v. Western Heritage Insurance Company* does not narrowly interpret the pleading requirements for an MSP private right of action. 832 F.3d 1229 (11th Cir. 2016). There, one of the MAO's ("Humana") beneficiaries was injured at a condominium, and Humana paid approximately $20,000 for treatment of that injury. *Id.* at 1232. The beneficiary later sued the condominium in state court, and while a proposed settlement was pending, Humana sought reimbursement from the beneficiary. *Id.* When those efforts failed, Humana demanded that the condominium's insurer ("Western") reimburse Humana. *Id.* at 1233. A month later, Humana brought a MSP private right of action against Western. *Id.*

The Eleventh Circuit affirmed summary judgment for Humana. The settlement agreement established Western's status as a primary payer. *Id.* at 1239. Western's inclusion of Humana as a payee on the original settlement check and Humana's subsequent "demand for reimbursement" after Western removed Humana as a payee from the settlement check at the beneficiary's behest demonstrated Western's actual and constructive knowledge of Humana's conditional payment. That knowledge, in turn, established that Western failed to provide for appropriate reimbursement. *Id.* at 1239-40 ("Even after receiving Humana's demand for reimbursement, Western has declined to do so. Therefore, Western failed to provide for

---

[3]   While Plaintiffs assert that the MAO payments damaged the MAOs in this lawsuit, one of their affiliates has filed a *qui tam* lawsuit against Defendants and other insurers alleging that the same MAO payments harmed Medicare instead. *See United States ex rel. MSP WB, LLC, et al. v. Under Seal Defendants 1-317*, Case No. 2:19-cv-12165 (E.D. Mich.). If the MAO payments harmed Medicare as Plaintiffs' affiliate contends, Plaintiffs cannot satisfy the damages element in this case. *See Gucwa*, 731 F. App'x at 413.

'appropriate reimbursement' as defined by the CMS regulations."). Humana's payment for the beneficiary's care established damages. *Id.* Although *Western Heritage* is a summary judgment decision, it is consistent with the Sixth Circuit's determination that a plaintiff cannot pursue an MSP private right of action unless a primary plan has unreasonably refused to pay or reimburse.

Although the Opposition repeats the Complaint's refrain of reciting the elements of the MSP private cause of action, neither identify ***facts*** making it plausible that any (a) Defendant is a primary plan or (b) Plaintiffs' purported assignors made a conditional payment that any Defendant unreasonably refused to reimburse. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("'[A] formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).[4]

### 1. The Complaint Fails To Allege That Defendants Are Primary Plans.

"[T]he term 'primary plan' means . . . an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies." 42 U.S.C. § 1395y(b)(2)(A). Clause (ii) prevents Medicare from making payment "with respect to any item or service to the extent that . . . payment has been made or can reasonably be expected to be made . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." *Id.* § 1395y(b)(2)(A)(ii). Accordingly, in order for non-group health insurer to be a primary plan with respect to a payment, that insurer must have underwritten an insurance policy that provides coverage for that payment.

The only fact that the Complaint alleges in support of this element is that certain Defendants submitted Section 111 reports respecting the beneficiaries in the nineteen exemplar

---

[4] Plaintiffs also argue that the Eleventh Circuit's *Baxter* decision demonstrates their Complaint satisfies Rule 8. Opp. at 25 (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003)). *Baxter*, however, judged the allegations there against the pleading standard described in *Conley* that *Twombly* held four years later "has earned its retirement." *Compare Baxter*, 345 F.3d at 880, *with Twombly*, 550 U.S. at 564.

claims. *See* Compl. ¶¶ 92, 103, 114, 125, 136, 146, 156, 167, 178, 189, 200, 211, 222, 233, 244, 254, 265, 276, 287; *see also id.* ¶¶ 68 & Exhibit B (listing additional purported Section 111 reports).[5] As explained in the Memorandum, a Section 111 report does not establish that the reporting entity is a primary plan. Mem. at 27-28. Section 111 requires non-group health plans to "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under the program under this subchapter on any basis." 42 U.S.C. § 1395y(b)(8)(A)(i). "[I]f the claimant is determined to be so entitled," the plan must submit to the Secretary of HHS "the identity of the claimant" and "such other information as the Secretary shall specify *in order to enable the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim*." *Id.* § 1395y(b)(8)(B) (emphasis added). Non-group health plans are required to submit that information "regardless of whether or not there is a determination or admission of liability." *Id.* § 1395y(b)(8)(C). Defendants' Section 111 reports are the first step in CMS's process to determine whether Defendants are primary plans. Thus, Defendants' Section 111 reports do not establish that Defendants are primary plans respecting any payments that Plaintiffs' purported assignors allegedly made. *See, e.g.*, *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *6–7 (S.D.N.Y. Mar. 26, 2021).

Plaintiffs do not dispute that non-group health insurers are required to submit Section 111 reports even if they are not a primary plan. Instead, Plaintiffs double down on their

---

[5]     Plaintiffs suggest that as long as their exemplar claims pass muster (they do not), that the Complaint also asserts claims based on the Section 111 reports in Exhibit B. Opp. at 12, 24-25. While Federal Rule of Civil Procedure 18(a) allows a plaintiff to join "as many claims as it has against an opposing party," each claim asserted must be plausibly plead. *See Miller v. Hurst*, 2018 WL 10152547, at *3 (M.D. Tenn. Feb. 16, 2018) (denying motion to join new claim because [m]erely positing a theory of legal liability that is unsupported by specific factual allegations does not state a plausible claim for relief"); *accord Rishoi v. Deutsche Bank Nat. Tr. Co.*, 552 F. App'x 417, 420 (6th Cir. 2013) (each claim must satisfy Rule 8).

(a) conclusory allegations that Defendants are primary plans and (b) allegations that Defendants submitted Section 111 reports. *See* Opp. at 13 (citing Compl. ¶ 1-2, 57) & 16 (citing Compl. Ex. B). These allegations do not make it plausible that any Defendant is primary with respect to any alleged payment. And Plaintiffs now admit that they do not have any "settlement or no-fault insurance policies related to the exemplar or the claims identified in Exhibits B and C to the Complaint" (Opp. at 25), and, thus, have no ability to allege that Defendants are obligated to reimburse the alleged payments that Plaintiffs' purported assignors made. Instead, Plaintiffs seek to take discovery in lieu of their pre-suit investigation.

### 2. The Complaint Does Not Plausibly Allege Defendants Failed To Pay Or Appropriately Reimburse A Conditional Payment.

This element requires that a plaintiff plead both (a) "a conditional payment by Medicare," *DaVita*, 978 F.3d at 337, and (b) that the defendant unreasonably failed to pay or reimburse Medicare, *Duncan*, 854 F. App'x at 668. The Complaint does not plausibly allege either.

***Take first the conditional payment requirement.*** Plaintiffs contend that they adequately alleged conditional payments by alleging that payments were made, and, in conclusory fashion, those payments are ones "for which defendants held primary payer responsibility." Opp. at 14, 17. According to Plaintiffs, these allegations suffice under *DaVita* to allege a conditional payment. *Id.* at 14 (citing *DaVita*, 978 F.3d at 339-41).

Not so. *First*, the Sixth Circuit made clear that an MSP private cause of action will not lie "anytime Medicare remits payment to a provider." *DaVita*, 978 F.3d at 340. That is because "Medicare makes payments to providers all the time that are plainly not 'conditional payments.'" *Id.* Thus, a plaintiff must plausibly allege that Medicare had the authority to make a conditional payment:

> Our task is to determine when Medicare can make conditional
> payments. The "[a]uthority to make conditional payment" section
> of the MSPA provides that "[t]he Secretary may make payment
> under this subchapter with respect to an item or service if a
> primary plan . . . has not made or cannot reasonably be expected to
> make payment with respect to such item or service promptly." 42
> U.S.C. § 1395y(b)(2)(B)(i).

*Id.* at 339 (assessing whether allegation plausibly alleged a conditional payment). *Second*, the

complaint in *DaVita* contained numerous factual allegations making it plausible that Medicare

had authority to make a conditional payment. The complaint included numerous allegations

about the terms of the group health care plan at issue and how those terms allegedly

discriminated against dialysis treatment. *Id.* at 331. The complaint further alleged that the

provider ("DaVita") provided dialysis treatment to a particular beneficiary who, while covered

by the plan, was exposed to (a) higher costs (for copayments, coinsurance and deductibles) and

(b) risk that DaVita would bill the beneficiary for the difference between the plan's

reimbursement rates and the cost of dialysis. *Id.* at 331-32. The complaint also alleged that the

beneficiary dropped the plan and switched to Medicare due to the risks and costs created by the

plan's unlawful discrimination. *Id.* at 332. The Sixth Circuit held that those allegations made it

plausible that the MSP authorized Medicare to make conditional payments for the beneficiary's

dialysis treatments after the beneficiary switched to Medicare. *Id.* at 339-341.

Unlike the plaintiffs in *DaVita*, Plaintiffs here do not allege facts making it plausible that

the MSP authorized their purported assignor MAOs to make conditional payments. Medicare

can only make a conditional payment for an item or service "if a primary plan . . . has not made

or cannot reasonably be expected to make payment with respect to such item or service

promptly." *DaVita*, 978 F.3d at 339 (quoting 42 U.S.C. § 1395y(b)(2)(B)(i) (ellipsis in

original)). As explained in Defendants' Memorandum, CMS's regulations provide additional

guidance regarding when CMS (and thus an MAO) can make conditional payments. The MSP

-9-

authorizes conditional payments for an item or service covered by a no-fault policy in two limited circumstances: (1) when a beneficiary has filed a proper claim but the intermediary or carrier determines that the no-fault insurer will not pay promptly; or (2) when the beneficiary fails to meet a claim-filing requirement due to physical or mental incapacity. *See* Mem. at 16 (quoting 42 C.F.R. § 411.53(a)). Similarly, CMS (and thus an MAO) can make a conditional payment for an item or service covered by a liability policy in only limited circumstances: (1) when "[t]he beneficiary has filed a proper claim . . . but the intermediary or carrier determines that the liability insurer will not pay promptly"; or (2) where "[t]he beneficiary has not filed a claim for liability insurance benefits." 42 C.F.R. § 411.52(a).

Nowhere do Plaintiffs allege facts making it plausible that their assignors were required, or even entitled, to make conditional payments, or that they had any reasonable basis to conclude that Defendants knew about the medical bills but could "not reasonably be expected to make [prompt] payment." 42 U.S.C. § 1395y(b)(2)(B)(i); *see also DaVita*, 978 F.3d at 339.

***Take next the unreasonable failure to pay or reimburse Medicare requirement.*** "The double-damages incentive of the private right of action under the MSPA is meant to protect Medicare's interest and is a legitimate consideration for bringing a suit against ***recalcitrant*** primary insurers." *Duncan*, 854 F. App'x at 670 (emphasis added). Thus, a plaintiff must plausibly allege that a defendant has knowledge of its payment or reimbursement obligation and unreasonably refused to make payment. *See id.* at 668 (no MSP private right of action whenever "a primary plan invoke[s] process to dispute conditional payments made by Medicare").[6]

---

[6] Plaintiffs suggest the Court can ignore *Duncan* because it affirmed dismissal on standing grounds. Opp. at 14-15. In connection with analyzing the plaintiff's standing to bring a MSP private right of action, the Sixth Circuit necessarily had to consider the requirements for bringing an MSP private cause of action as those requirements inform whether a particular plaintiff has standing to bring such a claim. The Court should follow *Duncan*.

According to Plaintiffs, they have plausibly alleged the unreasonable failure to pay or reimburse requirement because Defendants' Section 111 reports establish Defendants' knowledge of the purported conditional payments and because Plaintiffs have no obligation to first seek reimbursement from Defendants.  Neither of those contentions withstand scrutiny.

Prior to Congress' adoption of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, Pub. L. No. 110-173, 121 Stat. 2492 (codified at and amending 42 U.S.C. § 1395y(b)), Medicare's ability to effectively coordinate benefits proved elusive.  As discussed above, Section 111 requires non-group health plans to provide CMS with certain information so CMS can "make an appropriate determination concerning coordination of benefits, including any applicable recovery claim."  42 U.S.C. § 1395y(b)(8)(A), (B).  Non-group health plans are required to submit that information "regardless of whether or not there is a determination or admission of liability."  *Id.* § 1395y(b)(8)(C).  Importantly, Section 111 does not require Medicare to report to non-group health plans any payments that CMS or an MAO may have made.  *Id.* § 1395y(b)(8)(G)(i) (authorizing, but not requiring, the Secretary to "share information collected under this paragraph as necessary for purposes of the proper coordination of benefits").  Non-group health plans typically only learn about conditional payments when informed by CMS or an MAO.  *See* 42 C.F.R. §§ 411.22(c) (CMS demand letters), 411.39 (CMS web portal), 422.108 (requiring MAOs to coordinate benefits with primary plans).

Though Section 111 addressed the concern that Medicare (and thus MAOs) often paid in the dark, it does not provide non-group health plans with the information necessary for them to coordinate benefits with Medicare, much less MAOs.[7]  Congress recognized that Section 111 did

---

[7]     Remarkably, Plaintiffs rely on case law before Section 111's enactment to argue that "Medicare (and by extension MAOs) frequently pays 'in the dark'" even though Plaintiffs include a three-page subsection on Section 111 reporting in their Opposition.  *Compare* Opp. at 12 (quoting *Baxter*, 345 F.3d at 901), *with id.* at 7-9 (discussing Section 111 Reporting).

not give **non-group health plans** sufficient information to identify MAO conditional payments or otherwise coordinate benefits with MAOs by adopting the PAID Act.  Pub. L. No. 116-215, § 1301, 134 Stat. 1045 (2020) (codified at and amending 42 U.S.C. § 1395y(b)(8)(G)).  The PAID Act requires the Secretary of HHS to provide additional information to non-group health plans about MAOs by the end of this year:

> Specified information.  In responding to any query made on or after the date that is 1 year after the date of the enactment of this clause [enacted Dec. 11, 2020] from an applicable plan related to a determination described in subparagraph (A)(i), the Secretary, notwithstanding any other provision of law, shall provide to such applicable plan—
>
> > (I) whether a claimant subject to the query is, or during the preceding 3-year period has been, entitled to benefits under the program under this subchapter on any basis; and
> >
> > (II) to the extent applicable, the plan name and address of any Medicare Advantage plan under part C and any prescription drug plan under part D in which the claimant is enrolled or has been enrolled during such period.

42 U.S.C. § 1395y(b)(8)(G)(ii).  Legislative history confirms that the PAID Act is intended to provide non-group health plans with information necessary for those plans to coordinate benefits with MAOs.  "[S]ettling parties are often unable to identify the correct Part C or Part D plan to be able to coordinate benefits, should they choose to do so.  This legislation closes that critical information by having CMS communicate the Part C and Part D plan identification to settling parties in response to a section 111 report."  166 Cong. Rec. 7324 (Dec. 9, 2020) (statement of Sen. Scott); *see also* 166 Cong. Rec. 1167 (Dec. 17, 2020) (statement of Rep. Bilrakis) ("This legislation is only intended to provide more information to the settling parties, so that they have the ability to coordinate with Part C and Part D Plans earlier if they so choose.").

The PAID Act does not provide additional information to MAOs and it does not alter

MAOs' obligations to coordinate benefits with non-group health plans:

> ***Congress recognizes that for the last 8 years, CMS has provided section 111 reports to the Part C and Part D Plans***, and Congress expects that CMS will continue to do so after this legislation is enacted.  Further, ***the existing MSP statute and regulations impose specific requirements*** on CMS, and ***on Part C and Part D plans***, to pay for claims in some situations, to not pay for claims in other situations, and ***to pursue recovery of claims when appropriate***.  Nothing in this legislation is intended to change any of those obligations or requirements, and ***Congress expects Part C and Part D plans to continue to seek recovery of claims by timely notifying settling parties when a payment has been made that should be reimbursed, consistent with the CMS notice procedures***.

166 Cong. Rec. 7324 (Dec. 9, 2020) (statement of Sen. Scott) (emphasis added); *see also* 166

Cong. Rec. 1167 (Dec. 17, 2020) (statement of Rep. Bilrakis) (same).  Contrary to Plaintiffs'

suggestion, Representative Estes did not say the PAID Act was intended to provide MAOs with

additional information.  *See* Opp. at 9.  Not only is Plaintiffs' characterization contrary to the

plain language of the PAID Act, but Mr. Estes' statement also makes clear that the PAID Act

requires "Medicare to better share this information . . . of the related parties [MAOs] . . . once a

request is filed [non-group health plan's query]."  166 Cong. Rec. 6991 (Dec. 8, 2020).

Because Section 111 reporting does not provide Defendants with notice of payments

made by MAOs or even the existence of MAOs themselves, Plaintiffs' allegations that

Defendants submitted Section 111 reports do not make it plausible that Defendants had

knowledge of the MAOs' payments.  *See* Compl. ¶¶ 93, 104, 115, 126, 137, 147, 157, 168, 179,

190, 201, 212, 223, 234, 245, 255, 266, 277, 288.

Plaintiffs' arguments that they are not required to plead that they sought recovery from

Defendants before bringing suit does not withstand scrutiny either.  In the Sixth Circuit, a MSP

private right of action is not cognizable "whenever a primary plan invoke[s] process to dispute

conditional payments made by Medicare." *Duncan*, 854 F. App'x at 668. Plaintiffs seek to deprive Defendants of that process by arguing they are not standing in the shoes of Medicare when suing Defendants under the private cause of action even though Plaintiffs contend their purported assignors were standing in those shoes when allegedly making payments for covered items and services. *See* Opp. at 17-18. But, as described above, the private cause of action requires a plaintiff plead that a defendant's refusal to reimburse was unreasonable. That refusal cannot be unreasonable when the MAO has not requested reimbursement, especially when there are myriad reasons that a reimbursement obligation would not exist. *See* Mem. at 6-7.

In order to avoid its obligation to seek reimbursement from a primary plan before bringing suit, Plaintiffs focus on the precise form of CMS's reimbursement request—a demand letter—and argue that they or the assignors were not required to issue a "demand letter" before bringing suit. *See* Opp. at 6-7, 18. While the Eleventh Circuit case on which Plaintiffs rely held that a formal demand letter was not required, it also held that "primary payers must have knowledge that they owed a primary payment before a party can claim double damages under the MSP." *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020). So, too, did the government's amicus brief in that case. *See* Opp. Ex. A at 18 n.4.[8]

### B. Most of Plaintiffs' Exemplar Claims Are Also Barred By The Statute of Limitations.

In the Memorandum, Defendants established that the three-year statute of limitation applicable to the government's cause of action to recover Medicare conditional payments applies to Plaintiffs' cause of action to recover MAO conditional payments. Mem. at 19-21. Plaintiffs

---

[8] Plaintiffs also chide Defendants for citing *MSPA Claims 1, LLC v. Sec. Nat'l Ins. Co.*, No. 2015-28181-CA-13, 2017 WL 1375163, at *5 (Fla. 11th Cir. Ct. Mar. 31, 2017) because the court later vacated its ruling. Opp. at 18 n.7. But, the vacated order dismissing the complaint *with prejudice* was replaced with an order dismissing the complaint *without prejudice*. *See* Opp. at Ex. C. The court's underlying reasoning described in Defendants' Memorandum remains firm.

argue that the six-year statute of limitation found in the False Claims Act instead applies to their claims and that it has not begun to run because the very Section 111 reports on which Plaintiffs' Complaint rests did not provide their purported assignors notice of these reports. Opp. at 26-29. Both of these arguments lack merit.

Plaintiffs again assert that MAOs have rights greater than the government, arguing that MAOs have six years to recover a conditional payment when the government only has three. When a cause of action does not contain an explicit statute of limitation, courts borrow the most suitable statute of limitation from another source. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). Plaintiffs argue that the most suitable statute of limitation is the False Claims Act's six-year statute of limitations, pointing to a Second Circuit decision from 2001. *See* Opp. at 27 (citing *Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 394 (2d Cir. 2001)). The problem with that argument is that *Manning* predates Congress' adoption of the three-year MSP statute of limitations in the SMART Act by over a decade. *See* Pub. L. No. 112-242, § 205, 126 Stat. 2374. The MSP's own three-year statute of limitation found in the same statute as the MSP private right of action is more suitable than the False Claims Act one, which is found in an entirely different title of the United States Code. Indeed, cases decided after 2013 generally agree that the three-year statute of limitations would apply to an MAO's suit brought under the MSP's private cause of action provision. *See* Mot. at 19–20; *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 775 (11th Cir. 2020) (noting that "all parties seem to agree [the government's three-year statute of limitation] would apply (via borrowing) to an MAO's suit brought under the Act's private cause of action").

Although Plaintiffs concede that a complaint can be dismissed on statute of limitations grounds when the complaint affirmatively shows a claim is time barred, Opp. at 26, Plaintiffs

argue that the same Section 111 reports they rely on to sue Defendants did not provide their purported assignors notice of those same claims. The MSP does not require Defendants to provide Plaintiffs with separate "written notice," Opp. at 28, apart from meeting their Section 111 reporting obligations to CMS under the MSP. Indeed, "CMS has provided section 111 reports to Part C and Part D Plans" "for the last 8 years." 166 Cong. Rec. 7324 (Dec. 9, 2020) (statement of Sen. Scott). The Section 111 reports provide MAOs with notice.

## C. The MSP's Private Right Of Action Does Not Apply To Conditional Payments Made By An MAO.

As explained in Defendants' Memorandum, 42 U.S.C. § 1395y(b)(2) does not authorize MAOs to make conditional payments, so the MSP private right of action is inapplicable to any reimbursement obligations a primary plan may owe to an MAO under other statutory provisions. Mem. at 21–23. Plaintiffs contend the opposite, claiming that MAOs have a right to seek reimbursement from a primary plan under Section 1395y(b)(3)(A) for their own conditional payments. Opp. at 18-21. Plaintiffs are wrong.

A private cause of action against a non-group health plan that is a primary plan is available only when that Plan "fails to provide for primary payment (or appropriate reimbursement) *in accordance with paragraph[] . . . (2)(A)*." 42 U.S.C. § 1395y(b)(3)(A) (emphasis added); *see also Mich. Spine*, 758 F.3d at 793. In *DaVita*, the Sixth Circuit explained that this language requires, among other things, Medicare make a payment authorized by 42 U.S.C. § 1395y(b)(2)(B)(i). 978 F.3d at 337-40. That provision authorizes *CMS* to make payments for items and services covered by a primary plan only when that primary plan "has not made or cannot reasonably be expected to make payment." *Id*. at 339. Nothing in that provision authorizes private MAOs to make similar conditional payments.

Rather, an entirely different section of the United States Code authorizes private MAOs to make conditional payments. 42 U.S.C. § 1395w-22(a)(4).[9] In *Care Choices HMO v. Engstrom*, the Sixth Circuit analyzed a nearly identical provision authorizing private HMOs to make conditional payments. *See* 330 F.3d 786 (6th Cir. 2003) (analyzing 42 U.S.C. § 1395mm(e)(4)).[10] In holding that there is no private right of action to recover HMO conditional payments, the Sixth Circuit distinguished HMOs' conditional payment statute from Medicare's, finding the differences provide "a fairly clear indication that Congress intended the Medicare program to have more extensive rights than Medicare-substitute HMOs." *Id.* at 790; *see also Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1153 (9th Cir. 2013) ("On its face, the MAO Statute does not purport to create a cause of action. Rather, it simply describes when MAO coverage is secondary to other insurance."). According to the Sixth Circuit, "Congress' failure to include an express remedy for HMOs [in the MSP provision] . . . coupled with the absence of any affirmative evidence that Congress intended to imply a private right of action, makes it clear that § 1395mm(e)(4) does not establish a federal right of action to seek reimbursement for benefits conferred by another insurer." *Id.* at 791.

---

[9]     42 U.S.C. § 1395w-22(a)(4) provides: "Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services."

[10]     42 U.S.C. § 1395mm(e)(4) provides: "Notwithstanding any other provision of law, the eligible organization may (in the case of the provision of services to a member enrolled under this section for an illness or injury for which the member is entitled to benefits under a workmen's compensation law or plan of the United States or a State, under an automobile or liability insurance policy or plan, including a self-insured plan, or under no fault insurance) charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law or policy—(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services."

As noted in Defendants' Memorandum, other Courts have held that the MSP private right of action applies to MAO conditional payments, *see* Mem. at 13 & n.10, and unsurprisingly, Plaintiffs urge the Court to follow those cases, Opp. at 18-21.  But those authorities fail to explain how an MAO can satisfy the elements of the private right of action when "[a] Medicare Advantage Organization receives no authority from paragraphs (1) and (2)(A)."  *Western Heritage*, 832 F.3d at 1241 (Pryor, J., dissenting).  As the Sixth Circuit has held, "the only way that a primary plan fails to act in accordance with paragraph (2)(A) . . . is by triggering Medicare to make a conditional payment" under the authority of 1395y(b)(2)(B)(i).  *DaVita*, 978 F.3d at 337.  Because that provision does not authorize MAOs to make conditional payments, an MAO conditional payment cannot satisfy this required element.

Plaintiffs make a categorical error when they argue that "it would be inconsistent to find that healthcare providers can recover under the MSP Act, but MAOs cannot."  *See* Opp. at 20. The question is not who can sue under the MSP private right of action, but rather what types of conditional payments are covered by it.  If a private MAO were damaged by a primary plan's unreasonable failure to reimburse a ***Medicare conditional payment***, it could assert an MSP private right of action against that primary plan.  What an MAO (or a provider) cannot do is assert an MSP private right of action based on an alleged failure to reimburse an ***MAO conditional payment*** authorized under 42 U.S.C. § 1395w-22(a)(4).

At least two aspects of the Sixth Circuit's jurisprudence on the MSP private right of action confirm Plaintiffs are trying to fit a square peg into a round hole.  ***First***, in order to assert a private right of action, a plaintiff must allege "individual harm" independent of "the financial injury suffered by the government."  *Gucwa*, 731 Fed. at 413.  The damages that Plaintiffs seek here are the equivalent of "the financial injury suffered by the government"—the unreimbursed

conditional payment—and not "individual harm" apart from that "financial injury." **Second**,

"double damages provide a needed incentive for private plaintiffs to bring claims against private

insurers that have shifted costs to Medicare . . . [b]ecause healthcare providers anticipate that

Medicare will seek its reimbursement from the proceeds." *Bio-Med.*, 656 F.3d at 296. Since

Medicare does not make MAO payments, it likely will not seek to share in the proceeds of any

lawsuit to recover them, and thus there is no need to incentivize MAOs to recover their own

conditional payments with double damages. The MSP private right of action does not apply to

MAO conditional payments.

## II. COUNT II FAILS BECAUSE THE MSP DOES NOT SUBROGATE MAOS TO THE RIGHTS OF MEDICARE BENEFICIARIES.

The MSP does not subrogate MAOs to the rights of beneficiaries. It only subrogates the

**United States** and **CMS** to the rights of Medicare beneficiaries. *See* 42 U.S.C.

§ 1395y(b)(2)(B)(iv) ("The United States shall be subrogated . . . ."); 42 C.F.R. § 411.24(e)

("CMS has a direct right of action to recover from any primary payer."); *id.* § 411.26 ("CMS is

subrogated . . . ."). This statute and these regulations on their face confer only the United States

and CMS with recovery rights. Plaintiffs' purported hook to aggrandize MAOs to the rights of

the government is a regulation that provides "[t]he MA organization will exercise the same rights

to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP

regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). But

that provision cannot create a private right of action when Congress has not done so. Mem. at

23-24 (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001); *Caswell v. City of Detroit Hous.

Comm'n*, 418 F.3d 615, 618–19 (6th Cir. 2005)).

One of the Eleventh Circuit cases on which Plaintiffs rely for other purposes expressly

rejects the proposition the 42 C.F.R. § 422.108 confers additional recovery rights beyond those

contained in the MSP private right of action. *See Tenet*, 918 F.3d at 1322 (cited by Opp. at 13, 18). There, one of Plaintiffs' affiliates asserted an MSP private right of action against healthcare providers. Plaintiffs' affiliate argued that the Eleventh Circuit should allow it to pursue claims against providers under the private right of action because 42 C.F.R. § 411.24(g) authorized CMS to sue providers, and § 422.108(f), in turn, gave Plaintiffs' affiliate the same rights as CMS. *Id.* at 1328. Because the MSP private right of action did not confer MAOs with the right to pursue providers, the Eleventh Circuit held that CMS's regulations could not either. *Id.* So, too, here. The MSP private right of action does not confer MAOs with subrogation rights and, thus, neither does 422.108(f).

Plaintiffs cite two district court cases and a report and recommendation to argue otherwise. Opp. at 22. But, the report and recommendation is from a district court within the Eleventh Circuit, and it failed to address *Tenet*'s controlling holding. And none of these cases explain how the private right of action arguably confers MAOs with subrogation rights. Congress did not subrogate MAOs to beneficiaries' rights, and CMS cannot do so in its stead.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the Memorandum, Defendants respectfully request that this Court dismiss the Complaint with prejudice.

Respectfully submitted,

/s/Aneca E. Lasley
Aneca E. Lasley (0072366)
*Trial Attorney*
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499
aneca.lasley@squirepb.com

/s/ Matthew A. Kairis
Matthew A. Kairis (0055502)
*Trial Attorney*
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
makairis@jonesday.com

*Counsel for Defendants Freedom Specialty Insurance, Nationwide Affinity Insurance Company of America, and Scottsdale Insurance Company*

Matthew C. Corcoran (0078236)
Alexandra Lehman Schill (0095612)
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215-2673
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
mccorcoran@jonesday.com
aschill@jonesday.com

*Counsel for Defendants Nationwide Mutual Insurance Company, Allied Insurance Company of America, Allied Property and Casualty Insurance Company, AMCO Insurance Company, Colonial County Mutual Insurance Company, Depositors Insurance Company, Harleysville Group Inc., Harleysville Insurance Company, Harleysville Preferred Insurance Company, Harleysville Worcester Insurance Company, Nationwide Agribusiness Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Titan Auto Insurance of New Mexico, Inc., Titan Insurance Company, Victoria Fire & Casualty Company, Victoria National Insurance Company, and Victoria Select Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs and all counsel of record in this matter.

/s/ Matthew A. Kairis
*One of the Attorneys for Defendants, Nationwide Mutual Insurance Company, Allied Insurance Company of America, Allied Property and Casualty Insurance Company, AMCO Insurance Company, Colonial County Mutual Insurance Company, Depositors Insurance Company, Harleysville Group Inc., Harleysville Insurance Company, Harleysville Preferred Insurance Company, Harleysville Worcester Insurance Company, Nationwide Agribusiness Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Titan Auto Insurance of New Mexico, Inc., Titan Insurance Company, Victoria Fire & Casualty Company, Victoria National Insurance Company, and Victoria Select Insurance Company.*