**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT

2022 MAR 28  PM 3: 39

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**MSP Recovery Claims, Series LLC**
*et al.*,

        **Plaintiffs,**

   **v.**

**Nationwide Mutual Insurance**
**Company,** *et al.*,

        **Defendants.**

**Case No. 2:21-cv-1901**

**Judge Michael H. Watson**

**Magistrate Judge Vascura**

**<u>OPINION AND ORDER</u>**

Defendants move to dismiss Plaintiffs' Complaint.  Defs.' Mot., ECF No.

16.  For the following reasons, Defendants' motion is **DENIED IN PART AND**

**GRANTED IN PART** and the Court **RESERVES RULING IN PART**.

As a preliminary matter, Plaintiffs move for leave to file a sur-reply in

opposition to Defendants' motion to dismiss.  ECF No. 25.  Sur-replies are

typically disfavored absent good cause.  Local Rule 7.2 (a)(2).  However, the

Court finds good cause exists here because the sur-reply allows Plaintiffs the

opportunity to reply to arguments Defendants made for the first time in their

Reply and does not prejudice Defendants.  *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577,

580 (S.D. Ohio 2010) ("This Court has routinely found good cause exists to

permit a party to file a sur-reply to address an issue raised for the first time in a

reply brief.").  Moreover, given the complexity of the statutory and regulatory

schemes at issue in this case, the Court deems this the unusual situation in which a sur-reply is warranted. Accordingly, ECF No. 25 is **GRANTED**; the Court considers Plaintiffs' sur-reply in this Opinion and Order.

## I.    BACKGROUND

MSP Recovery Claims, Series LLC and MSP Recovery Claims Series 44, LLC ("Plaintiffs") sue various Nationwide Companies ("Defendants") on behalf of various Medicare Advantage Organizations ("MAOs"), which assigned Plaintiffs all recovery and reimbursement rights. Plaintiffs assert that Defendants failed to reimburse those MAOs for medical expenses that Defendants were obligated to pay as a primary payer under the Medicare Secondary Payer Act ("MSPA").

### 1. Statutory Framework

Medicare provides federally funded health insurance for individuals with disabilities and those sixty-five years of age or older. *Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 281 (6th Cir. 2011). Medicare itself was initially the primary payer of health costs for its beneficiaries, "but in 1980 Congress enacted the Medicare Secondary Payer Act to counteract escalating healthcare costs." *Id.* The MSPA makes Medicare a secondary payer and prohibits it from making a payment if "payment has been made or can reasonably be expected to be made" by a primary payer. 42 U.S.C. § 1395y(b)(2)(A)(ii). If the primary payer "has not made or cannot reasonably be expected to make payment," Medicare is permitted to make a "conditional payment." 42 U.S.C. § 1395y(b)(2)(B)(i). If

such a conditional payment is made, the primary payer then reimburses Medicare. 42 U.S.C. § 1395y(b)(2)(B)(ii).

Although most beneficiaries still receive benefits directly from Medicare, "individuals can elect instead to receive their benefits through private insurance companies that contract with [Medicare] to provide 'Medicare Advantage' [] plans." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 355 (3d Cir. 2012). These private insurance companies are referred to as Medicare Advantage Organizations ("MAOs"). Instead of being paid on a fee-for-service basis, MAOs receive a fixed payment per beneficiary-enrollee. 42 U.S.C. §§ 1395w-21, 1395w-23. Like Medicare, an MAO is also authorized to charge primary payers for medical expenses the MAO pays on behalf of a beneficiary when the MAO is a secondary payer and an insurance carrier, employer, or other entity is obligated to pay as a primary payer. 42 U.S.C. § 1395w-22(a)(4).

## 2. Plaintiffs' Claims

On April 16, 2021, Plaintiffs filed this putative class action Complaint seeking damages from twenty-four insurance companies for their alleged failures to honor their primary payer obligations under the MSPA. Compl. 2, ECF No. 1. Plaintiffs allege that Defendants failed to reimburse the cost of medical expenses resulting from injuries sustained in automobile and other accidents that were instead paid by the MAO assignors. *Id.* Further, Plaintiffs argue that, by failing to pay, Defendants are in breach of their contracts with the beneficiary, and that by way of subrogation under 42 C.F.R. § 411.24(e), Plaintiffs can bring the breach

of contract claims on behalf of their MAO assignor (who itself would be standing in the shoes of the MAO assignor's beneficiary).

The Complaint provides nineteen examples of the claims ("exemplars"). For each exemplar, Plaintiffs allege: the initials of the injured beneficiary, the date of the accident, the medical items and services rendered to the beneficiary, the insurance policy number, the liable defendant(s), the MAO assignor responsible for secondary payment, the diagnosis codes and injuries (attached as an exhibit), the date the services were provided, the amounts billed, the amounts paid, and the dates on which the amount(s) were paid. Pls.' Resp. 9, ECF No. 20 (citing Compl. ¶¶ 85–290, ECF No. 1 and ECF Nos. 1-5–1-23, Exs. D-V). In addition, Plaintiffs have attached two exhibits which purport to list thousands of other instances in which Defendants *may* have failed to properly reimburse conditional payments made by MAO assignors. Compl. Exs. B, C, ECF No. 1.

Defendants move to dismiss Plaintiffs' claims on several grounds.

## II.     STANDARD OF REVIEW

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556.

A pleading's "[f]actual allegations must be enough to raise a right to relief above

the speculative level, on the assumption that all the allegations in the [pleading]

are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). Although

the court must "construe the [pleading] in the light most favorable to the [non-

moving party]," *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002), the

non-moving party must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555.

### III.   ANALYSIS

As noted above, Plaintiffs bring a claim for reimbursement of conditional

payments under 42 U.S.C. § 1395y(b)(3)(A) and a breach of contract claim by

way of subrogation under 42 C.F.R. § 411.24(e). Compl., ECF No. 1.

Defendants argue that Plaintiffs' claims should be dismissed for myriad reasons.

The Court will discuss each, in turn.

### A.   Standing

No party addresses Article III standing, but the Court finds it prudent to

briefly consider the issue. The Court focuses this inquiry on only whether named

Plaintiffs have standing. Whether putative class members have standing will

depend on named Plaintiffs' Article III standing. *Cf. Gooch v. Life Inv'rs Ins. Co.

of Am.*, 672 F.3d 402, 422 (6th Cir. 2012).

Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). If the plaintiff lacks standing, then the federal court lacks jurisdiction. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Thus, standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Article III standing has three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (internal alterations omitted). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561.

Turning first to injury-in-fact, the Supreme Court has instructed that the injury must be "concrete—that is, real, and not abstract." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (internal quotation marks omitted) (citing cases). The Court has identified several categories of concrete injuries, including "traditional tangible harms, such as physical harms and monetary harms." *Id.* Here, Plaintiffs allege that Defendants financially harmed Plaintiffs' MAO assignors by failing to correctly reimburse conditional payments. *See, e.g.*, Compl. ¶ 54, ECF No. 1. Because the MAO assignors could demonstrate an

injury-in-fact with this financial harm, so can Plaintiffs as assignees. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008). Accordingly, the injury-in-fact element is satisfied.

Plaintiffs have also plausibly alleged causation. For standing purposes, "causation" means a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Plaintiffs allege that their MAO assignors' financial harm was caused by Defendants' failure to properly reimburse the MAO assignors for those assignors' conditional payments. *See, e.g.*, Compl. ¶ 54, ECF No. 1. Because Plaintiffs allege that the challenged action (the failure to properly reimburse) caused the injury (the financial harm), the causation element is established.

Finally, the Court considers redressability. For this element, a plaintiff must show that the injury "is likely to be redressed by a favorable judicial decision." *Wittman v. Personhuballah*, 578 U.S. 539, 544 (2016) (internal quotation marks and citation omitted). Here, Plaintiffs seek compensatory damages for the financial harm. A favorable verdict would, therefore, redress their injury, and so the redressability element is met.

Because Plaintiffs have adequately alleged injury-in-fact, causation, and redressability, they have likewise adequately alleged Article III standing.

**B.      Private Right of Action under 42 U.S.C. § 1395y(b)(3)(A)**

Moving then to Defendants' arguments supporting dismissal, of threshold importance is whether Plaintiffs, as assignees of any claim the MAOs might bring, have a private right of action under § 1395y(b)(3)(A).  Defendants argue that they do not because the MAOs themselves have no private right of action.

The Sixth Circuit has yet to decide this issue.  The Third Circuit and the Eleventh Circuit hold that an MAO can bring a private action under the MSPA.  *In re Avandia Mktg.*, 685 F.3d at 367; *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016).  Numerous courts within this Circuit have considered the issue and arrived at the same conclusion.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19CV00219, 2019 WL 6770729, at *23 (N.D. Ohio Dec. 12, 2019); *Progressive Corp.*, 2019 WL 5448356 at *8; *MSP Recovery Claims v. Auto Club Ins. Ass'n*, No. 21-11606, 2021 WL 5234501, at *2 (E.D. Mich. Nov. 10, 2021); *see also MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019) (Thapar, J.) ("MAOs, like Medicare, can sue primary plans to ensure they are properly reimbursed.  But *unlike* Medicare, MAOs must rely on the private cause of action when they sue." (internal citations omitted) (emphasis in original)).  Defendants acknowledge this reality, *see* Defs.' Mot. 13, ECF No. 16, but maintain that those courts reached the wrong conclusion, *id.* at 21–23.  Upon review, the Court is persuaded by the reasoning of those Courts that have found that MAOs have a private right of action.

The private right of action statute provides that there is "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). The Third Circuit, in *In re Avandia,* meticulously reviewed this statute and found the plain text "broad and unambiguous." *In re Avandia Mktg.*, 685 F.3d at 359. It explained that the language "plac[es] no limitations upon which private (i.e., non-governmental) actors can bring suit." *Id; see also Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016) ("We see no basis to exclude MAOs from a broadly worded provision . . . .").

This Court similarly finds the plain text to be broad and unambiguous and believes that the Sixth Circuit will take an expansive view of § 1395y(b)(3)(A), as it did in *Michigan Spine*, and allow MAOs to assert a private cause of action. *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 793 (6th Cir. 2014) (allowing medical service providers to bring claims against non-group health plans).[1] Accordingly, this Court holds that § 1395y(b)(3)(A) grants MAOs a private right of action.

---

[1] In *Michigan Spine*, the Sixth Circuit cited the Third Circuit case that allows such claims to be brought by MAOs. 758 F.3d at 793 (citing *In re Avandia Mktg.*, 685 F.3d at 363).

Defendants' arguments are unavailing.  First, they argue that the Sixth
Circuit's opinion in *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003)
instructs this Court that MAOs do not have a private right of action under the
MSPA.  Defs.' Mot. 22–23, ECF No. 16.  The Court disagrees and believes
Defendants read *Engstrom* too broadly.  There, the plaintiff was a health
management organization ("HMO"), another Medicare-substitute similar to an
MAO, that argued that it had an implied private right of action under
§ 1395mm(e)(4).  *Engstrom*, 330 F.3d at 787–88.  To be sure, the Sixth Circuit
did compare that statute with the MSPA private right of action to support its
finding that there was no implied private right under § 1395mm(e)(4).  *Id.* at 790–
91.  One part of the comparison does give this Court pause:

> The comparison between the MSP[A] reimbursement provisions and
> the HMO-related provision of § 1395mm(e)(4) provides some
> additional evidence that Congress did not intend to imply a private
> right of action in the latter statute.  Where the HMO provision uses
> permissive language (i.e., the HMO "may" obtain reimbursement), the
> MSP[A] provision uses mandatory language (i.e., Medicare payments
> "shall" be conditioned on reimbursement by the primary insurer).  *This
> is a fairly clear indication that Congress intended the Medicare
> program to have more extensive rights than Medicare-substitute
> HMOs.*

*Id.* at 790 (emphasis added).  This quote suggests that MAOs might not have a
private right of action, because they are meant to have less extensive rights than
Medicare.  At bottom, though, the Sixth Circuit did not address whether the
plaintiff, an HMO, could have brought a private action under the MSPA—it
established only that there was no implied private right of action under

§ 1395mm(e)(4). In this case, if Plaintiffs had brought a cause of action under the MAO analogue to § 1395mm(e)(4), *Engstrom* might be persuasive, and Defendants' argument might be more apt. Defs.' Mot. 22, ECF No. 16. But Plaintiffs have no such claim, and because the existence of a private right of action under § 1395y(b)(3)(A) is the issue here, *Engstrom* does not dictate the outcome in this case.

Defendants next argue that there is no private right of action for MAOs because an MAO cannot satisfy the express statutory requirements for a private right of action. Defs.' Reply 18, ECF No. 24 (citing *Humana*, 832 F.3d at 1240 (Pryor, J., dissenting)). As stated above, the relevant statute reads:

> (A) Private cause of action
>
> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) *in accordance with paragraphs (1) and (2)(A).*

42 U.S.C. § 1395y(b)(3)(A) (emphasis added). The language "in accordance with paragraphs (1) and (2)(A)" limits when a private right of action exists, and, Defendants argue, by definition is inapplicable when the secondary payer is an MAO (as opposed to Medicare). Defendants assert that none of the courts that have allowed an MAO to bring a private cause of action have reconciled the fact that those limits do not apply to MAOs. Defs.' Reply 18, ECF No. 24.

Looking first at paragraph (1), it does not apply to MAOs and consequently is neither at issue nor limiting in this case. *Humana*, 832 F.3d at 1236 (Pryor, J.,

dissenting) (citing § 1395y(b)(1)). Instead, the crux of Defendants' argument hinges on whether paragraph (2)(A) encompasses MAOs.

Turning then to paragraph (2)(A), Defendants argue rather persuasively that some language in the statute suggests that only Medicare can make a conditional payment; indeed, that position has garnered support in at least one dissenting opinion. *Humana*, 832 F.3d at 1236 (Pryor, J., dissenting). However, other courts have pointed out that other language in the statute directs the reader to consider the broader subchapter, which applies not only to Medicare, but also to MAOs. *In re Avandia Mktg.*, 685 F.3d at 359–60; *see also Humana*, 832 F.3d at 1236–37. After careful consideration, this Court agrees with the broader reading. As such, Defendants' argument is unavailing.

Next, Defendants argue that a private right of action is available only when a plaintiff alleges "'individual harm' independent of 'the financial injury suffered by [Medicare].'" Defs.' Reply 18, ECF No. 24 (citing *Gucwa v. Lawley*, 731 F. App'x 408, 413 (6th Cir. 2018)). Defendants assert that because the injury here is the unreimbursed conditional payment, the damages Plaintiffs seek are equivalent to any financial injury suffered by Medicare, and there is no private right of action. *Id.*

Defendants rely on the Sixth Circuit's unpublished opinion in *Gucwa v. Lawley*, 731 F. App'x 408, 413 (6th Cir. 2018). There, the plaintiff, an individual Medicare beneficiary, asserted a private right of action under the MSPA. *Id.* However, the plaintiff did not allege that *he* incurred personal financial harm and

instead relied solely on the financial injury suffered by Medicare. *Id.* Because the MSPA is not a *qui tam* statute, the plaintiff had no standing to bring a claim. *Id.* The Sixth Circuit explained that "[p]rivate plaintiffs must suffer their own individual harm; for instance, a private plaintiff may allege that they were paid less by Medicare than they would have been paid by the primary payer." *Id.*

Plaintiffs here allege that *they* suffered a financial injury when *they* made allegedly reimbursable payments that were not reimbursed. Accordingly, the defect in *Gucwa* is not present here, and that case does not pose a bar to Plaintiffs' private right of action.

Finally, Defendants argue that the congressional purpose of the MSPA is not supported by an interpretation that grants MAOs a private right of action. Defs.' Reply 18, ECF No. 24. The MSPA private right of action provides for double damages. 42 U.S.C. § 1395y(b)(3)(A). In *Bio-Medical*, the Sixth Circuit grappled with the policy purpose of awarding double damages in an effort to determine how double damages should be calculated. *Bio-Med.*, 656 F.3d at 294. One theory was that double damages are provided to incentivize a private plaintiff to bring claims. *Id.* at 294–96. This incentivizing might be necessary, the Sixth Circuit explained, because private plaintiffs "anticipate that Medicare [which would separately be damaged], will seek its own reimbursement from the proceeds." *Id.* at 296.[2] Defendants argue that such a purpose is not realized

---

[2] For a helpful numerical example of this situation, *see Bio-Med.*, 656 F.3d at 294 n.16.

here, as Medicare "likely will not seek to share in the proceeds of any lawsuit" because it would not have incurred separate damages.  Defs.' Reply 18, ECF No. 24.

However, Defendants fail to address the fact that Medicare is also able to collect double damages when it brings a claim on its own behalf.  42 U.S.C. § 1395y(b)(2)(B)(iii).  In other words, Congress has structured these actions— both Medicare's cause of action and the private cause of action—to allow double damages.  *Compare* 42 U.S.C. § 1395y(b)(2)(B)(iii) (Medicare's action) *with* 42 U.S.C. § 1395y(b)(3)(A) (private right of action).  Whatever Defendants or this Court might attempt to divine was Congress's purpose in doing so, the textual result is clear: in an action against primary payers, the plaintiff may seek double damages.  In short, when compared with the detailed textual analysis of the Third Circuit, *supra*, finding that MAOs have a private right of action, the Court is unpersuaded by Defendants' generalized arguments about the MSPA's purpose.

Finding none of Defendants' arguments persuasive, this Court holds that § 1395y(b)(3)(A) grants MAOs a private right of action.

## C. Failure to Plead Sufficient Facts for Count I

Now that the Court has established that Plaintiffs can bring a claim under § 1395y(b)(3)(A), it addresses Defendants' next argument: that the Complaint contains only conclusory allegations to support such a claim for relief.  *See* Defs.' Mot. 10, ECF No. 16.

An MSPA private right of action claim requires a plaintiff to allege facts making it plausible that: 1) the defendant is a primary plan for a claim covered by Medicare; 2) the defendant failed to make the primary payment or appropriate reimbursement to the Medicare benefit provider; and 3) the plaintiff suffered damages. *See Grange Ins. Co.*, 2019 WL 6770729 at *26 (collecting cases); *MSPA Claims 1, LLC v. Allstate Ins. Co.*, No. 17-CV-01340, 2019 WL 4305519, at *4 (N.D. Ill. Sept. 11, 2019); *see also* Compl. ¶ 303, ECF No. 1; Defs.' Reply 5, ECF No. 24. Defendants argue that Plaintiffs fail to allege facts making the first and second requirements plausible.[3] The Court will evaluate each in turn.

_____

[3] In a prior lawsuit Plaintiffs brought against Nationwide Mutual Insurance Company, this Court dismissed Plaintiffs' case, finding that Plaintiffs failed to adequately plead that they were the assignees of the MAOs' recovery and reimbursement rights. *MAO-MSO Recovery II, LLC v. Nationwide Mut. Ins. Co.*, No. 2:17-CV-164, 2018 WL 4941111 (S.D. Ohio Feb. 28, 2018) (Watson, J.). This Court also cautioned that Plaintiffs:

> failed to plead some of the[] same facts [as *United States ex rel. Takemoto v. Nationwide Mut. Ins.*, 674 F. App'x 92 (2d Cir. 2017)], including the amounts or dates of alleged payments from MAOs, some information regarding the settlement agreements reached (*e.g.,* the date, parties, scope of claims covered), and the relationship between the payments made by the MAO and the contents of the settlement agreements. If Plaintiffs assert these claims in a subsequent lawsuit, they should provide this additional information to ensure that these same issues are not the subject of a new motion to dismiss.

*Id.* at *3. Defendants argue that Plaintiffs have not remedied "some" of those deficiencies. Defs.' Mot. 15, ECF No. 16. Specifically, they contend Plaintiffs have not alleged "specific facts regarding the beneficiaries' particular accidents (such as the location or circumstances of the accidents) or any facts regarding alleged settlements between Defendants and beneficiaries (such as the dates or terms of such agreements)." *Id.* at 16. The Court, as explained later, believes that Plaintiffs have met their burden at this stage.

### 1. Do Plaintiffs allege that Defendants are primary plans?

For the first time in their Reply brief, ECF No. 16, Defendants argue that the Complaint fails to plausibly allege that Defendants are primary plans. The statute defines a primary plan as a group health plan, "workmen's compensation law or plan, an automobile or other liability insurance policy or plan (including a self-insured plan) or no-fault insurance" plan that has made or can reasonably be expected to make a payment for an item or service. 42 U.S.C. § 1395y(b)(2)(A). Primary plans become the primary *payers* for situations arising under the MSPA when Medicare or a Medicare benefit provider like an MAO is the secondary payer. *See Duncan v. Liberty Mut. Ins. Co.*, 854 F. App'x 652, 660 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 767 (2022); *see also* 42 C.F.R. § 411.21 ("Primary payer means, when used in the context in which Medicare is the secondary payer, any entity that is or was required or responsible to make payment with respect to an item or service (or any portion thereof) under a primary plan."). Many courts seem to use the two phrases—"primary plans" and "primary payers"—interchangeably. *See, e.g., MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1214 (11th Cir. 2020). At the pleading stage, a plaintiff must allege "some factual matter" to make it plausible that defendants are primary plans, for example:

> that a particular individual received Medicare benefits through a particular MAO, that the individual also held a no-fault auto insurance policy with . . . Defendant, and that the individual was injured in an auto accident at a particular time and place and as a result received medical services covered by Medicare.

*Allstate Ins. Co.*, 2019 WL 4305519 at *4 (quoting *MAO-MSO Recovery II, LLC v. Allstate Ins. Co.*, No. 17-CV-01340, 2018 WL 1565583, at *5 (N.D. Ill. Mar. 30, 2018)); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV1702525ABAJWX, 2018 WL 3357493, at *8 (C.D. Cal. May 23, 2018) ("The Court accepts as true Plaintiff's contention that Defendant insured the tortfeasors. Accordingly, the inference that can reasonably be made from this allegation . . . is that Defendant is a primary plan because it provided insurance to the tortfeasors.").

Defendants argue that the only allegations Plaintiffs make respecting their status as primary plans, and thus, primary payers, are that some Defendants submitted Section 111 reports for the nineteen exemplars. They argue, such reporting is not enough to meet Plaintiffs' burden at this stage. Defs.' Reply 6–7, ECF No. 24

This reporting, commonly referred to as "Section 111 reporting," requires group health plans, workers' compensation plans, and no-fault and liability insurers to submit information regarding Medicare beneficiaries' claims on a quarterly basis. *See* 42 U.S.C. § 1395y(b)(7)–(8). Such information must be reported "regardless of whether or not there is a determination or admission of liability." 42 U.S.C. § 1395y(b)(8)(C); *but see* 42 U.S.C. § 1395y(b)(8)(A) ("[A]n applicable plan shall—(i) determine whether a claimant . . . is entitled to benefits under the program . . . and (ii) if the claimant is determined to be so entitled, submit [the required information] to the Secretary . . . ."). So, Section 111

reports, without more, *may* be insufficient to establish an insurer's status as the primary plan for a claim covered by an MAO.

Here, however, Plaintiffs relied on more than just the Section 111 reports in alleging that Defendants are primary plans. Plaintiffs point out that they have relied on:

> publicly available sources, including Defendants' website, annual filings, police crash and incident reports, and reporting data from Insurance Services Office ("ISO"), a third-party data analytics and compliance provider, and a vendor called MyAbility. Through MyAbility, Plaintiffs have access to data that primary payers report to [the Centers for Medicare and Medicaid Services ("CMS")] in compliance with their statutory reporting obligations [that is, Section 111 reports], and that data is attached to this Complaint.

Compl. 6i n. 4, ECF No. 1.

For each exemplar, Plaintiffs have alleged enough to make it more than a sheer possibility that Defendants are primary plans. It is not as though they have merely stated that Defendants made a Section 111 report about a claim and therefore, they are the primary plan—and, more importantly, the primary payer. Plaintiffs go beyond that, listing either Defendants' no fault insurance policy that should have covered injuries a beneficiary received in an accident or Defendants' liability insurance policy that, per a settlement agreement, should have covered injuries a beneficiary received. Then, Plaintiffs go on to detail the medical treatment that should have been covered under the applicable insurance policy but that was instead covered by the MAO.

Construing the Complaint in the light most favorable to Plaintiffs, they have plausibly alleged that Defendants are primary plans.

### 2. Do Plaintiffs allege that Defendants failed to make the primary payment or reimburse a conditional payment?

The next issue is whether Plaintiffs sufficiently alleged that Defendants failed to reimburse their MAO assignors' conditional payments. The parties largely agree that Plaintiffs must plead that MAOs incurred reimbursable costs that were not reimbursed. *See* Defs.' Reply 8, ECF No. 24; Pls.' Resp. 17, ECF No. 20 (citing *Grange Ins. Co.*, 2019 WL 6770729 at *16).

Plaintiffs here have met this burden; they have alleged that their MAO assignors made payments for beneficiaries' medical expenses and that Defendants were obligated—but failed—to reimburse those MAO assignors. *See, e.g.*, Compl. ¶¶ 85–95 (outlining Defendant Scottsdale Insurance Company's alleged failure to reimburse MAO assignor AvMed, Inc., for care beneficiary H.B. received); *id.* at ¶¶ 96–106 (similar allegations for beneficiary A.H. who had a plan with MAO AvMed).

But the parties disagree about whether the pleading requirement stops there. Plaintiffs think it does. Pls.' Resp. 17, ECF No. 20. But Defendants think that in addition to the failure to reimburse a reimbursable payment, a plaintiff must plead "that a defendant's refusal to reimburse was *unreasonable*." Defs.' Mot. 14, ECF No. 16 (emphasis added). Defendants go on to argue that the Complaint here cannot satisfy this burden because Plaintiffs' assignors never

requested reimbursement, and if a party does not request reimbursement, any refusal to reimburse cannot be unreasonable. *Id.* The Court rejects Defendants' proposed pleading standard because there simply is not a requirement that the failure to reimburse be unreasonable.

Defendants point the Court to only one case in support of a reasonableness requirement: *Duncan v. Liberty Mutual Insurance Co.*, 854 F. App'x 652 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 767 (2022). In *Duncan*, the Sixth Circuit stated that "[t]he double-damages incentive of the private right of action under the MSPA is meant to protect Medicare's interest and is a legitimate consideration for bringing a suit against *recalcitrant* primary insurers." *Id.* at 670 (emphasis added). It is from this sentence—specifically this *word*—that Defendants create a pleading requirement that a plaintiff must "plausibly allege that a defendant ha[d] knowledge of its payment or reimbursement obligation and *unreasonably* refused to make payment." Defs.' Reply 10, ECF No. 24 (emphasis added). Defendants point the Court to no case that interpreted *Duncan* to require this additional pleading, and the Court is not independently aware of any such case.[4] This Court will not interpret dicta from *Duncan* as a pleading requirement and would point out that *Duncan* deals with an entirely different issue (Article III standing) at a different procedural stage (summary

_____

[4] Similarly, Defendants point the Court to no case where reasonableness was required to be plead, and the Court is not independently aware of such a case.

judgment). *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 836 (6th Cir. 2019) ("Although there are many techniques for determining the difference between binding precedent and non-binding dicta, one approach is to ask whether the questionable language is essential to the holding's reasoning." (citation omitted)); *see also Duncan*, 854 F. App'x at 674 (White, J., dissenting in part) ("[N]owhere does the MSPA signal that bad faith or unreasonableness is required, or that Medicare must have first demanded reimbursement of the amount sought to be recovered by the private plaintiff. Congress could have so provided, but did not, apparently being more concerned with incentivizing private plaintiffs to recover funds from which to reimburse Medicare for conditional payments that rightfully should have been made by primary payers."). This Court does not find that a plaintiff must plead that a defendant acted unreasonably or with bad faith in addition to pleading that the defendant failed to reimburse a conditional payment.

Further, to the extent Defendants believe that a plaintiff must plead that an MAO first made a claim to a defendant before making a conditional payment, other courts have rejected such an argument. *See, e.g.*, *MSP Recovery Claims, Series LLC. v. Progressive Corp.*, No. 1:18CV2273, 2019 WL 5448356, at *13–14 (N.D. Ohio Sept. 17, 2019). "In the absence of any clear authority requiring an MAO first present its claim to the primary payer before suit," this Court similarly finds such arguments meritless. *Progressive Corp.*, 2019 WL 5448356 at *14.

Thus, the Court rejects Defendants' proposed addition to the pleading standard and finds Plaintiffs sufficiently pleaded the second element of their § 1395y(b)(3)(A) claim.

### 3. Outstanding Issues

Notwithstanding the above analysis, not all Defendants can properly remain in this case. Plaintiffs included nineteen exemplars in their Complaint. Compl. ¶¶ 85–290; *see also* Defs.' Mot. 26, ECF No. 16. But these nineteen exemplars collectively provide sufficient allegations against only five of the twenty-four Defendants. Defs.' Mot. 25, ECF No. 16 That leaves nineteen Defendants.

It is true that those nineteen Defendants are listed as primary plans in some exemplars. For example, two exemplars list two alternative Defendants as the responsible primary plan. Compl. ¶¶ 96–106 (A.H. exemplar); *id.* at ¶¶ 118–28 (H.R. exemplar). Two other exemplars list all twenty-four Defendants as the responsible primary plan. *Id.* at ¶¶ 215–25 (L.B. exemplar); *id.* at ¶¶ 226–36 (K.M. exemplar). But Plaintiffs admit there is only one primary payer for each exemplar. *See e.g., id.* at 47i n. 30; *id.* at 29i n. 18. Plaintiffs further admit that, as to these four exemplars, Plaintiffs listed multiple Defendants because Plaintiffs lacked knowledge to allege which defendant was the primary payer (although they believe it is one of the twenty-four possible Defendants). *Id.*

The Court is sympathetic to Plaintiffs' plight: Plaintiffs argue the reason they cannot allege with specificity *which* of the twenty-four possible Defendants is

linked to each of the four exemplars just discussed is because Defendants have purposefully reported these claims in a generic way to avoid liability. Pls.' Resp. 23–25, ECF No. 20.

Nonetheless, in order to state a claim under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must allege that their injury was caused by a specific Defendant. Plaintiffs cannot rely on discovery to provide the facts necessary to satisfy *Iqbal* and *Twombly. Cf. Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) ("[I]t it would be . . . inappropriate to allow [the plaintiff] to use the discovery process to find the contracts in dispute *after* filing suit." (emphasis in original)); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (explaining, in an anti-trust case that the "plaintiff must allege specific facts of price discrimination even if those facts are only within the head or hands of the defendants. The plaintiff may not use the discovery process to obtain these facts after filing suit"). Accordingly, Defendants' motion to dismiss is **GRANTED IN PART.** The Court dismisses without prejudice claims against those defendants who are not tied to a specific exemplar.

## D.    Statute of Limitations for 42 U.S.C. § 1395y(b)(3)(A)

Defendants also argue that some of Plaintiffs' § 1395y(b)(3)(A) exemplars are barred under the applicable statute of limitations, which they believe is three years. Defs.' Mot. 19–21, ECF No. 16. Plaintiffs believe that they are likely

subject to a longer statute of limitations but that, in any event, there is no basis for dismissal at this stage. Pls.' Resp. 26–29, ECF No. 20.

It is not clear what statute of limitations applies under the MSPA private right of action. The parties agree that the MSPA does not set forth the statute of limitations for private causes of action. Defs.' Mot. 19, ECF No. 16; Pls.' Resp. 26–27, ECF No. 20. As a result, the Court should "'borrow' the most closely analogous state limitations period." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414–15 (2005) (citations omitted). In "rare" cases, the Court borrows limitations from analogous federal statutes. *Id.*

Here, the parties do not brief whether any state statute of limitations is relevant or applicable. Instead, they both rely on other federal statutes of limitations. Thus, a threshold issue is whether there is a state statute of limitations the Court should adopt. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983) ("We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law."); *see also MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 1:18-CV-157-AW-GRJ, 2021 WL 1232780, at *3 (N.D. Fla. Mar. 31, 2021) (deciding that a Florida statute provided a more appropriate statute of limitations for these claims than the False Claims Act). The Court would benefit from briefing on this threshold issue and therefore **RESERVES RULING** on whether any of Plaintiffs' § 1395y(b)(3)(A) exemplars are untimely.

E.     **Breach of Contract by way of Subrogation under 42 C.F.R. § 411.24(e)**

Defendants next argue that Count II, Plaintiffs' breach of contract claim by way of subrogation under 42 C.F.R. § 411.24(e), must be dismissed as a matter of law.  In essence, Plaintiffs' breach of contract claim proceeds as follows.  Plaintiffs allege that Defendants breached insurance policy contracts between Defendants and Plaintiffs' MAO assignors' beneficiaries.  Compl. ¶ 315, ECF No. 1.  The MAO assignors can subrogate the beneficiaries' breach-of-contract actions against Defendants.  *Id.*  Accordingly, Plaintiffs, as assignors of the MAOs' rights, can also subrogate the beneficiaries' breach-of-contract claims.[5]

This claim stems from Medicare's direct right of action to recover from a primary payer.  *See* 42 C.F.R. § 411.24(e); *see also* 42 U.S.C. § 1395y(b)(2)(B)(iii) (statutory equivalent).  Through that direct right of action, Medicare has the authority to stand in the shoes of *another party* entitled to payment by a primary payer:

> (a) Subrogation.  With respect to services for which Medicare paid, [Medicare] is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer.

---

[5] Although it is unclear, the Court presumes Count II is plead in the alternative to Count I, because Plaintiffs will only be permitted to recover their damages once.

Although § 411.26 names only Medicare[6] as a subrogee, 42 C.F.R. § 422.108(f) provides that MAOs "exercise the same rights to recover from a primary plan . . . that the Secretary exercises under [regulations that include § 411.26]."

Based on this regulatory scheme, some courts find that MAOs have a right of subrogation and can bring these breach of contract claims under 42 C.F.R. § 411.24(e). *See Mercury Gen.*, 2018 WL 3357493 at *11; *Allstate Ins. Co.*, 2019 WL 4305519 at *6; *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, No. 20-20887-CIV, 2021 WL 720339, at *6 (S.D. Fla. Feb. 4, 2021); *MSP Recovery Claims, Series LLC v. Amerisure Ins. Co.*, No. 17-23961-CIV, 2021 WL 1711684, at *7 (S.D. Fla. Apr. 15, 2021); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 19-21583-CIV, 2020 WL 5984382, at *13 (S.D. Fla. May 12, 2020), *report and recommendation adopted,* 2020 WL 5982020 (S.D. Fla. Oct. 8, 2020); *Mao-Mso Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 117CV01537JBMJEH, 2018 WL 3420796, at *7 (C.D. Ill. July 13, 2018); *but see Mspa Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 1:18-CV-157-AW-GRJ, 2020 WL 6876298, at *7 (N.D. Fla. Feb. 24, 2020).

But these cases were wrongly decided, Defendants contend, because even assuming that 42 C.F.R. § 422.108(f) *purports* to grant MAOs a right of subrogation, § 422.108(f) cannot grant such a right because § 422.108(f) is

_____

[6] The statute names CMS—that is, the Centers for Medicare and Medicaid Services. The Court refers to CMS as Medicare for simplicities sake.

merely a *regulation*. *See* Defs.' Reply 19–20, ECF No. 24. A regulation cannot create a private right of action that the underlying statute does not grant. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Agencies may play the sorcerer's apprentice but not the sorcerer himself."); *see also* 42 U.S.C. § 1395y(b)(2)(B)(iv) (statutory provision providing *Medicare* a right to subrogation). And because the *statute* does not confer the right of an MAO to subrogate a beneficiary's claim, Defendants argue, no *regulation* can grant that right, either.

This argument, though brought in one page, implicates major doctrines that the parties do not seem to have considered. Do Defendants mean to say that 42 C.F.R. § 422.108(f) is an improper regulation? Does *Chevron* apply? The non-delegation doctrine? Defendants' briefing does not address the Courts' questions.

In the absence of briefing on these weighty doctrines—and in light of the fact that the majority of courts that have considered the issued allowed subrogation—the Court finds subrogation appropriate at this juncture. Defendants are free to re-raise this argument at summary judgment with thorough briefing. So, as to Claim II, Defendants' motion is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **DENIED IN PART AND GRANTED IN PART**. The Court **RESERVES RULING** in part.

Claims against the following Defendants are **DISMISSED WITHOUT PREJUDICE:**

- Allied Insurance Company of America

- Allied Property and Casualty Insurance Company

- AMCO Insurance Company

- Colonial County Mutual Insurance Company

- Depositors Insurance Company

- Freedom Specialty Insurance Company

- Harleysville Insurance Company

- Harleysville Preferred Insurance Company

- Harleysville Worcester Insurance Company

- Harleysville Worcester Insurance Company

- Nationwide Agribusiness Insurance Company

- Nationwide Assurance Company

- Nationwide Insurance Company of America

- Nationwide Mutual Fire Insurance Company

- Nationwide Property and Casualty Insurance Company

- Titan Auto Insurance of New Mexico, Inc

- Titan Insurance Company

- Victoria National Insurance Company

- Victoria Select Insurance Company

The Court **RESERVES RULING** on Defendants' statute of limitations argument so that the parties can provide additional briefing.  Defendants are **ORDERED** to brief the issue within twenty-one days, with any response or reply filed in accordance with the local rules.  Briefing shall not exceed fifteen pages.

The Clerk is **DIRECTED** to terminate ECF Nos. 16 and 25.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**