# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MSP Recovery Claims, Series LLC,**
*et al.*,

      **Plaintiffs,**

      **v.**

**Nationwide Mutual Insurance
Company,** *et al.*,

      **Defendants.**

**Case No. 2:21-cv-1901**

**Judge Michael H. Watson**

**Magistrate Judge Vascura**

## <u>OMNIBUS OPINION AND ORDER</u>

There are several motions pending before the Court:

- Nationwide Mutual Insurance Company, Nationwide General Insurance Company, Harleysville Group, Inc., Victoria Fire & Casualty Company, and Scottsdale Insurance Company (collectively "Defendants") move the Court to take judicial notice of certain documents. ECF No. 69.

- MSP Recovery Claims, Series LLC ("MSP") and MSP Recovery Claims Series 44, LLC ("Series 44," collectively "Plaintiffs") object to one of the Magistrate Judge's discovery orders. ECF No. 70.[1]

- Defendants move for summary judgment on Plaintiffs' claims. ECF Nos. 67, 74, & 76.[2]

---

[1] As explained below, Series 44 is no longer a Plaintiff. However, because both MSP and Series 44 participated in the briefing relevant to this Opinion and Order, the Court will use "Plaintiffs" throughout.

[2] Defendants filed sealed and unsealed versions of their motion for summary judgment. ECF Nos. 67, 74, & 76. Whenever possible, the Court cites to one of the unsealed versions, ECF No. 74.

For the following reasons, the motion to take judicial notice, ECF No. 69, is

**GRANTED**; the objection to the Magistrate Judge's order, ECF No. 70, is

**OVERRULED AS MOOT**; and the motion for summary judgment, ECF Nos. 67,

74, and 76, is **GRANTED**.

## I.     BACKGROUND

The Court explained the relevant legal background as follows:

Medicare provides federally funded health insurance for individuals with disabilities and those sixty-five years of age or older.  *Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 281 (6th Cir. 2011).  Medicare itself was initially the primary payer of health costs for its beneficiaries, "but in 1980 Congress enacted the Medicare Secondary Payer Act to counteract escalating healthcare costs."  *Id.*  The MSPA makes Medicare a secondary payer and prohibits it from making a payment if "payment has been made or can reasonably be expected to be made" by a primary payer.  42 U.S.C. § 1395y(b)(2)(A)(ii).  If the primary payer "has not made or cannot reasonably be expected to make payment," Medicare is permitted to make a "conditional payment."  42 U.S.C. § 1395y(b)(2)(B)(i).  If such a conditional payment is made, the primary payer then reimburses Medicare.  42 U.S.C. § 1395y(b)(2)(B)(ii).

Although most beneficiaries still receive benefits directly from Medicare, "individuals can elect instead to receive their benefits through private insurance companies that contract with [Medicare] to provide 'Medicare Advantage' [] plans."  *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 355 (3d Cir. 2012).  These private insurance companies are referred to as Medicare Advantage Organizations ("MAOs").  Instead of being paid on a fee-for-service basis, MAOs receive a fixed payment per beneficiary-enrollee.  42 U.S.C. §§ 1395w-21, 1395w-23.  Like Medicare, an MAO is also authorized to charge primary payers for medical expenses the MAO pays on behalf of a beneficiary when the MAO is a secondary payer and an insurance carrier, employer, or other entity is obligated to pay as a primary payer.  42 U.S.C. § 1395w-22(a)(4).

Opinion and Order 2–3, ECF No. 28.

Plaintiffs bring this action as assignees of various MAOs which assigned

Plaintiffs all recovery and reimbursement rights. As the Court explained:

> Plaintiffs filed this putative class action Complaint seeking damages from twenty-four insurance companies for their alleged failures to honor their primary payer obligations under the MSPA. . . . Plaintiffs allege that Defendants failed to reimburse the cost of medical expenses resulting from injuries sustained in automobile and other accidents that were instead paid by the MAO assignors. . . . Further, Plaintiffs argue that, by failing to pay, Defendants are in breach of their contracts with the beneficiary, and that by way of subrogation under 42 C.F.R. § 411.24(e), Plaintiffs can bring the breach of contract claims on behalf of their MAO assignor (who itself would be standing in the shoes of the MAO assignor's beneficiary).

> The Complaint provides nineteen examples of the claims ("exemplars"). For each exemplar, Plaintiffs allege: the initials of the injured beneficiary, the date of the accident, the medical items and services rendered to the beneficiary, the insurance policy number, the liable defendant(s), the MAO assignor responsible for secondary payment, the diagnosis codes and injuries (attached as an exhibit), the date the services were provided, the amounts billed, the amounts paid, and the dates on which the amount(s) were paid. . . . In addition, Plaintiffs have attached two exhibits which purport to list thousands of other instances in which Defendants *may* have failed to properly reimburse conditional payments made by MAO assignors.

Opinion and Order 3–4, ECF No. 28 (citations to the docket omitted).

Additional facts will be included in the analysis section as needed.

## II.     MOTION TO TAKE JUDICIAL NOTICE

Defendants move for the Court to take judicial notice of various public

documents. ECF No. 69. Four of the documents are available on the Center for

Medicare & Medicaid Service's ("CMS") website; the other document is a state court docket. *Id.* Plaintiffs do not oppose the motion.

Federal Rule of Evidence 201(b) provides:

The court may judicially notice a fact that is not subject to reasonable dispute because it:

> (1) is generally known within the trial court's territorial jurisdiction; or
>
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The documents from the CMS website and the state-court docket are "sources whose accuracy cannot reasonably be questioned." Therefore, Defendants' motion is granted; the Court will take judicial notice of the documents referenced therein. *See MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19CV00219, 2019 WL 6770729, at *7, n. 7 (N.D. Ohio Dec. 12, 2019) ("Courts have taken judicial notice of the CMS website as 'a source which cannot reasonably be questioned'"); *Overton v. Tennessee*, 590 F. Supp. 3d 1087, 1089, n. 1 (M.D. Tenn. 2022) ("The Court may take judicial notice of entries from its docket or another court's docket." (cleaned up)).

## III.    MOTION FOR LEAVE TO AMEND

Plaintiffs move for leave to file a second amended complaint. Mot., ECF No. 92. That motion is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs first ask to "remove" Series 44 as a plaintiff. Apparently, all claims that had once been assigned to Series 44 have now been assigned to

MSP. Resp., ECF No. 105. The motion is **GRANTED**; Series 44 shall be terminated as a Plaintiff.

Next, Plaintiffs request to remove certain exemplars. Mot., ECF No. 92. The Court construes this request as a motion to voluntarily dismiss those claims under Federal Rule of Civil Procedure 41(a)(2).[3] Plaintiffs specifically move to dismiss the following remaining exemplar claims: A.H. Claim, A.R. Claim, I.D. Claim, Y.H. Claim, L.B. Claim, K.M. Claim, J.F. Claim, D.B. Claim, and P.S. Claim (the "Dismissed Exemplars"). Mot., ECF No. 92.

Plaintiffs' motion to voluntarily dismiss these claims is **GRANTED**. Generally, a dismissal under Rule 41 is without prejudice. *See* Fed. R. Civ. P. 41(a)(2). However, as explained below, the Dismissed Exemplars fail on the merits. Accordingly, the Dismissed Exemplars are **DISMISSED WITH PREJUDICE**.

Plaintiffs also request to add and substitute Defendants. For example, in the Complaint, the P.J. Claim is aimed at Nationwide Mutual Insurance Company. Compl. ¶¶ 107–17, ECF No. 1. Now, Plaintiffs have realized that Depositors Insurance Company, not Nationwide Mutual Insurance Company,

---

[3] There is some debate about whether only some claims or parties can be dismissed under Rule 41. Because no claims survive this order, the Court need not step into that debate now.

underwrote the relevant policy and wish to amend the Complaint to reflect the same. Mot., ECF No. 92.

Plaintiffs moved to amend in July 2023; the Court's Preliminary Pretrial Order set the deadline to amend the pleadings in November 2022. ECF Nos. 45, 84, & 92. When, as here, a motion to amend is brought after the deadline set by the Court's scheduling order, a party must satisfy the standards of both Rule 15(a) and Federal Rule of Civil Procedure 16(b)(4). *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (citation omitted). "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citation omitted). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Armatas v. Haws*, No. 21-3190, 2021 WL 5356028, at *3 (6th Cir. Nov. 17, 2021) (quotation marks and citation omitted) "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citation omitted).

Plaintiffs have not been diligent in attempting to meet the case management schedule. Plaintiffs represent that they learned the relevant information in productions of discovery in December 2022, April 2023, and May 2023, after the November 2022 amendment deadline. Mot., ECF No. 92; Order

However, Defendants represent that Plaintiffs did not serve their first discovery request until *after* the amendment deadline. Resp., ECF No. 105. This undercuts Plaintiffs' arguments that they were diligent because they did not receive the necessary discovery until after the deadline. *See Palmer v. Burke*, No. 1:12-CV-912, 2014 WL 4659485, at *2 (S.D. Ohio Sept. 17, 2014) ("[I]f Plaintiffs had served even the most basic and generic discovery requests on Defendants during the six and one-half month discovery period, he would likely have learned the identity of the proper defendant and could have sought to amend the complaint before the dispositive motion deadline.").

Plaintiffs also waited several months between acquiring the necessary information and moving for leave to amend. At best, Plaintiffs waited two months (from the May 2023 production to the late-July 2023 motion to amend). At worst, Plaintiffs waited seven months (from the December 2022 production to the July 2023 motion). A plaintiff cannot sit on newly discovered evidence and wait months to seek leave to amend. *See Commonwealth Motorcycles, Inc. v. Ducati N. Am., Inc.*, No. 316CV00002GFVTEBA, 2017 WL 3586042, at *3 (E.D. Ky. Aug. 18, 2017) (concluding that the plaintiffs did not show good cause in part because the plaintiffs were aware of the information supporting amendment months before seeking leave to amend); *cf. Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458–59 (6th Cir. 2013), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) (affirming a denial of leave to

amend under Federal Rule of Civil Procedure 15 when the plaintiff moved for leave to amend "four months after discovery of the 'new' evidence[.]").  Further, Plaintiffs never moved to extend the amendment deadline, even though the Court has granted many motions for extensions of time.  In sum, Plaintiffs were not diligent.

Plaintiffs disagree, pointing to Defendants' initial disclosures.  According to Plaintiffs, one of Defendants' initial disclosures misled Plaintiffs into believing that no other parties underwrote the at-issue insurance policies.  Reply, ECF No. 110. This argument is unpersuasive because the relevant part of Federal Rule of Civil Procedure 26 requires parties to disclose information about things in *their possession*.  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Rule 26's initial disclosure rules do not impose some affirmative duty to disclose information that might be in some *other parties*' possession.  Thus, Plaintiffs' initial-disclosure arguments fall flat.

Turn next to prejudice to Defendants.  "[A]llowing amendment months after the close of discovery and after dispositive motions were filed and briefed" results in "significant prejudice" to Defendants.  *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (considering prejudice in the context of Rule 15); *see also Amalu v. Stevens Transp., Inc.*, No. 115CV01116STAEGB, 2018 WL 6839036, at *3 (W.D. Tenn. Mar. 27, 2018) (applying the same reasoning when ruling on a motion under Rule 16).  Here, fact discovery closed on June 30, 2023, and dispositive motions have been filed.  *See* ECF No. 58, 67, 74, & 76.

Case No. 2:21-cv-1901                                      Page 8 of 28

Thus, Defendants would suffer "significant prejudice" if the Court allowed amendment at this late stage.

Plaintiffs argue that Defendants will suffer no prejudice by adding or substituting Defendants because Defendants already know about the information supporting these substitutions or additions. This argument misses the mark. Even assuming that Defendants knew the correct underwriter for each insurance policy, they have still expended significant resources litigating (in discovery and briefing on summary judgment) the claims as they are alleged in the Complaint. Plaintiffs argue that Defendants could simply graft their current summary judgment arguments onto the new Defendants. But Plaintiffs do not explain how arguments in support of Defendant A would apply with equal weight to Defendant B. Plaintiffs' conclusory arguments are unavailing.

Plaintiffs also argue, analogizing to relation back amendments under Rule 15(c), that courts often allow substitution of one corporate entity for another. This argument is unpersuasive. First, Plaintiffs did not raise any Rule 15(c) argument in their motion and, thus, this argument is forfeited. *See Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021) ("[E]ven well-developed arguments raised for the first time in a reply brief come too late" (citation omitted)). Second, much of the analysis under Rule 15(c) focuses on potential prejudice to the *to-be-added* party. *See* Fed. R. Civ. P. 15(c)(1)(C). Here, however, the Court focuses on the potential prejudice to *existing* Defendants.

*See Leary*, 349 F.3d at 906. As a result, Plaintiffs' analogies to Rule 15(c) are unconvincing.

In sum, Plaintiffs have failed to show good cause for amendment under Rule 16(b).

However, even if Plaintiffs satisfied Rule 16(b), amendment would not be proper under Rule 15(a). Under Rule 15(a), a motion for leave to amend "may be denied where there is undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Seifu v. Postmaster Gen. of U.S.*, No. 21-4068, 2022 WL 19835788, at *4 (6th Cir. Dec. 12, 2022) (quotation marks and citations omitted). As just explained, allowing amendment at this time would cause significant prejudice to Defendants. As a result, Plaintiffs' motion for leave to amend is alternatively denied under Rule 15(a). *See Berry v. Specialized Loan Servicing, LLC*, No. 2:18-CV-2721-SHL-DKV, 2019 WL 9103422, at *5 (W.D. Tenn. Aug. 13, 2019), *aff'd*, No. 218CV02721SHLDKV, 2020 WL 3485577 (W.D. Tenn. Feb. 24, 2020) (explaining, in the alternative, that amendment was improper under Rule 15 because it "would result in significant, unfair prejudice to the defendants because discovery has been closed" for several months and the complaint contained new allegations).

For these reasons, Plaintiffs' motion for leave to amend is **GRANTED IN PART** and **DENIED IN PART**.

Case No. 2:21-cv-1901                                   Page 10 of 28

This may seem harsh. However, these "MSP entities," like Plaintiffs have a habit of filing these types of actions without conducting a proper pre-suit investigation. As the Seventh Circuit observed in a recent "MSP case":

> This appeal . . . leaves us with the unmistakable impression that these debt collector [for MAOs] plaintiffs pull the litigation trigger before doing their homework. They sue to collect on receivables they paid little or nothing for and then rely on the discovery process to show they acquired something of value and thus have an enforceable right to collect. This time around, at the critical put up or shut up moment of summary judgment, the plaintiffs once again failed to establish standing.
>
> Federal courts do not possess infinite patience, nor are the discovery tools of litigation meant to substitute for some modicum of pre-suit diligence. The plaintiffs' approach is not sitting well with many judges, and multiple district courts have already commented on what they perceive as MAO-MSO's rush to file litigation in the hope that discovery will show whether an actual case or controversy exists. . . .
>
> We do not intend our warnings in this case to chill good-faith litigation on those broader issues of standing. But these plaintiffs' sue first and ask questions later approach risks stretching the limits of judicial patience, and counsel for the plaintiffs would be well advised to confirm the existence of an actual injury before once again availing themselves of the judicial process.

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021) (citing cases).

## IV.   OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

Plaintiffs object to the Magistrate Judge's order denying a motion to compel discovery responses (the "Responses"). Obj., ECF No. 70. That objection is now moot.

As explained below, Defendants are entitled to summary judgment on all of Plaintiffs' claims.  Plaintiffs have not argued that the Responses are necessary to properly oppose summary judgment, whether through a Rule 56(d) motion or in the briefing on the objection or on summary judgment.  To the contrary, in their objection, Plaintiffs primarily argue that the Responses are needed for class certification.  *Id*.  Further, and perhaps most importantly, the Responses are unrelated to the reasons Plaintiffs' claims cannot survive summary judgment.  Thus, there is nothing improper about the Court ruling on the motion for summary judgment without addressing Plaintiffs' objection.  *Cf. Hopson v. Protein Techs. Int'l*, 31 F. App'x 194, 196 (6th Cir. 2002) (affirming the district court's grant of summary judgment when the plaintiff argued he did not have an adequate opportunity for discovery because the plaintiff "did not request additional time for discovery or otherwise alert the district court, through an affidavit as required by [Rule 56(d)] that additional time for discovery was needed prior" to the Court's consideration of summary judgment).

In sum, any ruling on Plaintiffs' objection would be superfluous.  Accordingly, Plaintiffs' objection is **OVERRULED AS MOOT**.

## V.    MOTION FOR SUMMARY JUDGMENT

Plaintiffs bring a claim for reimbursement of conditional payments under 42 U.S.C. § 1395y(b)(3)(A) and a breach of contract claim by way of subrogation under 42 C.F.R. § 411.24(e).  *See generally*, Compl., ECF No. 1.  Defendants

move for summary judgment on all claims.  ECF Nos. 67, 74, & 76.  The Court will discuss each claim, in turn.

## A.     Standard of Review

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986).  The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted).  Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## B.    Analysis

### 1.    Claim I: MSPA Private Right of Action

"Claim I" is, in reality, several hundred claims. That is, Plaintiffs assert a claim under 42 U.S.C. § 1395y(b)(3)(A) for each exemplar and each of the hundreds of entries in the spreadsheets attached as Exhibits B and C to the Complaint (the "Spreadsheets"). In any event, to succeed on an MSPA claim, a plaintiff must show that: (1) the defendant is a primary plan for a claim covered by Medicare; (2) the defendant failed to make the primary payment or appropriate reimbursement to the Medicare benefit provider; and (3) the plaintiff suffered damages. *See Grange Ins. Co.*, 2019 WL 6770729, at *26 (addressing the elements of an MSPA claim on a motion to dismiss under Rule 12) (collecting cases).

### a. Non-Exemplar Claims

The Court first turns to the non-exemplar claims contained in the Spreadsheets. Even assuming the Court may properly consider the Spreadsheets—and taking all entries in the Spreadsheet as fact—the Spreadsheets fall short of demonstrating a genuine issue of material fact on any element of an MSPA claim on the non-exemplar claims.

The Spreadsheets fall short because they do not identify any damages. That is, the Spreadsheets do not identify whether the insured ever sought medical treatment as a result each entry's accident and, if so, the cost of the same. Accordingly, as to the claims in the Spreadsheets, Plaintiffs have put forth no evidence in support of the third element of an MSPA claim: damage to the plaintiffs. *See Grange Ins. Co.*, 2019 WL 6770729, at *26. As a result, Defendants are entitled to summary judgment on all non-exemplar claims.

### b. Exemplar Claims

There are several remaining exemplar claims: H.B. Claim, P.J. Claim, Y.H. Claim, A.R. Claim, I.D. Claim, G.M. 2015[4] Claim, S.H. Claim, R.L. Claim, G.M. 2016 Claim, L.R. Claim, J.F. Claim, D.B. Claim, P.S. Claim, H.M. Claim, P.M.

---

[4] The Complaint asserts two exemplar claims referenced by the initials "G.M." *See* Compl. ¶¶ 160–70; 193–203, ECF No. 1. To differentiate the two G.M. Claims, the Court includes the years of the accidents underlying each claim.

Claim.  Defendants are entitled to summary judgment on each of these claims for various reasons, discussed below.

### i.  Exemplar Claims in which the Named Defendant is Not the Primary Payer

For several claims, discovery has revealed that the Defendant named in those exemplars is not, in fact, the primary payer for that claim because it did not underwrite the at-issue insurance policy:

| Claim | Alleged Insurer | Actual Insurer |
|---|---|---|
| P.J. Claim | Nationwide Mutual Insurance Company.  Compl. ¶¶ 107–17, ECF No. 1. | Depositors Insurance Company.  Mot., Ex. B, ECF No. 76-4, at PAGEID # 3585; McCann Decl. ¶ 8, ECF No. 76-2. |
| Y.H. Claim | Nationwide Mutual Insurance Company.  Compl. ¶¶ 129–38, ECF No. 1. | Harleysville Worcester Insurance Company.  Mot., Ex. H, ECF No. 76-10, at PAGEID # 3686; McCann Decl. ¶ 14, ECF No. 76-2. |
| A.R. Claim | Nationwide Mutual Insurance Company.  Compl. ¶¶ 139–48, ECF No. 1. | Nationwide General Insurance Company.  Mot., Ex. P, ECF No. 76-18, at PAGEID # 3964; McCann Decl. ¶ 22, ECF No. 76-2. |
| S.H. Claim | Nationwide Mutual Insurance Company.  Compl. ¶¶ 171–81, ECF No. 1. | Nationwide Mutual Fire Insurance Company.  Mot., Ex. AA, ECF No. 76-29, at PAGEID # 4116; McCann Decl. ¶ 33, ECF No. 76-2. |
| R.L. Claim | Nationwide Mutual Insurance Company.  Compl. ¶¶ 182–92, ECF No. 1. | Nationwide Agribusiness Insurance Company.  Mot., Ex. EE, ECF No. 77-2, at PAGEID # 4179; McCann Decl. ¶ 37, ECF No. 76-2. |

| G.M. 2016 Claim | Nationwide Mutual Insurance Company. Compl. ¶¶ 182–92, ECF No. 1. | Nationwide Affinity Insurance Company of America. Mot., Ex. HH, ECF No. 77-5, at PAGEID # 4249; McCann Decl. ¶ 40, ECF No. 76-2. |
|---|---|---|
| L.R. Claim | Nationwide Mutual Insurance Company. Compl. ¶¶ 204–14, ECF No. 1. | Nationwide Property and Casualty Insurance Company. Mot., Ex. KK, ECF No. 77-8, at PAGEID # 4309; McCann Decl. ¶ 43, ECF No. 76-2. |
| D.B. Claim | Harleysville Group Inc. Compl. ¶¶ 247–257, ECF No. 1. | Harleysville Worcester Insurance Company. Mot., Ex. NN, ECF No. 77-11, at PAGEID # 4435; McCann Decl. ¶ 46, ECF No. 76-2. |
| H.M. Claim | Nationwide Mutual Insurance Company. Compl. ¶¶ 269–79, ECF No. 1. | Nationwide Affinity Insurance Company of America. Mot., Ex. ZZ, ECF No. 77-23, at PAGEID # 4586; McCann Decl. ¶ 58, ECF No. 76-2. |

In other words, there is no genuine issue of material fact that the Defendant named in the Complaint as to each of these claims did not underwrite the at-issue insurance policy and, therefore, is not the primary payer. Indeed, Plaintiffs do not dispute that the Defendants listed in the Complaint for these exemplars did not underwrite the at-issue policy; Plaintiffs argue only that the exemplars can nonetheless survive summary judgment because Plaintiffs should be allowed to amend the Complaint. Resp. 15, ECF No. 87. As explained above, the Court has denied leave to amend the Complaint.

Thus, there is no genuine dispute of material fact that Plaintiffs cannot satisfy the first element of an MSPA claim (that the defendant is a primary plan

for a claim covered by Medicare).  As a result, Defendants are entitled to summary judgment on the following exemplar claims: P.J. Claim; Y.H. Claim; A.R. Claim; S.H. Claim; R.L. Claim; G.M. 2016 Claim; L.R. Claim; D.B. Claim; and H.M. Claim.[5]

The J.F. Claim does not neatly fit into the chart.  Defendants argue that they are entitled to summary judgment on the J.F. Claim because Scottsdale—the named Defendant for the J.F. Claim—is not the primary plan because "there has been no settlement and litigation is ongoing."  Mot., ECF No. 74.  Plaintiffs do not respond to this argument.  Interestingly, in the Complaint, Plaintiffs admit that they are unsure whether Scottsdale is the correct Defendant for the J.F. Claim.[6]  Compl. ¶ 244, ECF No. 1.  Further, in the Complaint, Plaintiffs allege that Scottsdale assumed the primary payer status following a settlement.  *Id.* ¶ 243. However, Defendants submit evidence that no such settlement has occurred. *See* Martin Decl. ¶ 9, ECF No. 76-1.

---

[5] This may seem a harsh result, especially because Plaintiffs argue that the information about which specific insurance entity should be named in each exemplar claim was in Defendants' possession.  The Court has already addressed this concern.  *See* Opinion and Order 22–23, ECF No. 28.  Further, for the reasons outlined above, any amendment to the Complaint at this late stage would be unduly prejudicial to Defendants.

[6] In the Complaint, Plaintiffs attempt to "reserve the right" to amend the J.F. Claim (and other exemplar claims) to name the correct Defendant.  This "reservation of right" does not help Plaintiffs now.  A plaintiff cannot, through such a reservation, unilaterally alter a Court order establishing a deadline to amend or the Civil Rules governing amendment.

In the face of Defendants' supported motion for summary judgment, Plaintiffs point to no evidence showing that Scottsdale did, in fact, reach a settlement with J.F., or that, as a result of that settlement, Scottsdale took on the responsibilities of primary payer as a result of such a settlement. As a result, Plaintiffs have not shown a genuine issue of material fact that Scottsdale was not the primary payer for the J.F. Claim. Therefore, Defendants are entitled to summary judgment on the J.F. Claim.

ii. **Exemplar Claims in which the Defendant Properly Reimbursed the Secondary Payer**

For some exemplar claims, discovery has revealed that the named Defendant properly reimbursed the conditional payment.

First, consider the I.D. Claim. In the Complaint, Plaintiffs allege that ConnectiCare (the relevant MAO) made a conditional payment of $1,310.72 related to the I.D. Claim. Compl. ¶ 154, ECF No. 1. However, the evidence shows that Victoria Fire & Casualty Company has already reimbursed ConnectiCare in the amount of $1,733.44. See Mot., Ex. U, ECF No. 76-23, at PAGEID # 4044. Thus, there is no genuine issue of material fact that Victoria Fire & Casualty Company did not fail to make the "appropriate reimbursement." As a result, Victoria Fire & Casualty Company is entitled to summary judgment on the I.D. Claim.

Next, the Court considers the P.S. Claim.  In the Complaint, Plaintiffs allege that ConnectiCare (again, the relevant MAO) made a conditional payment of $1,544.23.  Compl. ¶ 263, ECF No. 1.  Through settlement negotiations, Nationwide General Insurance Company and ConnectiCare's representative agreed to a compromised reimbursement of $655.25.  *See* Mot., Ex. XX, ECF No. 77-21, at PAGEID # 4579; Mot., Ex. UU, ECF No. 77-18, at PAGEID # 4568. Nationwide General Insurance Company paid that amount in accordance with the parties' agreement.  *See* Mot., Ex. SS, ECF No. 77-16, at PAGEID # 4517. Thus, there is no genuine issue of material fact that Nationwide General Insurance Company did not fail to make the "appropriate reimbursement."  As a result, Nationwide General Insurance Company is entitled to summary judgment on the P.S. Claim.[7]

### iii.  Exemplar Claims in which the Defendant Made a Primary Payment

Defendants argue that they are entitled to summary judgment on the H.B. and G.M. 2015 Claims because the relevant Defendant made a primary payment.

---

[7] To whatever extent Plaintiffs believe that, regardless of the agreement, they are still entitled to reimbursement of the difference between $655.25 and $1,544.23, Plaintiffs have not made such an argument.  The Court will not sua sponte delve into the enforceability of a settlement agreement when no party has raised the issue.

First, look at the H.B. Claim.  In the Complaint, Plaintiffs allege that AvMed (the relevant MAO) made a conditional payment of $2,215.98 to a hospital on H.B.'s behalf.  Compl. ¶ 90, ECF No. 1.  Scottsdale Insurance Company, H.B.'s primary insurer, paid the same hospital a total of $4,364.00.  *See* Martin Ex. 3, ECF No. 76-1, at PAGEID # 3562.  A review of the billing statement shows that this $4,364.00 was, in part, for the same medical services as AvMed's payments.  *Compare id. with* Compl., Ex. D, ECF No. 1-5.  Thus, there is no genuine dispute of material fact that Scottsdale Insurance Company did not fail to make the primary payment.

Next, look at the G.M. 2015 Claim.  In the Complaint, Plaintiffs allege that ConnectiCare (the relevant MAO) made a conditional payment of $60.00 on G.M.'s behalf.  Compl. ¶ 165, ECF No. 1.  ConnectiCare made this conditional payment ten days after G.M. received medical services.  *See* Compl., Ex. K, ECF No. 1-12.  Again, Nationwide Mutual Insurance Company made a primary payment in the amount of $128.00 to the medical provider for the same services.  *Compare id. with* Mot., Ex. W, ECF No. 76-25, at PAGEID # 4050.  Thus, once again, there is no genuine issue of material fact that Nationwide Mutual Insurance Company did not fail to make the primary payment.

Plaintiffs argue that even though Defendants made a primary payment, Plaintiffs are still entitled to reimbursement because they made a conditional payment.  The Court disagrees.  Federal regulations provide that:

> In the case of liability insurance settlements and disputed claims
> under employer group health plans, workers' compensation insurance
> or plan, and no-fault insurance, the following rule applies: If Medicare
> is not reimbursed as required by paragraph (h) of this section, the
> primary payer must reimburse Medicare even though it has already
> reimbursed the beneficiary or other party.

42 C.F.R. § 411.24(i)(1).[8]  The G.M. 2015 and H.B. Claims are "no fault

insurance" claims, but they are not *disputed* "no fault insurance" claims.  In H.B.'s

case, the secondary payer made the conditional payment several months

*after* Scottsdale informed the hospital that it knew it was a primary payer and

"wish[ed] to fulfill its obligations as a primary payer under federal Medicare laws."

Martin Decl., Ex. 2, ECF No. 76-1, at PAGEID ## 3557–78.  Similarly, in the G.M.

2015 Claim, the secondary payer made a conditional payment a mere ten days

after the date of service, thereby not giving the primary payer a meaningful

opportunity to make a primary payment or dispute the claim.  *See* Compl., Ex. K,

ECF No. 1-12.  Plaintiffs also make no argument that the relevant Defendant

ever disputed its responsibility to cover H.B.'s or G.M. 2015's accident-related

medical expenses.  Thus, 42 C.F.R. § 411.24(i)(1) does not control here.

  That does not end the inquiry, however.  Under 42 C.F.R. § 411.24(i)*(2)*, a

primary payer who makes a primary payment must still reimburse Medicare if the

primary payer "is, or should be, aware that Medicare has made a conditional

---

[8] The Court assumes, *arguendo*, that these regulations apply with equal weight to
MAOs.

primary payment." Plaintiffs do not even argue, let alone point to evidence, that Defendants knew or should have known that Medicare (or an MAO) made a conditional payment in the H.B. and G.M. 2015 Claims.

In sum, Plaintiffs' arguments are unconvincing, and Defendants are entitled to summary judgment on the H.B. and G.M. 2015 Claims.

### iv. The P.M. Exemplar Claim

Defendants argue that they are entitled to summary judgment on the P.M. Claim because it is time barred.

The Court previously decided that a three-year statute of limitations found in 42 U.S.C. § 1395y(b)(2)(B)(iii) applies to MSPA claims. Opinion and Order, ECF No. 36. The next question is when such claims accrue.

42 U.S.C. § 1395y(b)(2)(B)(iii) dictates that the three-year clock starts running on "the date of the receipt of notice of a settlement, judgment, award, or other payment pursuant to paragraph (8) relating to such payment owed." Paragraph (8) details an insurer's obligation to report information, commonly referred to as Section 111 reporting. 42 U.S.C. §1395y(b)(8).

Defendants argue that a claim accrues when a primary payer submits a Section 111 report to the Centers for Medicare and Medicaid Services ("CMS"). This type of accrual rule is sometimes called the "occurrence rule." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (explaining that under the "occurrence rule," "a claim accrues at the moment of injury"). Plaintiffs argue that

an MSPA claim accrues when one of Plaintiffs' assignors actually learns of the Section 111 report.  Resp., ECF No. 87.  This type of accrual rule is sometimes called the "discovery rule."  *Snyder-Hill*, 48 F.4th at 698 ("[A]bsent a statutory directive to the contrary, the "discovery rule" applies, and the clock starts only when a plaintiff knows or should have known certain facts related to their injury.")

At this time, the Court need not decide whether the "occurrence" or "discovery" rule applies, because the P.M. Claim is untimely under either rule. Defendants point to federal laws, regulations, and other guidance to show that, on at least a monthly basis, CMS sends any Section 111 reports it receives to the relevant MAO.  Mot. 7–10, ECF No. 74 (citing, *inter alia*, Medicare Managed Care Manual, Chapter 8 § 70.4.1 (Sept. 19, 2014), ECF No. 69-1 ("CMS sends plans monthly reports that include all of the beneficiaries where Medicare is the Secondary Payer.")).  Indeed, CMS has told primary payers that they do not need to separately report to MAOs because CMS sends the reports to MAOs.  *See* CMS Section 111 Town Hall Trs., ECF No. 69-1.  Defendants also point to evidence that CMS actually follows these requirements.  Mot. 7–10, ECF No. 74 (citing 166 Cong. Rec. E1167-01, 166 Cong. Rec. E1167-01, E1167 ("Congress is aware that for the last eight years CMS has provided all Section 111 Reports to the Part C and Part D Plans.")).

Defendants made the Section 111 report for P.M. in July 2016.  *E.g.*, McCann Decl. ¶ 63, ECF No. 76-2.  Thus, Plaintiffs' assignor would have known

about the P.M. Claim since, at latest, August or September 2016, which would make the 2021 Complaint untimely by nearly two years.

In the face of this evidence, Plaintiffs offer nothing to show their assignors did not receive the P.M. Section 111 report in July 2016. Nor do Plaintiffs point to any evidence that, in violation of the laws and regulations, MAOs do not, in fact, contemporaneously receive Section 111 reports. Instead, Plaintiffs argue that a Section 111 report, alone, cannot give notice of a potential claim; instead, an MAO must have notice of a settlement. Resp., ECF No. 87.

The Court disagrees. A Section 111 report tells CMS (and, by extension the MAOs) that the relevant primary payer is assuming all future responsibility for the beneficiary's medical expenses. Thus, with the 2016 Section 111 report for P.M., Plaintiffs knew who the primary payer was, and the alleged conditional payments were made in 2015. Compl. ¶ 285, ECF No. 1. Thus, by 2016, Plaintiffs (or their assignors) knew all the elements of their claims: (1) the identity of the primary payer; (2) that the primary payer had (allegedly) not reimbursed conditional payments; and (3) financial damages as a result of the non-reimbursement. In other words, by no later than 2016, Plaintiffs knew "or in the exercise of due diligence should have known, both [the] injury and the cause of that injury." *Snyder-Hill*, 48 F.4th at 698 (cleaned up).

Given that CMS is legally obligated to regularly send Section 111 reports to MAOs, Defendants' evidence that CMS meets this obligation, and Plaintiffs'

complete lack of evidentiary support, no reasonable jury could find for Plaintiffs.

There is no genuine issue of material fact that the P.M. Claim is untimely.

Accordingly, Defendants are entitled to summary judgment on the P.M. Claim.

### 2. Claim II: Breach of Contract

In Claim II, Plaintiffs assert breach of contract claims by way of

subrogation under 42 C.F.R. § 411.24(e).  *See generally*, Compl., ECF No. 1.  In

Claim II—as in Claim I—Plaintiffs really assert several hundred claims: one claim

for each exemplar and one for each entry on the spreadsheets.

The theory of the "Claim IIs" is, essentially: Defendants had a contractual

duty to make primary payments for each enrollee, Defendants breached that duty

by not making a primary payment or reimbursement, and that, as a result, the

enrollee was damaged.

Defendants argue this claim fails because only the Government, not MAOs

have subrogation rights to pursue such a claim.  The Court need not decide the

subrogation issue because Plaintiffs' claims fail in any event, for the same

reasons all the "Claim I claims" fail.

First, the Spreadsheets include no damages.  Just as a plaintiff must show

damages in an MSPA claim, a plaintiff must show damages in a breach of

contract claim.  *See, e.g.*, *Princeton Radiology Assocs., PA v. Advoc. Radiology

Billing & Reimbursement Specialists, LLC*, No. 2:19-CV-2311, 2022 WL 501205,

at *2 (S.D. Ohio Jan. 3, 2022) ("To establish a [counter-] claim for breach of

contract, Defendant must prove: (1) a contract; (2) performance by Defendant; (3) breach by Plaintiffs; and (4) damages caused by the breach.").

Second, as explained above, for the P.J., Y.H., A.R., S.H., R.L., G.M. 2016, L.R., D.B., H.M., and J.F. Claims, there is no genuine dispute of material fact that the respectively named Defendants did not underwrite the at-issue insurance policies.  By extension, there is no genuine dispute of material fact that the Defendants named in those claims did not have a contractual duty to make primary payments for those enrollees.

Next, for the I.D., P.S., H.B., and G.M. 2015 Claims, there is no genuine dispute of material fact Defendants made a primary payment or proper reimbursement.  Thus, there is no genuine dispute of material fact that those Defendants did not breach any contractual obligation to make such payments or reimbursements.

Finally, the P.M. Claim also fails.  The Court has already explained that (1) this breach-of-contract claim stems from 42 U.S.C. § 1395y(b)(2)(B)(iii), Opinion and Order 25, ECF No. 28; and (2) claims brough under 42 U.S.C. § 1395y have a three-year statute of limitations, Opinion and Order 3–8, ECF No. 36.  Combining those rulings, Claim II, like Claim I, has a three-year statute of limitations.  As explained above, there is no genuine dispute of material fact that Plaintiffs received the Section 111 report for P.M. shortly after Defendants provided that report to CMS in 2016.  Thus, as with the "Claim I" for the P.M.

Claim, there is no genuine dispute of material fact that the "Claim II" for the P.M. Claim is untimely.

In sum, Defendants are entitled to summary judgment on all the "Claim IIs."

## VI.  CONCLUSION

For these reasons, the motion to take judicial notice, ECF No. 69, is **GRANTED**; the objection to the Magistrate Judge's order, ECF No. 70, is **OVERRULED AS MOOT**; and the motion for summary judgment, ECF Nos. 67, 74, and 76, is **GRANTED**.

The Clerk shall enter judgment for Defendants and close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**